1

```
1                    IN THE UNITED STATES DISTRICT COURT
2                      FOR THE DISTRICT OF MARYLAND
                             NORTHERN DIVISION
3


4


5      UNITED STATES OF AMERICA

6           v.                              CRIMINAL CASE NO.
                                              AMD-04-029
7      WILLIE MITCHELL,
       SHELTON HARRIS,
8      SHELLY WAYNE MARTIN,
       SHAWN GARDNER,
9
            Defendants
10     _____/

11                  VOLUME XXXV OF XXXVII
                    Friday, December 5, 2008
12                  Baltimore, Maryland

13

       Before:  Honorable Andre M. Davis, Judge
14                    And a Jury

15     Appearances:
             On Behalf of the Government:
16            Robert Harding, Esquire
             On Behalf of Defendant Mitchell:
17            Laura Kelsey Rhodes, Esquire
             On Behalf of Defendant Harris:
18            Gerard P. Martin, Esquire
              Paul Flannery, Esquire
19           On Behalf of Defendant Martin:
              Thomas L. Crowe, Esquire
20            James G. Pyne, Esquire
             On Behalf of Defendant Gardner:
21            Adam H. Kurland, Esquire
              Barry Coburn, Esquire
22
       Reported by:
23     Mary M. Zajac, RPR
       Room 5515, U.S. Courthouse
24     101 West Lombard Street
       Baltimore, Maryland 21201
25
```

2

1          (Proceedings at 11:47 a.m. All defendants present in

2     courtroom.  Jury not present.)

3          THE COURT:  I believe counsel have been provided with

4     copies of the notes that we received this morning from the jury.

5     I have a proposal that I would like to make before I hear from

6     counsel.

7          The first note, actually the first two, came out at the

8     same time, a little after 10:00.  The jury reports, quote:  "The

9     jury is deadlocked on two counts as they relate to an individual

10    defendant.  Both sides' reasoned views at this point are firm.

11    Can we proceed past these counts in reaching our verdict?"

12         And then at about the same time, the jury asks, quote:

13    "Can the jury review testimony of Natasha Wyche from October 1

14    and William Montgomery's testimony, afternoon of October 7th?"

15         And then more recently, just a few minutes ago, the

16    jury sent out the following note, quote:  "Can a defendant be

17    implicated and found guilty for the drug quantities that were

18    possessed and distributed by a conspiracy prior to his entry?"

19         The first note reporting the deadlock is ambiguous, of

20    course.  It's not clear whether the jury has, in the opinion of

21    the foreperson or the author of the note, who I believe is the

22    foreperson, substantially reached a verdict as to many or most

23    other counts and is deadlocked on only these two as to a single

24    defendant.

25         You'll recall that I instructed the jury that they were

1    free to consider any counts in any orders, in any order that they

2    chose.  So I don't think it should be read to suggest that

3    they've been going through in chronological, numerical order and

4    have not moved past some count.  But that could be an

5    interpretation.  But they ask whether they can proceed past these

6    counts in reaching our verdict.  That's ambiguous.

7           Clearly, the issue of reviewing testimony is always

8    problematic.  While Ms. Zajac does have realtime reporting, I

9    haven't conferred with her yet to see what will be involved in

10   trying to locate that testimony.  Obviously, I don't think it's

11   something that any of us ever want to do, to sit here in the

12   courtroom and have either the reporter or me or anybody read

13   testimony back to the jury.

14          There is some law that suggests that a flat out no is

15   not always appropriate.  But my inclination would be to suggest

16   to the jury that the testimony is not readily available.

17          It seems to me the answer to the question about drug

18   quantities is easy.  And that is that a defendant cannot

19   reasonably foresee a possession or distribution of narcotics

20   before he becomes a member of the conspiracy.  And so it seems to

21   me the answer to that question is a straight no.

22          Here's my proposal.  My suspicion, and I'll hear from

23   counsel, given the complexity of the verdict sheet and the

24   multitude of counts, defendants, and some issues relating to drug

25   quantity and characterizations of murder, I would propose, if

4

1    counsel all agree, that I send in a note and ask the foreperson

2    to complete one of the jury verdict forms as much as he can based

3    on unanimous decisions of the jury and send out the verdict form.

4    I will take a look at the verdict form and, depending on what I

5    see, I will do one or more of several things.

6         What I would propose to do is to tell counsel and your

7    clients on what counts and/or issues the jury has not been able

8    yet to reach unanimous decision.  And if we are all agreed to

9    take a partial verdict in light of that information, then we can

10   consider whether we want to do that.

11        Obviously, that's just one proposal.  Some of you may

12   have competing or alternative proposals.  And it may be that the

13   Court should simply answer the jury's questions and proceed.

14        So I'm open to hearing all of you.  Let me start with

15   the government.  Mr. Harding.  What's your sense of it?

16        MR. HARDING:  Judge, first let me say that I don't

17   think the government has a problem with your proposed answer on

18   the drug quantity issue, even though I believe there is case law

19   suggesting that a defendant can be held liable for drugs that

20   were transacted before he or she entered the conspiracy.  I think

21   it would require evidence that the defendant involved was told or

22   otherwise got information about the prior transactions.  And

23   since I'm not, I can't think of such evidence in this case, I

24   can't say that the government has a problem with the instruction

25   you propose.

1          THE COURT:  I think your refinement of what I suggested

2     is probably absolutely correct.

3          MR. HARDING:  I must say that the proposal with respect

4     to the, what amounts to a partial verdict form --

5          THE COURT:  I might say, by the way -- I'm sorry to

6     interrupt, Mr. Harding -- I'm not sure how to assess this or what

7     weight to give it.  But this is the first day during

8     deliberations, Ms. Arrington, correct me if I'm wrong, it's now 5

9     of 12.  The jury has not sent out their menu selections.  Oh,

10    they did.  They just did.  Okay.

11         All right.  Go ahead, Mr. Harding.  I'm sorry.

12         MR. HARDING:  We know we're here at least until 2:00

13    this afternoon.

14         THE COURT:  Well, maybe, maybe not.  I might say, the

15    menu selections have not been transmitted to the restaurant.

16         MR. HARDING:  I confess that in spite of my advanced

17    age, Your Honor, I haven't had a case where the Court reviewed

18    the verdict sheet and became aware of what the verdict was on

19    certain counts before deciding whether or not to take a partial

20    verdict.  And I'm a little troubled by that.  I just don't know

21    whether that, I don't know whether that's a problem.

22         THE COURT:  Well, I absolutely agree with you.  It

23    certainly is not a problem if everybody agrees I should do it.

24    And I don't think I would do it if there's any objection.  So I'm

25    with you on that.  I certainly have never, I'm not aware of it

1    ever happening.  And I wouldn't, I don't think I would do it over

2    objection.

3            MR. HARDING:  Okay.  Well, if no one objects, then the

4    government does not object to that procedure.

5            I think the Court may be aware of the fact that a lot

6    of these determinations aren't going to be necessary.

7            THE COURT:  Exactly.

8            MR. HARDING:  Yes.

9            THE COURT:  Exactly.  The jury won't know that.

10           MR. HARDING:  Right.

11           THE COURT:  Yeah.

12           MR. HARDING:  Okay.  Thank you, Your Honor.

13           THE COURT:  Thank you, Mr. Harding.  Ms. Rhodes, good

14    morning and good to see you.

15           MS. RHODES:  Good morning, Your Honor.  Good to see

16    you.  Our position, just going in order, on number one would be

17    that the Court would instruct the jury that they can proceed as

18    they requested or they can proceed as they indicated past those

19    counts in reaching a verdict.

20           As to number two, we would ask, I think the testimony

21    is available because I know that both those witnesses'

22    testimonies were requested.  In light of the specificity of their

23    request and the length of time they've been deliberating and the

24    length of time the trial has taken, so that we're now two months

25    after those two dates, essentially, of testimony, I think it's

7

1    not an unreasonable request, and I would ask the Court provide

2    that testimony to the jury.

3            As to number three --

4            THE COURT:  You understand -- I'm sorry to interrupt.

5    But you understand the Court will not send in a transcript.  If

6    we are to, if we are to provide that testimony to the jury, it

7    will involve us sitting here and reading the testimony to the

8    jury.  There's no transcript going into the jury room.

9            MS. RHODES:  Okay.  Well, I don't think that Ms.

10   Wyche's was terribly belong.  Montgomery, I don't recall how long

11   his afternoon testimony was that day.

12           THE COURT:  He was on the stand all, all afternoon.

13           MS. RHODES:  Okay.  Well, perhaps they could specify.

14   In any event, Ms. Wyche's, we would ask, we would still ask that

15   both of them be read to the jury.

16           THE COURT:  Okay.  I just want you to understand what

17   this involves.

18           MS. RHODES:  What that would entail.  All right.  As to

19   number three, we would agree with the Court's proposed response

20   to that.  In terms of the completion of the verdict form, we

21   would be opposed to that in lieu of answering these questions.

22           THE COURT:  Okay.  Well, I guess I don't need to hear

23   from other counsel, but I will.

24           MR. MARTIN:  I don't really know how I feel about this.

25   I mean, I agree with Mr. Harding.  I did have it happen once, 30

8

1    years ago in Texas.  I didn't like it then.

2              THE COURT:  Well, I'm not going to do it if they do it

3    in Texas.

4              MR. MARTIN:  And I was a prosecutor then and I didn't

5    like it.  Maybe it was more than 30 years ago.  I hate to admit

6    that, but it was.  But it was before I was an assistant here.  I

7    was with DOJ.

8              That makes me very uncomfortable.  I don't think I

9    could agree to that, Your Honor.

10             You said you agreed with Mr. Harding, subject to his

11   refinement, the issue about if there was evidence of, but I don't

12   think there is any evidence here, so I don't think it would be a

13   appropriate instruction.  I think your first --

14             THE COURT:  No.  And Mr. Harding agrees.

15             MR. MARTIN:  Right.  So the answer should be no.

16             THE COURT:   Right.

17             MR. MARTIN:  And I don't, these jurors took a lot of

18   notes.  I don't think we need to sit here and have us listen

19   to -- I hate to disagree with Ms. Rhodes, but I don't

20   particularly want to sit here and listen and I don't think it

21   serves any purpose to listen to the partial testimony of the

22   witnesses.  You know, if you're going to do it, maybe you should

23   listen to all of it, and nobody wants to do that.  I don't think,

24   they don't want to do that.

25             So I would oppose that, Your Honor.  I think you should

9

1    just tell them they have to rely on their notes and their memory.

2                    THE COURT:  Thank you, Mr. Martin.

3                    MR. MARTIN:  Thank you, Your Honor.

4                    THE COURT:  For the record, Mr. Martin, exactly what is

5    your response to the Court's proposal to have them send out a

6    verdict sheet?

7                    MR. MARTIN:  That's what I was talking about, that

8    happening, Your Honor.  I'm opposed to that.

9                    THE COURT:  Okay.  You're opposed to that.

10                   MR. CROWE:  Good morning, Your Honor.  On behalf of Mr.

11   Martin, I believe we are also, we are also opposed to a partial

12   verdict sheet coming out.

13                   With respect to the jury being deadlocked, I agree that

14   the note is certainly ambiguous and I think they should simply be

15   told that they can consider counts in any order they want to and

16   without indicating that -- to my mind, this note doesn't even

17   necessarily indicate that the deadlock is final.  It sounds like

18   it's pretty close to it, but I'm not quite sure they're there.

19                   In terms of reviewing the testimony, I think they're

20   clearly required to do it.  And certainly can't disagree with the

21   position everybody else has taken on the testimony of Natasha

22   Wyche and William Montgomery.

23                   THE COURT:  All right.

24                   MR. KURLAND:  Good morning still, Your Honor.  With

25   regard to the reviewing the testimony, I would propose that the

1    Court, you know, explain to them, you know, if you can rely on

2    your notes, fine.  But if not, if you still feel it's necessary,

3    then, you know.

4              THE COURT:  That's what I would do.  What I would do,

5    if testimony is going to be read back, what I would do is I would

6    say something to the effect of, we'll order your lunch and we

7    will take steps to see if we can't prepare, obtain a transcript.

8    But you should understand, I mean, I would tell them what I just

9    said to Ms. Rhodes, that a transcript will not be made an exhibit

10   and send into the jury room.  What that will entail is all of us

11   sitting here in the courtroom and the testimony being read, word

12   for word, over again.  And so they may want to think about it

13   over lunch, either to narrow their request or reconsider their

14   request.

15             So, yeah, they will know before we do it what it's

16   going to entail.

17             MR. KURLAND:  Also, is that afternoon, is there any

18   cross examination of Montgomery on that?

19             THE COURT:  I have no idea whatsoever.  I mean, that's

20   part of the problem.  As somebody suggested, I think it was Mr.

21   Martin, you have to read the whole thing.  And frankly, if

22   somebody were to say, no, Judge, we don't want a portion of a

23   witness' testimony read, we want the entire thing, of course, we

24   can't even cross that bridge until Ms. Zajac first identifies

25   the -- they did give us the time period.

1          MR. KURLAND:  Again, I haven't consulted with Mr.

2     Coburn on this.  But if any of Montgomery's testimony is going to

3     be read back, it would be our position that it include the cross

4     examination.  And I know for a fact that Montgomery's entirely

5     transcript has been, has been, has been prepared and provided, I

6     think, to all parties.

7          The second thing, Your Honor, is obviously until those

8     other issues are resolved, the deadlock issue obviously doesn't,

9     it doesn't really, it isn't really ripe.

10          As a general matter, I don't have a problem with

11     returning a partial verdict if that also includes not, not the

12     procedure that the Court outlined, but if they want to come back

13     with counts they have resolved.  That would also include, it

14     would be our position that that would include not just counts

15     that they have deliberated on and reached a unanimous verdict,

16     but if they are hung on some counts I think they should be able

17     to return a partial verdict on the hung counts and those are off

18     the table now.

19          THE COURT:  You can't return a verdict on a hung count.

20          MR. KURLAND:  Well, no.  But they could come back and

21     say we're hung, and then if the Court --

22          THE COURT:  No. I'm going to give a modified Allen if

23     we're going to deal with hung counts and all that.

24          Okay.  Anything else, Mr. Kurland?

25          MR. KURLAND:  No.  Thank you.

12

1              THE COURT:  Let me take one more shot at it, so to
2       speak.  I really appreciate and profoundly respect counsel's
3       skepticism, cynicism, whatever you want to call it, when some
4       wacky judge makes a proposal that nobody's ever heard of or only
5       heard of 30 or 40 years ago in Texas.  But let me just elide the
6       proposal a little bit.
7              As you all well know, this verdict sheet is something
8       of a monster.  It's 18 pages.  It's got all these special
9       findings, the vast majority of which are irrelevant in a
10      practical sense, certainly not irrelevant in a legal sense.
11             But as we saw in that early question regarding
12      premeditation, second degree felony murder, and it did occur to
13      me, by the way, as I would if I were trying a state murder case,
14      to say to the jury, By the way, if you find the defendant guilty
15      of premeditated murder, you don't have to consider second degree
16      murder.  I mean, that's the way I always instructed a jury.
17             I didn't do that here.  It would have turned the
18      verdict sheet, I mean, it would have turned my instructions into
19      a 150 page rather than a 128 page essay.
20             My point simply is that, while I appreciate your
21      concern, my proposal is, I think, utterly non-prejudicial to
22      everybody.  What I propose to do on the suspicion that the jury
23      is hung up over some subsidiary issues and, certainly, this last
24      question strongly suggests that.  If they're back there
25      struggling over 500 kilograms or less versus, you know, I don't

1      think any of us want them to spend time doing that.

2              If they're struggling over drug quantities, obviously,

3      it seems to be obvious, that they've reached a guilty verdict on

4      some, some stuff because they wouldn't be talking about drug

5      quantities if they had found no conspiracy or no conspiracy

6      charged in the indictment.

7              So it's difficult for me to see, not because I'm the

8      author of the proposal, but it's difficult for me to see what is

9      to be lost or gained by not taking this intermediate step to

10     permit the Court to take a look at the verdict sheet.

11             Suppose, hypothetically, they've reached a verdict,

12     guilty or not guilty, on everything except the Wyche murders.  Do

13     we really want to sit here?  And I say this with all respect to

14     the family of the Wyche brothers.  Obviously, victim's families

15     want a final determination, as we all do.  But there are

16     practical realities that I think come into play in any case.

17             So if they're sitting back there having decided 90 to

18     95% of this very complex case with extraordinarily overlapping

19     charges, I'm not sure why you wouldn't want at least to take the

20     opportunity for the Court to inform itself whether they're 90%

21     finished or only 30% finished.  What's to be lost?

22             If they are 30% finished, then I'm going to do all the

23     things that counsel have asked me to do.  I'm going to give

24     instructions, maybe read testimony, answer their questions, bring

25     in lunch.  But if they send out a verdict sheet that's 90%

1    complete and they're hung up on one defendant, one or two counts,

2    or one or two drug quantities, I don't think counsel want to stay

3    here and come back next week, have the jury try to work that out.

4              So I'm not trying to coerce anybody.  I hope the record

5    doesn't reflect that.  I'm really not.  And I'm happy to do

6    whatever mature, professional counsel believe is most

7    appropriate.  But I just want to take this opportunity to make

8    sure you understand that what I'm proposing is rooted in

9    practical reality.  And I don't want to prejudice anybody.

10             I don't know if they've reached three guilty verdicts

11   and 27 not guilty's or 27 guilty's and three not guilty's.  I

12   don't know what it is.  All I'm saying is, why don't we take this

13   opportunity after five days of deliberation, or four and a half

14   days of deliberation, in light of these somewhat ambiguous notes,

15   to decide, based on the information they give us, what we do

16   next, rather than just proceed as if we don't have any

17   information from the jury?  That's all.

18             So with that, we'll start in reverse order, since

19   Mr. -- no.  No.  Mr. Coburn, it's very good.  You approached the

20   lectern and we'll start with you and then we'll come back

21   clockwise and end the government.

22             MR. COBURN:  Very kind of Your Honor.  I didn't mean to

23   butt in front of anybody.

24             THE COURT:  No.

25             MR. COBURN:  Just on the first -- is it okay for me to

1    talk with the door open, Your Honor?

2              THE COURT:  Yes.  The other door is closed.

3              MR. COBURN:  Okay.  Just with respect to the first

4    point that Your Honor made, just very briefly.  I think Your

5    Honor may actually have made that point to them, about

6    premeditated murder versus second degree murder, in response to

7    an earlier note.

8              THE COURT:  Oh, I did, in my supplemental instruction.

9    Absolutely.

10             MR. COBURN:  On the bigger point that Your Honor is

11   making, I think there's, first of all, I think there's force in

12   what Your Honor is saying.  And I agree with the general

13   proposition that just because it's not maybe been done before in

14   our experience, it shouldn't be done here.

15             THE COURT:  And just so I'm clear, I'm not talking

16   about taking a partial verdict.  I'm talking about finding out

17   whether there is one.

18             MR. COBURN:  I hear Your Honor on that absolutely.  My,

19   and just to kind of reason this through to whatever limited

20   extent I'm able to at this moment, I was just trying to do a

21   little bit of kind of quick and dirty research on this on the

22   computer with really no success at all.  But I know that there's

23   this doctrine.  And I think it was part of this Court's

24   instructions, it's always part of the Federal Court instructions

25   in DC, to the effect that the jury is always told in every single

1    case, if you're having trouble with respect to a count, don't

2    ever tell me what the split is.

3              THE COURT:  I did.  I did.

4              MR. COBURN:  And I guess my question, and it really is

5    just a question, is whether something, the reason for that

6    concern, as I understand it, relates to this question of jury

7    coercion.

8              THE COURT:  Right.

9              MR. COBURN:  I mean, is there an analogous concern

10   with, you know, the Court looking at a verdict form in order to

11   see how many counts they're deadlocked on versus how many counts

12   is there a verdict on?  To the extent there is a coercion concern

13   in the first instance, is there some analogous coercion concern

14   in the second?

15             THE COURT:  I don't think so.  But I'm open to being

16   persuaded that there is.  And I appreciate your raising the

17   issue.  Clearly, I would not ask, and if ultimately we agree with

18   my proposal, or some modification thereof, I'm not going to ask

19   for what the vote is on a count that you haven't reached a

20   unanimous decision on.  What I would ask them for, as clearly as

21   I can, is to complete the verdict sheet only as to those counts

22   you have reached a unanimous verdict.

23             And what I would anticipate getting from the jury is a

24   verdict sheet that shows some guilty's, it would seem, in light

25   of the drug quantity question, and perhaps some not guilty's.  So

1    I would only be asking for a report of what you're unanimous on.

2                Now, is there a potential for coercion, depending on

3    what we do after we get that information?  I don't think so but

4    certainly if there are those who are concerned about that, sure.

5    But I don't really see how.

6                As I say, and I just laid out a paradigm, they're 30%

7    finished, however you calculate 30% on a verdict sheet like this,

8    or they're 75% or 80% finished.  My suspicion is that if they're

9    80% finished, most of you are going to say, Judge, let's take a

10   partial verdict.  Most of you, if not all of you.

11               If there are only 30% finished, there's not going to be

12   a partial verdict.  If they're only 30% finished, subject to

13   hearing from counsel, I wouldn't even tell you what counts

14   they've reached a unanimous verdict on.  I would simply bring

15   them back out, I would answer the questions.  We would deal with

16   reading testimony.  We'd send in lunch.  And we'd go forward.

17               I'm just trying to make life more palatable for

18   everybody.  But I may not be, my proposal may not achieve that.

19   And if it doesn't, you know, we'll proceed in a more traditional

20   manner.

21               MR. COBURN:  If Your Honor took -- and this may not be,

22   it may not be possible to answer this question in the abstract

23   without knowing the percentages -- but if Your Honor took a

24   partial verdict and they returned verdicts on a certain

25   percentage of counts and there were certain other counts left

1    over, would there then be some further discussion about whether

2    there should be an Allen charge on the remaining?

3            THE COURT:  Absolutely.  Absolutely.  And I would not

4    take a partial verdict before giving an Allen charge.

5            MR. COBURN:  The Allen charge would be first?

6            THE COURT:  Right.  Right.

7            MR. COBURN:  I'll discuss it further with Mr. Kurland.

8            THE COURT:  Okay.  Mr. Crowe, Mr. Pyne?  Anything

9    that's happened or been said in the last ten minutes prompt you

10   to add anything or --

11           MR. CROWE:  Your Honor, I think our position remains

12   the same.

13           THE COURT:  Remains the same?  Mr. Martin?

14           MR. MARTIN:  Your Honor, Mr. Crowe and I have discussed

15   it and I think we remain the same as well.

16           THE COURT:  All right.  Ms. Rhodes?

17           MS. RHODES:  My position has changed a little bit only

18   in that it's stronger.  My concern is that taking this, that

19   there will be, I wouldn't even call it jury coercion.  But there

20   would be some message sent to them that we're concerned about how

21   long this is taking, we want to see what you have, how far along

22   you are, and that that would make them feel that maybe they have

23   to move faster.

24           The second point is that I think that given, especially

25   given these notes about the split on a couple of counts, my

1   concern would be that they would feel less comfortable continuing

2   to deliberate on some of the counts that they may be undecided on

3   right now and feel like they need to make a decision; that also

4   possibly they would ultimately, might be a compromise verdict in

5   some sense of overall, would be, would be compromised by taking

6   part of it now.  In other words, people down the road night say,

7   Well, I wasn't going to go with that, but I will go with it, but

8   I can't now, because you wouldn't let me back away from what I

9   wanted my position in this other matter regarding the same

10  defendant, or something like that.

11          So I think how, they've been told they're deliberating

12  on the whole verdict sheet as a whole and they're not to give us

13  any information on it as they go along.  And they've done their

14  deliberations based on that information.  So to change that

15  midstream, I think, might confound how some of them have been

16  proceeding in terms of the process.

17          Also, I think that since they have the sheet, they've

18  had the sheet the whole time, they certainly are using it as a

19  guide.  They're certainly using it to, they've probably filled it

20  out, I'm not sure that we need to, that our getting that is going

21  to speed things up.

22          I think this is a situation where the defendants'

23  interests are certainly not necessarily in speeding things up at

24  all or in making things easier in terms of the process.

25          THE COURT:  Okay.  That's certainly a fair comment.

1    All right.  Mr. Harding?

2              MR. HARDING:  Judge, I guess if defense counsel aren't

3    going to agree to it, the Court isn't going to consider --

4              THE COURT:  Absolutely.

5              MR. HARDING:  -- a partial verdict.  And so the

6    government would certainly not be in support of a partial verdict

7    unless all defense counsel agreed to it.  So I guess we agree

8    with defense counsel.

9              I do want to say one thing about the transcripts issue,

10   Your Honor.  I'm very worried about that.  Actually, I don't

11   recall ever in federal court having the court allow the jury to

12   see the, or to hear even the transcripts read back to them.  I

13   know we have the transcripts in this case.  And maybe that's a

14   different circumstance.

15             But I do think that even if they focused what their

16   concern is, we're going to have a situation where defense counsel

17   are going to want any conceivably relevant section of their cross

18   examinations and then the redirect and then the recrosses also

19   read to the jury.  And issues of credibility will then come up.

20   And the defense attorneys will want the sections where they

21   allegedly impeached the witness to be read, also.

22             THE COURT:  You're absolutely right.  In fact, as I sit

23   here listening to you, Mr. Harding, and really sort of reviewing

24   it in my mind, I'm not even sure we could get it done today.  In

25   other words, what I mean is, if we actually had the physical

1    transcripts here, counsel, including yourself and Mr. Hanlon,

2    would be entitled to review the entire testimony of that witness,

3    direct and cross, for the purpose of making a judgment about, if

4    the jury's going to hear this, then we want them to hear this,

5    too.  And I would be constrained to acquiesce in that.

6              And so while the jury may say, We only want to hear the

7    afternoon of October 1st, just because the jury narrows it in

8    that way doesn't mean counsel, including the government counsel,

9    aren't entitled to do an assessment of what's included in what

10   they've asked for and whether, in fairness to all parties,

11   including the government, more should be included.

12             Now, you're absolutely right.  It never happened

13   before, well, almost never happened before realtime reporting

14   because I've been asked for readbacks.  And the standard

15   instruction that we give is, Ladies and gentlemen, there is no

16   transcript available.  The court reporter has made a record of

17   proceedings through stenographic notes, etc., etc., but there is

18   no transcript.  And that was usually the end of it.

19             But we're in this brave new world where we now have

20   transcripts.  And as I say, there is some case law out there that

21   if a judge just says, No, you can't have them, that becomes an

22   issue on appeal.

23             So I'm sorry to cut you off.  But you're making a very

24   good point.  This is going to involve making sure everybody has a

25   copy of transcript, finding out from the jury, if we can, what in

1    the testimony of these two witnesses they're particularly

2    interested in, and then giving counsel an opportunity to review

3    the transcript to decide what additional testimony, in fairness,

4    should be read to the jury.

5        And again, the transcripts never go into the jury room.

6    We're talking about reading, we're talking about reading

7    testimony in the courtroom.  Go ahead.

8        MR. HARDING:  The government agrees with the Court on

9    this.  But I guess all I would add is that the Court do whatever

10   it can to discourage the jury from wanting the transcripts

11   without precluding them altogether, in deference to these cases

12   that Your Honor has mentioned.

13       THE COURT:  That's what I've always done.

14       MR. HARDING:  Okay.  Thank you, Your Honor.

15       THE COURT:  All right.  So I think, Ms. Rhodes, you

16   make quite salient points.  The Court still thinks it had a good

17   idea.  But you all knew that.

18       So I think, first of all, we have completed menus, Ms.

19   Arrington?  Okay.  So it's been faxed.  Great.  All right.  So

20   what I propose to do then is to bring the jury out and thank them

21   for their notes, indicate that lunch is expected to arrive by one

22   p.m., and we regret the delay in that.

23       And as to the specific answer, yeah, I'm going to

24   confer with Ms. Zajac in a moment.  But the answer to the

25   deadlock, of course, is yes, you can proceed to consider any

1    count in the indictment as to any defendant in any order you

2    wish.  And I'm going to give the no answer to the second

3    question.

4                Let's go off the record for one moment.

5                (Pause in Proceedings.)

6                THE COURT:  All right.  I have conferred with Ms.

7    Zajac.  And I'm advised that all of you already have hard copies

8    of the testimony, all of the testimony of Mr. Montgomery and Ms.

9    Wyche.  She has provided me -- is that not right, Mr. Martin?

10               MR. MARTIN:  I don't have Wyche, Your Honor.  I don't

11   think I do.  Somebody might have it, but we don't.

12               THE COURT:  I see.  I see.  So not all counsel have a

13   copy.

14               MS. RHODES:  I have the Wyche.  I thought I had

15   circulated it by PDF, but perhaps not.  I can do that this

16   afternoon.

17               THE COURT:  Great.  So Ms. Rhodes has Wyche and

18   everybody has Montgomery?

19               MR. COBURN:  We have Montgomery.

20               THE COURT:  Everybody has Montgomery.  And you have all

21   of Montgomery and all of Wyche.

22               MS. RHODES:  Yes.

23               THE COURT:  Ms. Zajac tells me that Ms. Wyche was

24   basically a full day and that Mr. Montgomery was three half days.

25               MR. MARTIN:  A day and a half.

1          THE COURT:  Yeah.  A total of a day and a half.  So I'm

2   going to tell the jury that we understand they would like to hear

3   the testimony of those two witnesses.  I'm going to tell them

4   that the procedure that we will have to follow, if that's what

5   they want, is that the testimony will have to be read in open

6   court, and that before we're able to do so, counsel must have an

7   opportunity to review the transcript to determine what portions,

8   in addition to any portion that the jury wants to hear, must be

9   read as well.

10          So we'll give them an opportunity over lunch to think

11   about that and to provide us with, if they can, a more discrete

12   identification of what portion of the testimony they are

13   interested in.  It may well be that they're stuck on one narrow

14   assertion on direct or cross, that it may well be the answer to

15   one or two questions.

16          On the other hand, insofar as the foreman has asked for

17   the afternoon of a witness' testimony, suggests that they may be

18   not so sure of exactly what they're looking for.  Afternoon of

19   William Montgomery on October 7th and from Natasha Wyche on

20   October 1st.  So let's see what they give us back by way of

21   further explication of what they're looking for.

22          Okay.  Let's have the jury, please.

23          Ms. Zajac has an important appointment, personal matter

24   this afternoon, so she won't be with us, but we'll have another

25   court reporter this afternoon.  But I've said to her that I will

1   not have her do any reading, assuming we get to the point of

2   reading this afternoon.

3         The jury will also want to take an outdoors break.  And

4   think I'll invite them to do that from 1:30, I'll say 145 to 2

5   p.m. on the assumption that they'd want it after lunch.

6         (Jury enters the courtroom at 12:28 p.m.)

7         THE COURT:  Members of the jury, good afternoon.  As

8   you'll recall, I told you that during your deliberations when we

9   received notes from you we will endeavor to respond to you

10  whenever possible in writing, but that there may be occasions

11  when we will need to convene here in the courtroom in order to

12  respond to some of your notes.  And this is one of those

13  occasions.  I regret the delay in getting back to you.  But we've

14  all reassembled.

15        First of all, let me say that there was a delay in

16  faxing over your luncheon selections.  And so we anticipate that

17  lunch will be here at 1:00, approximately 30 minutes from now.

18        Number two, I'm sure that you'll want to take an

19  outdoors break today and so I'm going to announce now that you

20  may take an outdoors break from 1:45 until 2 p.m.  I'm assuming

21  that you'd prefer to have the outdoors break after lunch rather

22  than before.

23        Now, with respect to the notes you've sent out, we're

24  going to handle these one at a time.  The first note read as

25  follows:  The jury is deadlocked on two counts as they relate to

26

1    an individual defendant.  Both sides' reasoned views at this

2    point are firm.  Can we proceed past these counts in reaching our

3    verdict?

4              And the answer to that inquiry, of course, is, as I

5    told you during my instructions, and as indeed, as you will find

6    in my instruction, actually, this is not in my instructions.  But

7    what I told you was that although the verdict sheet is put

8    together in numerical order from Count 1 through Count 19, you

9    are absolutely free to consider any verdict, any count of the

10   indictment and reach a verdict as to any count or any defendant

11   in any order you choose, whatever you find that will most

12   facilitate your ability to deliberate a verdict.

13             So you should feel free to consider any and all counts

14   in any order as to any defendant that you find most useful to

15   your process.

16             The last note you sent out -- I'll skip the second note

17   for now and come back to that in a moment -- you asked the

18   following question:  Can a defendant be implicated and found

19   guilty for the drug quantities that were possessed and

20   distributed by a conspiracy prior to his entry?  The answer to

21   that question is that, in the context of this case, the answer is

22   no.  A defendant can only be responsible for, because he can only

23   reasonably foresee if you so find, drug quantities and types that

24   were involved in a conspiracy after he became a member of the

25   conspiracy, not before he became a member of the conspiracy.

1        Finally, your note reads as follows:  Can the jury

2   review testimony of Natasha Wyche from October 1 and William

3   Montgomery's testimony, afternoon of October 7, 2008?  In fact,

4   ladies and gentlemen, although it's not the customary practice,

5   in this case Ms. Zajac, our diligent court reporter, has been

6   able to prepare transcripts of the testimony of a number of

7   witnesses, including Ms. Wyche and Mr. Montgomery.  Ms. Wyche, we

8   believe, was on the stand for a full day of direct and cross

9   examination.  Mr. Montgomery, you will recall, I'll sure, was on

10  the stand for a very long time.  And indeed, you will recall that

11  we interrupted Mr. Montgomery's testimony probably twice, such

12  that Mr. Montgomery was on the stand over what we believe were

13  three afternoons, for a total of a day and a half of testimony on

14  direct and cross examination.

15       Now, in order to accommodate your request, you need to

16  understand a number of things.  First of all, transcripts of

17  witness testimony given at trial, unlike a couple of the

18  transcripts that we sent in to you as exhibits, transcripts of

19  witnesses testifying at trial are never marked as exhibits.  So

20  they will not be available to you in the jury room at any time.

21       If you wish to come back into the courtroom to listen

22  to a reading of any witness, Mr. Montgomery or Ms. Wyche's

23  testimony, that can be arranged.  But there are a number of

24  preliminary steps that must be taken before that's possible.

25       First and foremost, although you may have in mind a

1    more narrow time period or subject matter of testimony with

2    respect to Ms. Wyche or Mr. Montgomery, what counsel are entitled

3    and, indeed, required to do before we read any testimony to you

4    is they are entitled to go through the transcripts of the

5    witness' testimony in their entirety so as not to create the

6    wrong impression.

7           That is to say, any lawyer for any defendant and any,

8    and counsel for the government, would be entitled, once we

9    determine, if we can, what particular portion of a witness'

10   testimony you might be interested in, counsel are entitled to

11   review the transcript for the purpose of determining whether any

12   additional portion of that witness' testimony should in fairness

13   and completeness be read to you.

14          This is not because we don't trust you or we want to

15   give you more than you want.  But the testimony of a witness

16   given at trial, particularly one that extends for a full day or

17   day and a half, is often broken up into pieces.  There are things

18   that are said on direct examination that might be elaborated upon

19   or modified somewhat on cross examination.  And, of course, as

20   you well know in this case, we've had not just the direct

21   testimony of those two witnesses under questioning by the

22   government counsel, but we've had cross examination by four other

23   attorneys, each representing a defendant in this case.

24          So this would be an undertaking that, again, the Court

25   will certainly require us to go through if, in fairness to you

1     and to enable your ability to fairly and impartially reach a

2     verdict in this case, and if your notes don't adequately provide

3     the information, and your recollections, together with your

4     notes, don't provide sufficient information as to what a

5     particular witness might have said that you're interested in,

6     then we will go through this exercise.

7            But it's not simply a matter, and I just wanted to make

8     sure you understood, it's not simply a matter of printing out a

9     transcript and sending it in to you.  Again, to reiterate, the

10    transcript of witness testimony during the trial is never sent in

11    to the jury room.  You will have to rely on your recollection and

12    any notes you may have made in determining what the witness said.

13    If that effort of relying on your recollection and any notes you

14    may have made, together with any exhibits that you have in the

15    jury room, are not sufficient to enable you to make a

16    determination as to what a witness said, then we will go through

17    the process of trying to identify what portion or portions of the

18    witness' testimony in fairness should be read back to you.

19           The process that we would use is, I will probably

20    engage my law clerks to read the testimony as best they can.  And

21    that, again, would require us to take some time to make sure that

22    portions of the testimony that needed to be read to you could be

23    read to you and portions of the testimony that you need not hear

24    or should not hear are not read to you.

25           So I give you all this information so that you are

30

1    better able to, when you reassemble in a minute, make an

2    assessment of where you are and how you'd like to proceed.

3            I'm going to assume that you'd like to break, today

4    being Friday, perhaps a little bit earlier than you normally

5    would.  I'm thinking, it's up to you, but I'm thinking probably

6    around 3:00 or so you will be excused today.

7            But in the meantime, hopefully lunch is going to be

8    here in 15 or 20 minutes.  And you can take your break at 1:45

9    until 2 p.m.

10           Please consider these instructions that I've given you

11   here in the courtroom today, together with all of my

12   instructions, in going about your important job of deliberating a

13   verdict in this case.  Thank you very much, ladies and gentlemen.

14           The jury's excused to resume its deliberations.

15           (Jury exits the courtroom at 12:40 p.m.)

16           THE COURT:  First of all, before I hear from counsel,

17   Ms. Arrington, do you have any idea what that juror was doing

18   when he was motioning to you?

19           THE CLERK:  No.

20           THE COURT:  I don't know if you observed it, but Juror

21   Number 11?

22           MR. MARTIN:  Yes.

23           THE COURT:  Yes.  Juror number, was it 11 or -- yeah,

24   Juror Number 11 was making a hand motion towards Ms. Arrington.

25   I don't know what it means.  And Ms. Arrington doesn't know what

1    it means.  And maybe we'll get a note in a moment.

2              Okay.  First of all, I'll go down the line.  Any

3    exception or objection or request for supplemental instructions

4    beyond what I've already done, Mr. Coburn?

5              MR. COBURN:  No, Your Honor.  Thank you.

6              THE COURT:  All right.

7              MR. MARTIN:  No, Your Honor.

8              MR. CROWE:  No, Your Honor.

9              THE COURT:  Ms. Rhodes?

10             MS. RHODES:  Just, it's a small point, Your Honor, and

11   I guess they'll clarify it if they need clarification.  But I

12   have a feeling that on number one they may have felt that the,

13   what the Court said about you don't have to go in order does not

14   give them permission to do what they were asking.  In other

15   words, I'm not sure they were asking, can we, about order.  I

16   think they were saying, can we leave it deadlocked and --

17             THE COURT:  And that's the question I'm not, I didn't

18   intend to answer.  You're right.  That's part of the question and

19   I did not intend to answer that.  I'm not going to answer that

20   until I give a modified Allen charge.

21             MS. RHODES:  Okay.  I understand.

22             THE COURT:  All right.  Mr. Harding?

23             MR. HARDING:  Well, I understand now.  I thought you

24   were going to give the modified Allen charge right away.

25             THE COURT:  Oh, no.  No.  I won't give a modified Allen

1   charge until they send out a note that says something on the

2   order of, we've reached a verdict on all but two counts and we're

3   deadlocked on two.  Then I will give the modified Allen charge.

4              MR. HARDING:  Okay.  Thank you, Your Honor.

5              THE COURT:  Mr. Coburn?

6              MR. COBURN:  Your Honor, just a real quick housekeeping

7   issue.  I assume Your Honor probably saw that tedious e-mail I

8   circulated about my own scheduling issues.  I really apologize

9   for that.  And I just wanted to clarify one thing, which is

10  probably --

11             THE COURT:  By the way, I never did talk to Judge

12  Nichols.  He talked to my staff and I got an e-mail, and I

13  thought everything was in good, good shape.

14             MR. COBURN:  Well, actually, it worked out great, Your

15  Honor.  They stetted the case.

16             THE COURT:  Maybe you should stay away more often.

17             MR. COBURN:  That's absolutely true.  This is probably

18  already -- just so clear it's probably silly of me even to raise

19  it.  But in terms of Tuesday, the 9th, I'm just assuming --

20             THE COURT:  Please don't talk about Tuesday.

21             MR. COBURN:  I'm really jinxing it by even raising it

22  right now.

23             THE COURT:  Right.  Right.  You have to go back to West

24  Virginia?

25             MR. COBURN:  Mr. Kurland's in Nevada that day.  And I'm

33

1    just assuming it's not an acceptable situation for him to be in

2    Nevada and for me to be in Wheeling, West Virginia.  We'll work

3    it out another way.

4                THE COURT:  Okay.  Don't change your flight plans until

5    Monday.  I'm sorry, Mr. Coburn.  I had a very important matter

6    that I was to attend to.

7                MR. COBURN:  Not at all.  That's all.

8                THE COURT:  Duty calls.  Anybody else have anything?

9    Mr. Kurland?

10                MR. KURLAND:  Judge, I've got a personal matter that I

11    have to leave at two.  Can I be excused for the afternoon?

12                THE COURT:  Yes.  Absolutely.  Yes.  I just want to sit

13    here for you a few minutes and see if, if we hear anything.

14                By the way, the he record will reflect, although I'm

15    sure it does, that when we gathered yesterday afternoon to

16    dismiss the jury all defendants, including Mr. Harris, were

17    present.  And of course Mr. Harris has been in the courtroom

18    throughout the proceedings today.  It's good to have Mr. Harris

19    back with us.

20                By the way, Mr. Martin, Mr. Flannery, I do intend to

21    simply enter a brief order of explanation as to why Mr. Harris

22    was excluded from the courtroom during the closing argument of

23    counsel.  But of course, your objection to the Court's decision

24    in that regard is preserved on the record.

25                MR. MARTIN:  Can we see the order before you enter it,

1  Your Honor?  Just to have some input, perhaps?  Might not matter.

2  You want change your mind, I don't think.  I say that again

3  without fear of upsetting you, Your Honor.

4        THE COURT:  You won't.  Of course.  Of course.  No, you

5  can certainly -- well, in fact, why don't I invite you to just

6  file something before I enter the order?

7        MR. MARTIN:  That's fine, Your Honor.

8        THE COURT:  So I won't enter the order until you --

9        MR. MARTIN:  Thank you, Your Honor.

10        THE COURT:  -- just note in the record your written

11  objection.

12        Okay.  Well, I think they're waiting for lunch.  So why

13  don't we stand in recess.  I would ask counsel to not wander off

14  too far.  If you could, you know, stay at least 30 minutes,

15  within 30 minutes of the courthouse.  I didn't see any juror

16  express dissatisfaction with being dismissed around 3:00.  So I

17  would expect that, if nothing else happens before then, they'll

18  be happy to depart around three.

19        I'm going to go up and print out a copy of the Wyche

20  and Montgomery testimony just that I'll have it in the event that

21  we should get to that point today.

22        And I suggest, counsel -- you probably don't have your

23  copies with you.

24        MR. COBURN:  No.

25        THE COURT:  Do you have your copy, Ms. Rhodes?

1           MS. RHODES:  No.

2           THE COURT:  Are they here in Baltimore or --

3           MR. MARTIN:  We have ours, Your Honor.

4           THE COURT:  You have?

5           MR. MARTIN:  Yes, sir.

6           THE COURT:  Okay.  So --

7           MS. RHODES:  I have it on my computer, though.  I can

8    look at the section.

9           THE COURT:  All right.  Well, just so we're clear, and

10   I guess I left it somewhat ambiguous with the jury, and

11   intentionally so, I don't expect, I don't intend further to

12   address this issue unless and until I hear further from the jury.

13   I think my comments put the ball back in their court.

14           And so as we stand now, there's not going to be any

15   reading of testimony.  They're going to have to tell us they

16   really meant it.  Okay?

17           All right.  We're in recess.

18           (Recess at 12:48 p.m.)

19           (Further proceedings today covered by Gail Simpkins,

20   Court Reporter.)

21

22

23

24

25

36

REPORTER'S CERTIFICATE

1

2

3          I, Mary M. Zajac, do hereby certify that I recorded

4    stenographically the proceedings in the matter of USA v. Willie

5    Mitchell, et al., Case Number(s) AMD-04-029, on December 5, 2008.

6          I further certify that the foregoing pages constitute

7    the official transcript of proceedings as transcribed by me to

8    the within matter in a complete and accurate manner.

9          In Witness Whereof, I have hereunto affixed my

10   signature this _____ day of _____, 2009.

11

12

13

14          _____

                Mary M. Zajac,
15              Official Court Reporter

16

17

18

19

20

21

22

23

24

25

## 1

**1** [3] - 2:13, 26:8, 27:2
**101** [1] - 1:24
**10:00** [1] - 2:8
**11** [3] - 30:21, 30:23, 30:24
**11:47** [1] - 2:1
**12** [1] - 5:9
**128** [1] - 12:19
**12:28** [1] - 25:6
**12:40** [1] - 30:15
**12:48** [1] - 35:18
**145** [1] - 25:4
**15** [1] - 30:8
**150** [1] - 12:19
**18** [1] - 12:8
**19** [1] - 26:8
**1:00** [1] - 25:17
**1:30** [1] - 25:4
**1:45** [2] - 25:20, 30:8
**1st** [2] - 21:7, 24:20

## 2

**2** [3] - 25:4, 25:20, 30:9
**20** [1] - 30:8
**2008** [3] - 1:11, 27:3, 36:5
**2009** [1] - 36:10
**21201** [1] - 1:24
**27** [1] - 14:11
**2:00** [1] - 5:12

## 3

**30** [6] - 7:25, 8:5, 12:5, 25:17, 34:14, 34:15
**30%** [6] - 13:21, 13:22, 17:6, 17:7, 17:11, 17:12
**3:00** [2] - 30:6, 34:16

## 4

**40** [1] - 12:5

## 5

**5** [3] - 1:11, 5:8, 36:5
**500** [1] - 12:25
**5515** [1] - 1:23

## 7

**7** [1] - 27:3

**75%** [1] - 17:8
**7th** [2] - 2:14, 24:19

## 8

**80%** [2] - 17:8, 17:9

## 9

**90** [1] - 13:17
**90%** [2] - 13:20, 13:25
**95%** [1] - 13:18
**9th** [1] - 32:19

## A

**a.m** [1] - 2:1
**ability** [2] - 26:12, 29:1
**able** [6] - 4:7, 11:16, 15:20, 24:6, 27:6, 30:1
**Absolutely** [1] - 15:9, 18:3, 20:4, 33:12
**absolutely** [7] - 5:2, 5:22, 15:18, 20:22, 21:12, 26:9, 32:17
**abstract** [1] - 17:22
**acceptable** [1] - 33:1
**accommodate** [1] - 27:15
**accurate** [1] - 36:8
**achieve** [1] - 17:18
**acquiesce** [1] - 21:5
**Adam** [1] - 1:21
**add** [2] - 18:10, 22:9
**addition** [1] - 24:8
**additional** [2] - 22:3, 28:12
**address** [1] - 35:12
**adequately** [1] - 29:2
**admit** [1] - 8:5
**advanced** [1] - 5:16
**advised** [1] - 23:7
**affixed** [1] - 36:9
**afternoon** [15] - 2:14, 5:13, 7:11, 7:12, 10:17, 21:7, 23:16, 24:17, 24:24, 24:25, 25:2, 25:7, 27:3, 33:11, 33:15
**Afternoon** [1] - 24:18
**afternoons** [1] - 27:13
**age** [1] - 5:17
**ago** [4] - 2:15, 8:1, 8:5, 12:5
**agree** [10] - 4:1, 5:22, 7:19, 7:25, 8:9, 9:13, 15:12, 16:17, 20:3, 20:7
**agreed** [3] - 4:8, 8:10, 20:7

**agrees** [3] - 5:23, 8:14, 22:8
**ahead** [2] - 5:11, 22:7
**al** [1] - 36:5
**allegedly** [1] - 20:21
**Allen** [8] - 11:22, 18:2, 18:4, 18:5, 31:20, 31:24, 31:25, 32:3
**allow** [1] - 20:11
**almost** [1] - 21:13
**alternative** [1] - 4:12
**altogether** [1] - 22:11
**ambiguous** [5] - 2:19, 3:6, 9:14, 14:14, 35:10
**AMD-04-029** [2] - 1:6, 36:5
**AMERICA** [1] - 1:5
**amounts** [1] - 5:4
**analogous** [2] - 16:9, 16:13
**Andre** [1] - 1:13
**announce** [1] - 25:19
**answer** [18] - 3:17, 3:21, 4:13, 4:17, 8:15, 13:24, 17:15, 17:22, 22:23, 22:24, 23:2, 24:14, 26:4, 26:20, 26:21, 31:18, 31:19
**answering** [1] - 7:21
**anticipate** [2] - 16:23, 25:16
**apologize** [1] - 32:8
**appeal** [1] - 21:22
**Appearances** [1] - 1:15
**appointment** [1] - 24:23
**appreciate** [3] - 12:2, 12:20, 16:16
**approached** [1] - 14:19
**appropriate** [3] - 3:15, 8:13, 14:7
**argument** [1] - 33:22
**arranged** [1] - 27:23
**Arrington** [5] - 5:8, 22:19, 30:17, 30:24, 30:25
**arrive** [1] - 22:21
**assertion** [1] - 24:14
**assess** [1] - 5:6
**assessment** [2] - 21:9, 30:2
**assistant** [1] - 8:6
**assume** [2] - 30:3, 32:7
**assuming** [4] - 25:1, 25:20, 32:19, 33:1
**assumption** [1] - 25:5
**attend** [1] - 33:6
**attorneys** [2] - 20:20, 28:23
**author** [2] - 2:21, 13:8

**available** [4] - 3:16, 6:21, 21:16, 27:20
**aware** [3] - 5:18, 5:25, 6:5

## B

**ball** [1] - 35:13
**Baltimore** [3] - 1:12, 1:24, 35:2
**Barry** [1] - 1:21
**based** [3] - 4:2, 14:15, 19:14
**became** [3] - 5:18, 26:24, 26:25
**becomes** [2] - 3:20, 21:21
**behalf** [1] - 9:10
**Behalf** [5] - 1:15, 1:16, 1:17, 1:19, 1:20
**belong** [1] - 7:10
**best** [1] - 29:20
**better** [1] - 30:1
**beyond** [1] - 31:4
**bigger** [1] - 15:10
**bit** [4] - 12:6, 15:21, 18:17, 30:4
**brave** [1] - 21:19
**break** [6] - 25:3, 25:19, 25:20, 25:21, 30:3, 30:8
**bridge** [1] - 10:24
**brief** [1] - 33:21
**briefly** [1] - 15:4
**bring** [3] - 13:24, 17:14, 22:20
**broken** [1] - 28:17
**brothers** [1] - 13:14
**butt** [1] - 14:23

## C

**calculate** [1] - 17:7
**cannot** [1] - 3:18
**case** [16] - 4:18, 4:23, 5:17, 12:13, 13:16, 13:18, 16:1, 20:13, 21:20, 26:21, 27:5, 28:20, 28:23, 29:2, 30:13, 32:15
**CASE** [1] - 1:6
**Case** [1] - 36:5
**cases** [1] - 22:11
**certain** [3] - 5:19, 17:24, 17:25
**certainly** [14] - 5:23, 5:25, 9:14, 9:20, 12:10, 12:23, 17:4, 19:18, 19:19, 19:23, 19:25,

20:6, 28:25, 34:5
**CERTIFICATE** [1] - 36:1
**certify** [2] - 36:3, 36:6
**change** [3] - 19:14, 33:4, 34:2
**changed** [1] - 18:17
**characterizations** [1] - 3:25
**charge** [7] - 18:2, 18:4, 18:5, 31:20, 31:24, 32:1, 32:3
**charged** [1] - 13:6
**charges** [1] - 13:19
**choose** [1] - 26:11
**chose** [1] - 3:2
**chronological** [1] - 3:3
**circulated** [2] - 23:15, 32:8
**circumstance** [1] - 20:14
**clarification** [1] - 31:11
**clarify** [2] - 31:11, 32:9
**clear** [4] - 2:20, 15:15, 32:18, 35:9
**clearly** [2] - 9:20, 16:20
**Clearly** [2] - 3:7, 16:17
**CLERK** [1] - 30:19
**clerks** [1] - 29:20
**clients** [1] - 4:7
**clockwise** [1] - 14:21
**close** [1] - 9:18
**closed** [1] - 15:2
**closing** [1] - 33:22
**Coburn** [6] - 1:21, 11:2, 14:19, 31:4, 32:5, 33:5
**COBURN** [19] - 14:22, 14:25, 15:3, 15:10, 15:18, 16:4, 16:9, 17:21, 18:5, 18:7, 23:19, 31:5, 32:6, 32:14, 32:17, 32:21, 32:25, 33:7, 34:24
**coerce** [1] - 14:4
**coercion** [5] - 16:7, 16:12, 16:13, 17:2, 18:19
**comfortable** [1] - 19:1
**coming** [1] - 9:12
**comment** [1] - 19:25
**comments** [1] - 35:13
**competing** [1] - 4:12
**complete** [4] - 4:2, 14:1, 16:21, 36:8
**completed** [1] - 22:18
**completeness** [1] - 28:13
**completion** [1] - 7:20
**complex** [1] - 13:18
**complexity** [1] - 3:23
**compromise** [1] - 19:4
**compromised** [1] - 19:5

**computer** [2] - 15:22, 35:7
**conceivably** [1] - 20:17
**concern** [8] - 12:21, 16:6, 16:9, 16:12, 16:13, 18:18, 19:1, 20:16
**concerned** [2] - 17:4, 18:20
**confer** [1] - 22:24
**conferred** [2] - 3:9, 23:6
**confess** [1] - 5:16
**confound** [1] - 19:15
**consider** [9] - 4:10, 9:15, 12:15, 20:3, 22:25, 26:9, 26:13, 30:10
**conspiracy** [9] - 2:18, 3:20, 4:20, 13:5, 26:20, 26:24, 26:25
**constitute** [1] - 36:6
**constrained** [1] - 21:5
**consulted** [1] - 11:1
**context** [1] - 26:21
**continuing** [1] - 19:1
**convene** [1] - 25:11
**copies** [3] - 2:4, 23:7, 34:23
**copy** [4] - 21:25, 23:13, 34:19, 34:25
**correct** [2] - 5:2, 5:8
**counsel** [28] - 2:3, 2:6, 3:23, 4:1, 4:6, 7:23, 13:23, 14:2, 14:6, 17:13, 20:2, 20:7, 20:8, 20:16, 21:1, 21:8, 22:2, 23:12, 24:6, 28:2, 28:8, 28:10, 28:22, 30:16, 33:23, 34:13, 34:22
**counsel's** [1] - 26:8
**Count** [2] - 26:8
**count** [7] - 3:4, 11:19, 16:1, 16:19, 23:1, 26:9, 26:10
**counts** [28] - 2:9, 2:11, 2:23, 3:1, 3:6, 3:24, 4:7, 5:19, 6:19, 9:15, 11:13, 11:14, 11:16, 11:17, 11:23, 14:1, 16:11, 16:21, 17:13, 17:25, 18:25, 19:2, 25:25, 26:2, 26:13, 32:2
**couple** [2] - 18:25, 27:17
**course** [9] - 2:20, 10:23, 22:25, 26:4, 28:19, 33:17, 33:23, 34:4
**Court** [21] - 4:13, 5:17, 6:5, 6:17, 7:1, 7:5, 10:1, 11:12, 11:21, 13:10, 13:20, 15:24, 16:10, 20:3, 22:8, 22:9, 22:16,

28:24, 31:13, 35:20, 36:15
**court** [7] - 20:11, 21:16, 24:6, 24:25, 27:5, 35:13
**COURT** [74] - 1:1, 2:3, 5:1, 5:5, 5:14, 5:22, 6:7, 6:9, 6:11, 6:13, 7:4, 7:12, 7:16, 7:22, 8:2, 8:14, 8:16, 9:2, 9:4, 9:9, 9:23, 10:4, 10:19, 11:19, 11:22, 12:1, 14:24, 15:2, 15:8, 15:15, 16:3, 16:8, 16:15, 18:3, 18:6, 18:8, 18:13, 18:16, 19:25, 20:4, 20:22, 22:13, 22:15, 23:6, 23:12, 23:17, 23:20, 23:23, 24:1, 25:7, 30:16, 30:20, 30:23, 31:6, 31:9, 31:17, 31:22, 31:25, 32:5, 32:11, 32:16, 32:20, 32:23, 33:4, 33:8, 33:12, 34:4, 34:8, 34:10, 34:25, 35:2, 35:4, 35:6, 35:9
**Court's** [4] - 7:19, 9:5, 15:23, 33:23
**Courthouse** [1] - 1:23
**courthouse** [1] - 34:3
**courtroom** [11] - 2:2, 3:12, 10:11, 22:7, 25:6, 25:11, 27:21, 30:11, 30:15, 33:17, 33:22
**covered** [1] - 35:19
**create** [1] - 28:5
**credibility** [1] - 20:19
**CRIMINAL** [1] - 1:6
**cross** [10] - 10:18, 10:24, 11:3, 20:17, 21:3, 24:14, 27:8, 27:14, 28:19, 28:22
**CROWE** [3] - 9:10, 18:11, 31:8
**Crowe** [3] - 1:19, 18:8, 18:14
**customary** [1] - 27:4
**cut** [1] - 21:23
**cynicism** [1] - 12:3

**D**

**dates** [1] - 6:25
**Davis** [1] - 1:13
**days** [3] - 14:13, 14:14, 23:24
**DC** [1] - 15:25
**deadlock** [4] - 2:19, 9:17, 11:8, 22:25
**deadlocked** [7] - 2:9, 2:23, 9:13, 16:11, 25:25,

31:16, 32:3
**deal** [2] - 11:23, 17:15
**December** [2] - 1:11, 36:5
**decide** [2] - 14:15, 22:3
**decided** [1] - 13:17
**deciding** [1] - 5:19
**decision** [4] - 4:8, 16:20, 19:3, 33:23
**decisions** [1] - 4:3
**defendant** [7] - 2:10, 2:16, 2:24, 3:18, 4:19, 4:21, 12:14, 14:1, 19:10, 23:1, 26:1, 26:10, 26:14, 26:18, 26:22, 28:7, 28:23
**Defendant** [4] - 1:16, 1:17, 1:19, 1:20
**defendants** [2] - 2:1, 3:24, 33:16
**Defendants** [1] - 1:9
**defendants'** [1] - 19:22
**defense** [5] - 20:2, 20:7, 20:8, 20:16, 20:20
**deference** [1] - 22:11
**degree** [3] - 12:12, 12:15, 15:6
**delay** [3] - 22:22, 25:13, 25:15
**deliberate** [2] - 19:2, 26:12
**deliberated** [1] - 11:15
**deliberating** [3] - 6:23, 19:11, 30:12
**deliberation** [2] - 14:13, 14:14
**deliberations** [4] - 5:8, 9:14, 25:8, 30:14
**depart** [1] - 34:18
**determination** [2] - 13:15, 29:16
**determinations** [1] - 6:6
**determine** [2] - 24:7, 28:9
**determining** [2] - 28:11, 29:12
**different** [1] - 20:14
**difficult** [2] - 13:7, 13:8
**diligent** [1] - 27:5
**direct** [6] - 21:3, 24:14, 27:8, 27:14, 28:18, 28:20
**dirty** [1] - 15:21
**disagree** [2] - 8:19, 9:20
**discourage** [1] - 22:10
**discrete** [1] - 24:11
**discuss** [1] - 18:7
**discussed** [1] - 18:14
**discussion** [1] - 18:1
**dismiss** [1] - 33:16
**dismissed** [1] - 34:16
**dissatisfaction** [1] -

34:16
**distributed** [2] - 2:18, 26:20
**distribution** [1] - 3:19
**DISTRICT** [2] - 1:1, 1:2
**DIVISION** [1] - 1:2
**doctrine** [1] - 15:23
**DOJ** [1] - 8:7
**done** [6] - 15:13, 15:14, 19:13, 20:24, 22:13, 31:4
**door** [2] - 15:1, 15:2
**down** [2] - 19:6, 31:2
**drug** [10] - 2:17, 3:17, 3:24, 4:18, 13:2, 13:4, 14:2, 16:25, 26:19, 26:23
**drugs** [1] - 4:19
**during** [5] - 5:7, 25:8, 26:5, 29:10, 33:22
**Duty** [1] - 33:8

**E**

**e-mail** [2] - 32:7, 32:12
**early** [1] - 12:11
**easier** [1] - 19:24
**easy** [1] - 3:18
**effect** [2] - 10:6, 15:25
**effort** [1] - 29:13
**either** [2] - 3:12, 10:13
**elaborated** [1] - 28:18
**elide** [1] - 12:5
**enable** [2] - 29:1, 29:15
**end** [2] - 14:21, 21:18
**endeavor** [1] - 25:9
**engage** [1] - 29:20
**entail** [3] - 7:18, 10:10, 10:16
**enter** [4] - 33:21, 33:25, 34:6, 34:8
**entered** [1] - 4:20
**enters** [1] - 25:6
**entire** [2] - 10:23, 21:2
**entirely** [1] - 11:4
**entirety** [1] - 28:5
**entitled** [6] - 21:2, 21:9, 28:2, 28:4, 28:8, 28:10
**entry** [2] - 2:18, 26:20
**especially** [1] - 18:24
**Esquire** [8] - 1:16, 1:17, 1:18, 1:18, 1:19, 1:20, 1:21, 1:21
**essay** [1] - 12:19
**essentially** [1] - 6:25
**et** [1] - 36:5
**etc** [2] - 21:17
**event** [2] - 7:14, 34:20
**evidence** [4] - 4:21, 4:23, 8:11, 8:12
**exactly** [2] - 9:4, 24:18

**Exactly** [2] - 6:7, 6:9
**examination** [7] - 10:18, 11:4, 27:9, 27:14, 28:18, 28:19, 28:22
**examinations** [1] - 20:18
**except** [1] - 13:12
**exception** [1] - 31:3
**excluded** [1] - 33:22
**excused** [3] - 30:6, 30:14, 33:11
**exercise** [1] - 29:6
**exhibit** [1] - 10:9
**exhibits** [3] - 27:18, 27:19, 29:14
**exits** [1] - 30:15
**expect** [2] - 34:17, 35:11
**expected** [1] - 22:21
**experience** [1] - 15:14
**explain** [1] - 10:1
**explanation** [1] - 33:21
**explication** [1] - 24:21
**express** [1] - 34:16
**extends** [1] - 28:16
**extent** [2] - 15:20, 16:12
**extraordinarily** [1] - 13:18

**F**

**facilitate** [1] - 26:12
**fact** [5] - 6:5, 11:4, 20:22, 27:3, 34:5
**fair** [1] - 19:25
**fairly** [1] - 29:1
**fairness** [5] - 21:10, 22:3, 28:12, 28:25, 29:18
**families** [1] - 13:14
**family** [1] - 13:14
**far** [2] - 18:21, 34:14
**faster** [1] - 18:23
**faxed** [1] - 22:19
**faxing** [1] - 25:16
**fear** [1] - 34:3
**Federal** [1] - 15:24
**federal** [1] - 20:11
**felony** [1] - 12:12
**felt** [1] - 31:12
**few** [2] - 2:15, 33:13
**file** [1] - 34:6
**filled** [1] - 19:19
**final** [2] - 9:17, 13:15
**Finally** [1] - 27:1
**findings** [1] - 6:6
**fine** [2] - 10:2, 34:7
**finished** [8] - 13:21, 13:22, 17:7, 17:8, 17:9, 17:11, 17:12

firm [2] - 2:10, 26:2
First [5] - 25:15, 27:16, 27:25, 30:16, 31:2
first [14] - 2:7, 2:19, 4:16, 5:7, 8:13, 10:24, 14:25, 15:3, 15:11, 16:13, 18:5, 22:18, 25:24
five [1] - 14:13
Flannery [2] - 1:18, 33:20
flat [1] - 3:14
flight [1] - 33:4
focused [1] - 20:15
follow [1] - 24:4
following [2] - 2:16, 26:18
follows [2] - 25:25, 27:1
FOR [1] - 1:2
force [1] - 15:11
foregoing [1] - 36:6
foreman [1] - 24:16
foremost [1] - 27:25
foreperson [3] - 2:21, 2:22, 4:1
foresee [2] - 3:19, 26:23
form [5] - 4:3, 4:4, 5:4, 7:20, 16:10
forms [1] - 4:2
forward [1] - 17:16
four [3] - 14:13, 28:22
frankly [1] - 10:21
free [3] - 3:1, 26:9, 26:13
Friday [2] - 1:11, 30:4
front [1] - 14:23
full [3] - 23:24, 27:8, 28:16

## G

Gail [1] - 35:19
gained [1] - 13:9
GARDNER [1] - 1:8
Gardner [1] - 1:20
gathered [1] - 33:15
general [2] - 11:10, 15:12
gentlemen [3] - 21:15, 27:4, 30:13
Gerard [1] - 1:18
given [6] - 3:23, 18:24, 18:25, 27:17, 28:16, 30:10
Government [1] - 1:15
government [11] - 4:15, 4:17, 4:24, 6:4, 14:21, 20:6, 21:8, 21:11, 22:8, 28:8, 28:22
great [1] - 32:14

Great [2] - 22:19, 23:17
guess [7] - 7:22, 16:4, 20:2, 20:7, 22:9, 31:11, 35:10
guide [1] - 19:19
guilty [7] - 2:17, 12:14, 13:3, 13:12, 14:10, 26:19
guilty's [5] - 14:11, 16:24, 16:25

## H

half [6] - 14:13, 23:24, 23:25, 24:1, 27:13, 28:17
hand [2] - 24:16, 30:24
handle [1] - 25:24
Hanlon [1] - 21:1
happy [4] - 14:5, 34:18
hard [1] - 23:7
HARDING [14] - 4:16, 5:3, 5:12, 5:16, 6:3, 6:8, 6:10, 6:12, 20:2, 20:5, 22:8, 22:14, 31:23, 32:4
Harding [1] - 1:16, 4:15, 5:6, 5:11, 6:13, 7:25, 8:10, 8:14, 20:1, 20:23, 31:22
HARRIS [1] - 1:7
Harris [5] - 1:17, 33:16, 33:17, 33:18, 33:21
hate [2] - 8:5, 8:19
hear [15] - 2:5, 3:22, 7:22, 15:18, 20:12, 21:4, 21:6, 24:2, 24:8, 29:23, 29:24, 30:16, 33:13, 35:12
heard [2] - 12:4, 12:5
hearing [2] - 4:14, 17:13
held [1] - 4:19
hereby [1] - 36:3
hereunto [1] - 36:9
Honor [38] - 5:17, 6:12, 6:15, 8:9, 8:25, 9:3, 9:8, 9:10, 9:24, 11:7, 14:22, 15:1, 15:4, 15:5, 15:10, 15:12, 15:18, 17:21, 17:23, 18:11, 18:14, 20:10, 22:12, 22:14, 23:10, 31:5, 31:7, 31:8, 31:10, 32:4, 32:6, 32:7, 32:15, 34:1, 34:3, 34:7, 34:9, 35:3
Honorable [1] - 1:13
hope [1] - 14:4
hopefully [1] - 30:7
housekeeping [1] - 32:6
hung [7] - 11:16, 11:17,

11:19, 11:21, 11:23, 12:23, 14:1
hypothetically [1] - 13:11

## I

idea [3] - 10:19, 22:17, 30:17
identification [1] - 24:12
identifies [1] - 10:24
identify [1] - 29:17
impartially [1] - 29:1
impeached [1] - 20:21
implicated [2] - 2:17, 26:18
important [3] - 24:23, 30:12, 33:5
impression [1] - 28:6
IN [1] - 1:1
inclination [1] - 3:15
include [3] - 11:3, 11:13, 11:14
included [2] - 21:9, 21:11
includes [1] - 11:11
including [5] - 21:1, 21:8, 21:11, 27:7, 33:16
indeed [2] - 26:5, 27:10, 28:3
indicate [2] - 9:17, 22:21
indicated [1] - 6:18
indicating [1] - 9:16
indictment [3] - 13:6, 23:1, 26:10
individual [2] - 2:9, 26:1
inform [1] - 13:20
information [10] - 4:9, 4:22, 14:15, 14:17, 17:3, 19:13, 19:14, 29:3, 29:4, 29:25
input [1] - 34:1
inquiry [1] - 26:4
insofar [1] - 24:16
instance [1] - 16:13
instruct [1] - 6:17
instructed [2] - 2:25, 12:16
instruction [5] - 4:24, 8:13, 15:8, 21:15, 26:6
instructions [9] - 12:18, 13:24, 15:24, 26:5, 26:6, 30:10, 30:12, 31:3
intend [4] - 31:18, 31:19, 33:20, 35:11
intentionally [1] - 35:11

interested [4] - 22:2, 24:13, 28:10, 29:5
interests [1] - 19:23
intermediate [1] - 13:9
interpretation [1] - 3:5
interrupt [2] - 5:6, 7:4
interrupted [1] - 27:11
invite [2] - 25:4, 34:5
involve [2] - 7:7, 21:24
involved [3] - 3:9, 4:21, 26:24
involves [1] - 7:17
irrelevant [2] - 12:9, 12:10
issue [9] - 3:7, 4:18, 8:11, 11:8, 16:17, 20:9, 21:22, 32:7, 35:12
issues [6] - 3:24, 4:7, 11:8, 12:23, 20:19, 32:8
itself [1] - 13:20

## J

James [1] - 1:20
jinxing [1] - 32:21
job [1] - 30:12
judge [2] - 12:4, 21:21
Judge [7] - 1:13, 4:16, 10:22, 17:9, 20:2, 32:11, 33:10
judgment [1] - 21:3
juror [2] - 30:17, 34:15
Juror [3] - 30:20, 30:23, 30:24
jurors [1] - 8:17
Jury [4] - 1:14, 2:2, 25:6, 30:15
jury [54] - 2:4, 2:8, 2:9, 2:12, 2:13, 2:16, 2:20, 2:25, 3:13, 3:16, 4:2, 4:3, 4:7, 5:9, 6:9, 6:17, 7:2, 7:6, 7:8, 7:15, 9:13, 10:10, 12:14, 12:16, 12:22, 14:3, 14:17, 15:25, 16:6, 16:23, 18:19, 20:11, 20:19, 21:6, 21:7, 21:25, 22:4, 22:5, 22:10, 22:20, 24:2, 24:8, 24:22, 25:3, 25:7, 25:25, 27:1, 27:20, 29:11, 29:15, 33:16, 35:10, 35:12
jury's [3] - 4:13, 21:4, 30:14

## K

Kelsey [1] - 1:17
kilograms [1] - 12:25

kind [3] - 14:22, 15:19, 15:21
knowing [1] - 17:23
Kurland [1] - 1:21, 11:24, 18:7, 33:9
KURLAND [6] - 9:24, 10:17, 11:1, 11:20, 11:25, 33:10
Kurland's [1] - 32:25

## L

Ladies [1] - 21:15
ladies [2] - 27:4, 30:13
laid [1] - 17:6
last [3] - 12:23, 18:9, 26:16
Laura [1] - 1:17
law [4] - 3:14, 4:18, 21:20, 29:20
lawyer [1] - 28:7
least [2] - 5:12, 13:19, 34:14
leave [2] - 31:16, 33:11
lectern [1] - 14:20
left [2] - 17:25, 35:10
legal [1] - 12:10
length [2] - 6:23, 6:24
less [2] - 12:25, 19:1
liable [1] - 4:19
lieu [1] - 7:21
life [1] - 17:17
light [4] - 4:9, 6:22, 14:14, 16:24
limited [1] - 15:19
line [1] - 31:2
listen [5] - 8:18, 8:20, 8:21, 8:23, 27:21
listening [1] - 20:23
locate [1] - 3:10
Lombard [1] - 1:24
look [5] - 4:4, 13:10, 16:3
looking [3] - 16:10, 24:18, 24:21
lost [2] - 13:9, 13:21
lunch [11] - 10:6, 10:13, 13:25, 17:16, 22:21, 24:10, 25:5, 25:17, 25:21, 30:7, 34:12
luncheon [1] - 25:16

## M

mail [2] - 32:7, 32:12
majority [1] - 12:9
manner [2] - 17:20, 36:8

marked [1] - 27:19
**MARTIN** [17] - 1:8, 7:24, 8:4, 8:15, 8:17, 9:3, 9:7, 18:14, 23:10, 23:25, 30:22, 31:7, 33:25, 34:7, 34:9, 35:3, 35:5
**Martin** [9] - 1:18, 1:19, 9:2, 9:4, 9:11, 10:21, 18:13, 23:9, 33:20
**Mary** [3] - 1:23, 36:3, 36:14
**MARYLAND** [1] - 1:2
**Maryland** [2] - 1:12, 1:24
matter [11] - 11:10, 19:9, 24:23, 28:1, 29:7, 29:8, 33:5, 33:10, 34:1, 36:4, 36:8
mature [1] - 14:6
mean [9] - 7:25, 10:8, 10:19, 12:16, 12:18, 14:22, 16:9, 20:25, 21:8
means [2] - 30:25, 31:1
meant [1] - 35:16
meantime [1] - 30:7
member [3] - 3:20, 26:24, 26:25
Members [1] - 25:7
memory [1] - 9:1
mentioned [1] - 22:12
menu [2] - 5:9, 5:15
menus [1] - 22:18
message [1] - 18:20
midstream [1] - 19:15
might [8] - 5:5, 5:14, 19:4, 19:15, 23:11, 28:10, 28:18, 29:5
Might [1] - 14:1
mind [4] - 9:16, 20:24, 27:25, 34:2
minute [1] - 30:1
minutes [7] - 2:15, 18:9, 25:17, 30:8, 33:13, 34:14, 34:15
**MITCHELL** [1] - 1:7
**Mitchell** [2] - 1:16, 36:5
modification [1] - 16:18
modified [6] - 11:22, 28:19, 31:20, 31:24, 31:25, 32:3
moment [5] - 15:20, 22:24, 23:4, 26:17, 31:1
**Monday** [1] - 33:5
monster [1] - 12:8
**Montgomery** [16] - 7:10, 9:22, 10:18, 23:8, 23:18, 23:19, 23:20, 23:21, 23:24, 24:19, 27:7, 27:9, 27:12, 27:22, 28:2, 34:20

**Montgomery's** [5] - 2:14, 11:2, 11:4, 27:3, 27:11
months [1] - 6:24
morning [5] - 2:4, 6:14, 6:15, 9:10, 9:24
**Most** [1] - 17:10
most [5] - 2:22, 14:6, 17:9, 26:11, 26:14
motion [1] - 30:24
motioning [1] - 30:18
move [1] - 18:23
moved [1] - 3:4
**MR** [58] - 4:16, 5:3, 5:12, 5:16, 6:3, 6:8, 6:10, 6:12, 7:24, 8:4, 8:15, 8:17, 9:3, 9:7, 9:10, 9:24, 10:17, 11:1, 11:20, 11:25, 14:22, 14:25, 15:3, 15:10, 15:18, 16:4, 16:9, 17:21, 18:5, 18:7, 18:11, 18:14, 20:2, 20:5, 22:8, 22:14, 23:10, 23:19, 23:25, 30:22, 31:5, 31:7, 31:8, 31:23, 32:4, 32:6, 32:14, 32:17, 32:21, 32:25, 33:7, 33:10, 33:25, 34:7, 34:9, 34:24, 35:3, 35:5
**MS** [11] - 6:15, 7:9, 7:13, 7:18, 18:17, 23:14, 23:22, 31:10, 31:21, 35:1, 35:7
multitude [1] - 3:24
murder [7] - 3:25, 12:12, 12:13, 12:15, 12:16, 15:6
murders [1] - 13:12
must [4] - 5:3, 24:6, 24:8, 27:24

## N

narcotics [1] - 3:19
narrow [3] - 10:13, 24:13, 28:1
narrows [1] - 21:7
**Natasha** [4] - 2:13, 9:21, 24:19, 27:2
necessarily [2] - 9:17, 19:23
necessary [2] - 6:6, 10:2
need [8] - 7:22, 8:18, 19:3, 19:20, 25:11, 27:15, 29:23, 31:11
needed [1] - 29:22
**Nevada** [2] - 32:25, 33:2
never [7] - 5:25, 21:12,

21:13, 22:5, 27:19, 29:10, 32:11
new [1] - 21:19
next [2] - 14:3, 14:16
**Nichols** [1] - 32:12
night [1] - 19:6
**NO** [1] - 1:6
nobody [1] - 8:23
nobody's [1] - 12:4
non [1] - 12:21
non-prejudicial [1] - 12:21
normally [1] - 30:4
**NORTHERN** [1] - 1:2
note [15] - 2:7, 2:16, 2:19, 2:21, 4:1, 9:14, 9:16, 15:7, 25:24, 26:16, 27:1, 31:1, 32:1, 34:10
notes [15] - 2:4, 8:18, 9:1, 10:2, 14:14, 18:25, 21:17, 22:21, 25:9, 25:12, 25:23, 29:2, 29:4, 29:12, 29:13
nothing [1] - 34:17
**Number** [3] - 25:18, 30:21, 30:24
number [9] - 6:16, 6:20, 7:3, 7:19, 27:6, 27:16, 27:23, 30:23, 31:12
**Number(s** [1] - 36:5
numerical [2] - 3:3, 26:8

## O

object [1] - 6:4
objection [5] - 5:24, 6:2, 31:3, 33:23, 34:11
objects [1] - 6:3
observed [1] - 30:20
obtain [1] - 10:7
obvious [1] - 13:3
**Obviously** [3] - 3:10, 4:11, 13:14
obviously [3] - 11:7, 11:8, 13:2
occasions [2] - 25:10, 25:13
occur [1] - 12:12
**October** [7] - 2:13, 2:14, 21:7, 24:19, 24:20, 27:2, 27:3
**OF** [3] - 1:2, 1:5, 1:11
official [1] - 36:7
**Official** [1] - 36:15
often [2] - 28:17, 32:16
once [2] - 7:25, 28:8
one [20] - 4:2, 4:5, 4:11, 6:3, 6:16, 12:1, 14:1,

14:2, 15:17, 20:9, 22:21, 23:4, 24:13, 24:15, 25:12, 25:24, 28:16, 31:12, 32:9
open [4] - 4:14, 15:1, 16:15, 24:5
opinion [2] - 2:20
opportunity [6] - 13:20, 14:7, 14:13, 22:2, 24:7, 24:10
oppose [1] - 8:25
opposed [4] - 7:21, 9:8, 9:9, 9:11
order [20] - 3:1, 3:3, 6:16, 9:15, 10:6, 14:18, 16:10, 23:1, 25:11, 26:8, 26:11, 26:14, 27:15, 31:13, 31:15, 32:2, 33:21, 33:25, 34:6, 34:8
orders [1] - 3:1
otherwise [1] - 4:22
outdoors [4] - 25:3, 25:19, 25:20, 25:21
outlined [1] - 11:12
overall [1] - 19:5
overlapping [1] - 13:18
own [1] - 32:8

## P

p.m [7] - 22:22, 25:5, 25:6, 25:20, 30:9, 30:15, 35:18
page [2] - 12:19
pages [2] - 12:8, 36:6
palatable [1] - 17:17
paradigm [1] - 17:6
part [5] - 10:20, 15:23, 15:24, 19:6, 31:18
partial [14] - 4:9, 5:4, 5:19, 8:21, 9:11, 11:11, 11:17, 15:16, 17:10, 17:12, 17:24, 18:4, 20:5, 20:6
particular [2] - 28:9, 29:5
particularly [3] - 8:20, 22:1, 28:16
parties [2] - 11:6, 21:10
past [5] - 2:11, 3:4, 3:5, 6:18, 26:2
**Paul** [1] - 1:18
**Pause** [1] - 23:5
**PDF** [1] - 23:15
people [1] - 19:6
percentage [1] - 17:25
percentages [1] - 17:23
perhaps [5] - 7:13, 16:25, 23:15, 30:4, 34:1

period [2] - 10:25, 28:1
permission [1] - 31:14
permit [1] - 13:10
personal [2] - 24:23, 33:10
persuaded [1] - 16:16
physical [1] - 20:25
pieces [1] - 28:17
plans [1] - 33:4
play [1] - 13:16
point [1] - 2:10, 12:20, 15:4, 15:5, 15:10, 18:24, 21:24, 25:1, 26:2, 31:10, 34:21
points [1] - 22:16
portion [6] - 10:22, 24:8, 24:12, 28:9, 28:12, 29:17
portions [4] - 24:7, 29:17, 29:22, 29:23
position [7] - 6:16, 9:21, 11:3, 11:14, 18:11, 18:17, 19:9
possessed [2] - 2:18, 26:19
possession [1] - 3:19
possible [3] - 17:22, 25:10, 27:24
possibly [1] - 19:4
potential [1] - 17:2
practical [2] - 12:10, 13:16, 14:9
practice [1] - 27:4
precluding [1] - 22:11
prefer [1] - 25:21
prejudice [1] - 14:9
prejudicial [1] - 12:21
preliminary [1] - 27:24
premeditated [2] - 12:15, 15:6
premeditation [1] - 12:12
prepare [2] - 10:7, 27:6
prepared [1] - 11:5
present [3] - 2:1, 2:2, 33:17
preserved [1] - 33:24
pretty [1] - 9:18
print [1] - 34:19
printing [1] - 29:8
problem [6] - 4:17, 4:24, 5:21, 5:23, 10:20, 11:10
problematic [1] - 3:8
procedure [3] - 6:4, 11:12, 24:4
proceed [10] - 2:11, 3:5, 4:13, 6:17, 6:18, 14:16, 17:19, 22:25, 26:2, 30:2
proceeding [1] - 19:16

proceedings [5] - 21:17, 33:18, 35:19, 36:4, 36:7
Proceedings [2] - 2:1, 23:5
process [5] - 19:16, 19:24, 26:15, 29:17, 29:19
professional [1] - 14:6
profoundly [1] - 12:2
prompt [1] - 18:9
proposal [11] - 2:5, 3:22, 4:11, 5:3, 9:5, 12:4, 12:6, 12:21, 13:8, 16:18, 17:18
proposals [1] - 4:12
propose [6] - 3:25, 4:6, 4:25, 9:25, 12:22, 22:20
proposed [4] - 4:17, 7:19
proposing [1] - 14:8
proposition [1] - 15:13
prosecutor [1] - 8:4
provide [5] - 7:1, 7:6, 24:11, 29:2, 29:4
provided [3] - 2:3, 11:5, 23:9
purpose [3] - 8:21, 21:3, 28:11
put [2] - 26:7, 35:13
Pyne [1] - 1:20, 18:8

Q

quantities [7] - 2:17, 3:18, 13:2, 13:5, 14:2, 26:19, 26:23
quantity [3] - 3:25, 4:18, 16:25
questioning [1] - 28:21
questions [5] - 4:13, 7:21, 13:24, 17:15, 24:15
quick [2] - 15:21, 32:6
quite [2] - 9:18, 22:16
quote [3] - 2:8, 2:12, 2:16

R

raise [1] - 32:18
raising [2] - 16:16, 32:21
rather [3] - 12:19, 14:16, 25:21
reach [3] - 4:8, 26:10, 29:1
reached [9] - 2:22, 11:15, 13:3, 13:11,

14:10, 16:19, 16:22, 17:14, 32:2
reaching [4] - 2:11, 3:6, 6:19, 26:2
read [23] - 3:2, 3:12, 7:15, 10:5, 10:11, 10:21, 10:23, 11:3, 13:24, 20:12, 20:19, 20:21, 22:4, 24:5, 24:9, 25:24, 28:3, 28:13, 29:18, 29:20, 29:22, 29:23, 29:24
readbacks [1] - 21:14
readily [1] - 3:16
reading [8] - 7:7, 17:16, 22:6, 25:1, 25:2, 27:22, 35:15
reads [1] - 27:1
real [1] - 32:6
realities [1] - 13:16
reality [1] - 14:9
really [13] - 7:24, 11:9, 12:2, 13:13, 14:5, 15:22, 16:4, 17:5, 20:23, 32:8, 32:21, 35:16
realtime [2] - 3:8, 21:13
reason [2] - 15:19, 16:5
reasonably [2] - 3:19, 26:23
reasoned [2] - 2:10, 26:1
reassemble [1] - 30:1
reassembled [1] - 25:14
received [2] - 2:4, 25:9
recently [1] - 2:15
recess [2] - 34:13, 35:17
Recess [1] - 35:18
recollection [2] - 29:11, 29:13
recollections [1] - 29:3
reconsider [1] - 10:13
record [7] - 9:4, 14:4, 21:16, 23:4, 33:14, 33:24, 34:10
recorded [1] - 36:3
recrosses [1] - 20:18
redirect [1] - 20:18
refinement [2] - 5:1, 8:11
reflect [2] - 14:5, 33:14
regard [2] - 9:25, 33:24
regarding [2] - 12:11, 19:9
regret [2] - 22:22, 25:13
reiterate [1] - 29:9
relate [2] - 2:9, 25:25
relates [1] - 16:6
relating [1] - 3:24

relevant [1] - 20:17
rely [3] - 9:1, 10:1, 29:11
relying [1] - 29:13
remain [1] - 18:15
remaining [1] - 18:2
remains [1] - 18:11
Remains [1] - 18:13
report [1] - 17:1
Reported [1] - 1:22
reporter [4] - 3:12, 21:16, 24:25, 27:5
Reporter [2] - 35:20, 36:15
REPORTER'S [1] - 36:1
reporting [3] - 2:19, 3:8, 21:13
reports [1] - 2:8
representing [1] - 28:23
request [6] - 6:23, 7:1, 10:13, 10:14, 27:15, 31:3
requested [2] - 6:18, 6:22
require [3] - 4:21, 28:25, 29:21
required [2] - 9:20, 28:3
research [1] - 15:21
resolved [2] - 11:8, 11:13
respect [8] - 5:3, 9:13, 12:2, 13:13, 15:3, 16:1, 15:23, 28:2
respond [1] - 25:9, 25:12
response [3] - 7:19, 9:5, 15:6
responsible [1] - 26:22
restaurant [1] - 5:15
resume [1] - 30:14
return [2] - 11:17, 11:19
returned [1] - 17:24
returning [1] - 11:11
reverse [1] - 14:18
review [6] - 2:13, 21:2, 22:2, 24:7, 27:2, 28:11
reviewed [1] - 5:17
reviewing [4] - 3:7, 9:19, 9:25, 20:23
RHODES [11] - 6:15, 7:9, 7:13, 7:18, 18:17, 23:14, 23:22, 31:10, 31:21, 35:1, 35:7
Rhodes [9] - 1:17, 6:13, 8:19, 10:9, 18:16, 22:15, 23:17, 31:9, 34:25
ripe [1] - 11:9
road [1] - 19:6
Robert [1] - 1:16
room [6] - 7:8, 10:10, 22:5, 27:20, 29:11, 29:15

Room [1] - 1:23
rooted [1] - 14:8
RPR [1] - 1:23

S

salient [1] - 22:16
saw [2] - 12:11, 32:7
scheduling [1] - 32:8
second [8] - 11:7, 12:12, 12:15, 15:6, 16:14, 18:24, 23:2, 26:16
section [2] - 20:17, 35:8
sections [1] - 20:20
see [17] - 3:9, 4:5, 6:14, 6:15, 10:7, 13:7, 13:8, 16:11, 17:5, 18:21, 20:12, 23:12, 24:20, 33:13, 33:25, 34:15
seem [1] - 16:24
selections [3] - 5:9, 5:15, 25:16
send [8] - 4:1, 4:3, 7:5, 9:5, 10:10, 13:25, 17:16, 32:1
sending [1] - 29:9
sense [4] - 4:15, 12:10, 19:5
sent [7] - 2:16, 5:9, 18:20, 25:23, 26:16, 27:18, 29:10
serves [1] - 8:21
several [1] - 4:5
shape [1] - 32:12
SHAWN [1] - 1:8
sheet [15] - 3:23, 5:18, 9:6, 9:12, 12:7, 12:18, 13:10, 13:25, 16:21, 16:24, 17:7, 19:12, 19:17, 19:18, 26:7
SHELLY [1] - 1:8
SHELTON [1] - 1:7
shot [1] - 12:1
shows [1] - 16:24
sides' [2] - 2:10, 26:1
signature [1] - 36:10
silly [1] - 32:18
Simpkins [1] - 35:19
simply [7] - 4:13, 9:14, 12:20, 17:14, 29:7, 29:8, 33:21
single [2] - 2:23, 15:25
sit [6] - 3:11, 8:18, 8:20, 13:13, 20:22, 33:17
sitting [3] - 7:7, 10:11, 13:17
situation [3] - 19:22, 20:16, 33:1
skepticism [1] - 12:3

skip [1] - 26:16
small [1] - 31:10
somewhat [3] - 14:14, 28:19, 35:10
sorry [5] - 5:5, 5:11, 7:4, 21:23, 33:5
sort [1] - 20:23
sounds [1] - 9:17
special [1] - 12:8
specific [1] - 22:23
specificity [1] - 6:22
specify [1] - 7:13
speed [1] - 19:21
speeding [1] - 19:23
spend [1] - 13:1
spite [1] - 5:16
split [2] - 16:2, 18:25
staff [1] - 32:12
stand [6] - 7:12, 27:8, 27:10, 27:12, 34:13, 35:14
standard [1] - 21:14
start [3] - 4:14, 14:18, 14:20
state [1] - 12:13
STATES [2] - 1:1, 1:5
stay [3] - 14:2, 32:16, 34:14
stenographic [1] - 21:17
stenographically [1] - 36:4
step [1] - 13:9
steps [2] - 10:7, 27:24
stetted [1] - 32:15
still [4] - 7:14, 9:24, 10:2, 22:16
straight [1] - 3:21
Street [1] - 1:24
stronger [1] - 18:18
strongly [1] - 12:24
struggling [2] - 12:25, 13:2
stuck [1] - 24:13
stuff [1] - 13:4
subject [3] - 8:10, 17:12, 28:1
subsidiary [1] - 12:23
substantially [1] - 2:22
success [1] - 15:22
sufficient [2] - 29:4, 29:15
suggest [3] - 3:2, 3:15, 34:22
suggested [2] - 5:1, 10:20
suggesting [1] - 4:19
suggests [3] - 3:14, 12:24, 24:17

**supplemental** [2] - 15:8, 31:3
**support** [1] - 20:6
**Suppose** [1] - 13:11
**suspicion** [3] - 3:22, 12:22, 17:8

## T

**table** [1] - 11:18
**tedious** [1] - 32:7
**ten** [1] - 18:9
**terms** [5] - 7:20, 9:19, 19:16, 19:24, 32:19
**terribly** [1] - 7:10
**testifying** [1] - 27:19
**testimonies** [1] - 6:22
**testimony** [53] - 2:13, 2:14, 3:7, 3:10, 3:13, 3:16, 6:20, 6:25, 7:2, 7:6, 7:7, 7:11, 8:21, 9:19, 9:21, 9:25, 10:5, 10:11, 10:23, 11:2, 13:24, 17:16, 21:2, 22:1, 22:3, 22:7, 23:8, 24:3, 24:5, 24:12, 24:17, 27:2, 27:3, 27:6, 27:11, 27:13, 27:17, 27:23, 28:1, 28:3, 28:5, 28:10, 28:12, 28:15, 28:21, 29:10, 29:18, 29:20, 29:22, 29:23, 34:20, 35:15
**Texas** [3] - 8:1, 8:3, 12:5
**THE** [76] - 1:1, 1:2, 2:3, 5:1, 5:5, 5:14, 5:22, 6:7, 6:9, 6:11, 6:13, 7:4, 7:12, 7:16, 7:22, 8:2, 8:14, 8:16, 9:2, 9:4, 9:9, 9:23, 10:4, 10:19, 11:19, 11:22, 12:1, 14:24, 15:2, 15:8, 15:15, 16:3, 16:8, 16:15, 18:3, 18:6, 18:8, 18:13, 18:16, 19:25, 20:4, 20:22, 22:13, 22:15, 23:6, 23:12, 23:17, 23:20, 23:23, 24:1, 25:7, 30:16, 30:19, 30:20, 30:23, 31:6, 31:9, 31:17, 31:22, 31:25, 32:5, 32:11, 32:16, 32:20, 32:23, 33:4, 33:8, 33:12, 34:4, 34:8, 34:10, 34:25, 35:2, 35:4, 35:6, 35:9
**thereof** [1] - 16:18
**they've** [11] - 3:3, 6:23, 13:3, 13:11, 14:10, 17:14, 19:11, 19:13, 19:17, 19:19, 21:10

**thinking** [2] - 30:5
**thinks** [1] - 22:16
**Thomas** [1] - 1:19
**three** [7] - 7:3, 7:19, 14:10, 14:11, 23:24, 27:13, 34:18
**throughout** [1] - 33:18
**today** [8] - 20:24, 25:19, 30:3, 30:6, 30:11, 33:18, 34:21, 35:19
**together** [4] - 26:8, 29:3, 29:14, 30:11
**took** [3] - 8:17, 17:21, 17:23
**total** [2] - 24:1, 27:13
**towards** [1] - 30:24
**traditional** [1] - 17:19
**transacted** [1] - 4:20
**transactions** [1] - 4:22
**transcribed** [1] - 36:7
**transcript** [14] - 7:5, 7:8, 10:7, 10:9, 11:5, 21:16, 21:18, 21:25, 22:3, 24:7, 28:11, 29:9, 29:10, 36:7
**transcripts** [12] - 20:9, 20:12, 20:13, 21:1, 21:20, 22:5, 22:10, 27:6, 27:16, 27:18, 28:4
**transmitted** [1] - 5:15
**trial** [5] - 6:24, 27:17, 27:19, 28:16, 29:10
**trouble** [1] - 16:1
**troubled** [1] - 5:20
**true** [1] - 32:17
**trust** [1] - 28:14
**try** [1] - 14:3
**trying** [6] - 3:10, 12:13, 14:4, 15:20, 17:17, 29:17
**Tuesday** [2] - 32:19, 32:20
**turned** [2] - 12:17, 12:18
**twice** [1] - 27:11
**two** [17] - 2:7, 2:9, 2:23, 6:20, 6:24, 6:25, 14:1, 14:2, 22:1, 24:3, 24:15, 25:18, 25:25, 28:21, 32:2, 32:3, 33:11
**types** [1] - 26:23

## U

**U.S** [1] - 1:23
**ultimately** [2] - 16:17, 19:4
**unanimous** [7] - 4:3, 4:8, 11:15, 16:20, 16:22, 17:1, 17:14

**uncomfortable** [1] - 8:8
**undecided** [1] - 19:2
**under** [1] - 28:21
**understood** [1] - 29:8
**undertaking** [1] - 28:24
**UNITED** [2] - 1:1, 1:5
**unless** [2] - 20:7, 35:12
**unlike** [1] - 27:17
**unreasonable** [1] - 7:1
**up** [8] - 12:23, 14:1, 19:21, 19:23, 20:19, 28:17, 30:5, 34:19
**upsetting** [1] - 34:3
**USA** [1] - 36:4
**useful** [1] - 26:14
**utterly** [1] - 12:21

## V

**vast** [1] - 12:9
**verdict** [50] - 2:11, 2:22, 3:6, 3:23, 4:2, 4:3, 4:4, 4:9, 5:4, 5:18, 5:20, 6:19, 7:20, 9:6, 9:12, 11:11, 11:15, 11:17, 11:19, 12:7, 12:18, 13:3, 13:10, 13:11, 13:25, 15:16, 16:10, 16:12, 16:21, 16:22, 16:24, 17:7, 17:10, 17:12, 17:14, 17:24, 18:4, 19:4, 19:12, 20:5, 20:6, 26:3, 26:7, 26:9, 26:10, 26:12, 29:2, 30:13, 32:2
**verdicts** [2] - 14:10, 17:24
**versus** [3] - 12:25, 15:6, 16:11
**victim's** [1] - 13:14
**views** [2] - 2:10, 26:1
**Virginia** [2] - 32:24, 33:2
**VOLUME** [1] - 1:11
**vote** [1] - 16:19

## W

**wacky** [1] - 12:4
**waiting** [1] - 34:12
**wander** [1] - 34:13
**wants** [2] - 8:23, 24:8
**WAYNE** [1] - 1:8
**week** [1] - 14:3
**weight** [1] - 5:7
**West** [3] - 1:24, 32:23, 33:2
**whatsoever** [1] - 10:19
**Wheeling** [1] - 33:2

**Whereof** [1] - 36:9
**whole** [4] - 10:21, 19:12, 19:18
**William** [4] - 2:14, 9:22, 24:19, 27:2
**WILLIE** [1] - 1:7
**Willie** [1] - 36:4
**wish** [2] - 23:2, 27:21
**Witness** [1] - 36:9
**witness** [9] - 20:21, 21:2, 27:17, 27:22, 28:15, 29:5, 29:10, 29:12, 29:16
**witness'** [6] - 10:23, 24:17, 28:5, 28:9, 28:12, 29:18
**witnesses** [6] - 8:22, 22:1, 24:3, 27:7, 27:19, 28:21
**witnesses'** [1] - 6:21
**word** [2] - 10:11, 10:12
**words** [3] - 19:6, 20:25, 31:15
**world** [1] - 21:19
**worried** [1] - 20:10
**writing** [1] - 25:10
**written** [1] - 34:10
**Wyche** [16] - 2:13, 9:22, 13:12, 13:14, 23:9, 23:10, 23:14, 23:17, 23:21, 23:23, 24:19, 27:2, 27:7, 28:2, 34:19
**Wyche's** [3] - 7:10, 7:14, 27:22

## X

**XXXV** [1] - 1:11
**XXXVII** [1] - 1:11

## Y

**years** [3] - 8:1, 8:5, 12:5
**yesterday** [1] - 33:15
**yourself** [1] - 21:1

## Z

**Zajac** [10] - 1:23, 3:8, 10:24, 22:24, 23:7, 23:23, 24:23, 27:5, 36:3, 36:14