1

1          IN THE UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF MARYLAND
2                    NORTHERN DIVISION

3


4
      UNITED STATES OF AMERICA
5
              v.                          CRIMINAL CASE NO.
6                                           AMD-04-029

      SHELLY WAYNE MARTIN,
7
              Defendant
8      _____/

9


10                  (Sentencing)
                Friday, March 27, 2009
11              Baltimore, Maryland

12

      Before:  Honorable Andre M. Davis, Judge
13


14


15    Appearances:

16        On Behalf of the Government:
           Robert R. Harding, Esquire
17         Michael C. Hanlon, Esquire

18        On Behalf of the Defendant:
           James G. Pyne, Esquire
19         Thomas L. Crowe, Esquire

20


21


22    Reported by:
      Mary M. Zajac, RPR
23    Room 5515, U.S. Courthouse
      101 West Lombard Street
24    Baltimore, Maryland 21201

25

2

1          (Proceedings at 12:10 p.m.)

2          MR. HARDING:  Your Honor, this is United States versus

3    Shelly Wayne Martin, AMD-04-0029.  And we're here for sentencing

4    today, Your Honor.

5          THE COURT:  Thank you.  Mr. Pyne, Mr. Crowe, good

6    afternoon.

7          MR. CROWE:  Good afternoon, Your Honor.

8          MR. PYNE:  Good afternoon.

9          THE COURT:  You and your client are ready to proceed?

10   I'll be glad to hear any preliminary matters you wish to be heard

11   on.

12         MR. CROWE:  Yes, we have, Your Honor.  Your Honor, the

13   Court has two pending matters.  The first is our Motion For

14   Judgment of Acquittal or for a New Trial.  And the second was a

15   special request which we had filed for permission to speak to the

16   jurors or, barring that, for some arrangement sanctioned by the

17   Court in which we could determine what, in fact, were the last

18   two counts of the fourth superseding indictment for a single

19   defendant on which the jury had not reached a verdict.

20         I have to say, quite honestly, that, really, I can't

21   articulate the bases for these motions any better than I did in

22   the papers which are before Your Honor and which I'm certain the

23   Court has recently read.  I don't mean this to be taken as an

24   indication, and I'm sure the Court will not take it as an

25   indication, that there's any lack of faith or belief that those,

3

1    both of those motions have substantial merit.

2              If there are any questions the Court has, I would be

3    most pleased to answer them.

4              THE COURT:  I don't doubt for one second, Mr. Crowe,

5    your good faith and your earnestness in pressing those matters.

6    I think you've been here for each of the prior sentencings.  I

7    know you were here yesterday for Mr. Harris.

8              MR. CROWE:  I was not here for Mr. Mitchell, but have

9    been here for the other two.

10             THE COURT:  Okay.  I guess, unless I missed it, I don't

11   believe you filed a reply memorandum in response to the

12   government's opposition.

13             MR. CROWE:  That is correct.

14             THE COURT:  To your request.

15             MR. CROWE:  We did not.

16             THE COURT:  Okay.  And it just seemed to me that the

17   government has absolutely set forth a correct statement of the

18   law in this area.  It's, if you'll forgive my language,

19   titillating, certainly, curious, interesting, to be able to talk

20   to jurors and question them and pursue all kinds of things.  But

21   I don't see a basis here as a matter of law for taking even the

22   first step down the path of ultimately impeaching the jury's

23   verdict or undertaking to do so.

24             The sanctity of the jury room is, of course, much

25   respected.  And I don't mean to suggest by mentioning that that

4

1    your motion in any way tries to undercut or undermine that

2    truism.  But the mere fact that we got that note from the jury

3    and the verdicts came back as they did after a long, vigorously

4    contested case, with a great deal of evidence, falls far short,

5    in the Court's judgment, from the showing that would be required

6    to authorize, or for the Court itself to pursue the inquiry that

7    you've requested.

8         So I don't need to hear anything further.  And unless

9    the government has anything beyond what it said in its written

10   responses to say --

11        MR. HARDING:  No, Your Honor.

12        THE COURT:  All right.  The Motion For Judgment of

13   Acquittal and for New Trial in the alternative are denied for the

14   reasons stated previously on the record both during trial.  And

15   the Court here incorporates as relevant the rulings on the prior

16   motions made by Mr. Martin's codefendants.

17        And the Motion to Request Jury Contact is likewise

18   denied as unsupported by the facts and the law.

19        All right.  We're ready to proceed.  I'll hear from the

20   government.  I have received the correspondence that you provided

21   this morning and yesterday, Mr. Crowe.  Thank you very much.  Mr.

22   Harding.

23        MR. HARDING:  Yes.  Thank you, Your Honor.  I would

24   like to take an opportunity just to draw out one final thing from

25   the pleadings that we've already submitted.  In connection with

1     this sentencing, of course, the government submitted a sentencing

2     memorandum.

3              THE COURT:  Yes indeed.

4              MR. HARDING:  And also a letter to the Court yesterday.

5     I pointed out in the sentencing memorandum that by finding the

6     defendant guilty of the RICO conspiracy count, the jury had to

7     find, as Your Honor instructed them, Your Honor instructed them

8     at Page 41 of the instructions, that a person cannot be

9     associated or employed by an enterprise if he does not know of

10    the enterprise's existence or the nature of its activities.

11    Thus, in order to prove this element, the government must prove

12    beyond a reasonable doubt that the defendant was connected to the

13    enterprise in some meaningful way and that the defendant knew of

14    the existence of the enterprise and of the general nature of its

15    activities.

16              And among the purposes of the enterprise that the jury

17    had to believe beyond a reasonable doubt the enterprise had were

18    murder, armed robbery, home invasion robbery, as well as the

19    distribution of controlled substances.

20              If we ask, Your Honor, what beyond that showing, if we

21    agree that Mr. Martin was a member of this conspiracy, this RICO

22    conspiracy and this drug conspiracy the jury has found beyond a

23    reasonable doubt, what beyond that do we need to find under a

24    Pinkerton theory that he is liable for the homicides, including

25    the Wyche brothers' homicides?

1          And I just want to, the Court has instructed the jury

2     many times on Pinkerton liability.  I just want to summarize what

3     the Fourth Circuit said in United States v. Aramony, 88 F.3d 1369

4     at 1380, Fourth Circuit, 1996.

5          To impose Pinkerton liability for substantive crimes of

6     other coconspirators, the government must prove that, one,

7     substantive offense was committed by one of the members of the

8     conspiracy -- I don't think there's any question that that

9     happened in the case of the Wyche brothers homicide; two, while

10    the one committing the crime was a member of the conspiracy -- no

11    question about that; and three, in furtherance of the conspiracy.

12    No question about that.  The jury has found all of those things

13    beyond a reasonable doubt.

14         And so the government's position is that the Court

15    should set a, especially since the Court has to make a finding

16    only by a preponderance of the evidence, the Court should find

17    that the Base Offense Level of 43 applies to the RICO conspiracy

18    count and the drug conspiracy count, as the pretrial officer,

19    Pretrial Services -- I'm sorry -- the probation officer found.

20    And in view of the fact that the jury did not convict Mr. Martin

21    of those murders, the Court can, pursuant to the guidelines, make

22    a downward departure of whatever levels the Court thinks is

23    appropriate to reflect the fact that he wasn't as culpable as the

24    other defendants who were actually convicted of those murders.

25         The government's position is that -- I think this is

1      completely borne out by the evidence in this case -- Mr. Martin

2      was a full-fledged and continuous member of a very violent crew

3      that engaged in narcotics trafficking continuously, but also in

4      home invasion robberies and in murders.  Mr. Martin was the main

5      man, as I summarized in the sentencing memorandum, for the plan

6      to rob and kill Goose.  And there was no doubt that the plan was

7      to kill Goose, according to Mr. Montgomery, who has no incentive

8      at all to exaggerate or lie about an issue like that and who, in

9      spite of the Court's assessment yesterday that he was an

10     exceedingly cold killer, which is undoubtedly true, he was also a

11     highly credible witness.

12            He has testified in various proceedings over the years

13     and has been instrumental in obtaining a number of convictions.

14     I have not seen him effectively impeached in any of, any of, or I

15     am not aware of his being effectively impeached in any of those

16     proceedings.  His credibility, actually, is very, very high.

17            So I don't doubt that Mr. Martin was the mastermind of

18     the plan to rob and kill Goose and that he was also part of the

19     plan to rob and kill Darius Spence and was involved in other

20     similar crimes.

21            So the government's position is that even though the

22     jury did not convict Mr. Martin of any of the individually

23     charged homicides in this case, he is every bit as culpable and

24     responsible for the crimes of this crew as the other three

25     defendants that the Court has already sentenced.

1          The government believes that some downward departure

2     may be appropriate but that the Court should sentence Mr. Martin

3     to a very long term of incarceration.  And the government feels

4     that a life sentence is appropriate, as the pretrial services

5     officer -- I'm sorry -- the probation officer recommends.

6          I'm happy to answer any other questions.  But since

7     we've already treated these issues on paper so much, I'm happy,

8     also, just to sit down at this point.

9          THE COURT:  Thank you, Mr. Harding.  I may have a few

10    questions after I hear from counsel for the defendant.

11         MR. CROWE:  Your Honor, what the jury did in this case

12    was that it found Mr. Martin guilty of being a conspirator in

13    this RICO conspiracy and also of being a conspirator in the drug

14    conspiracy.  However, it further found that he was not involved

15    in the Wyche murders, at least by the reasonable doubt standard,

16    as a direct participant, as an aider and abetter, as somebody who

17    had commanded, counseled, procured, and advised the commission of

18    those offenses, or under the Court's instructions, as one who had

19    Pinkerton liability.

20         The government had argued, at least as I understood its

21    sentencing memorandum, that that essentially made no difference,

22    that because there were homicides which were charged in this RICO

23    conspiracy, the Court was going to be forced to go in lockstep

24    from the findings that the jury did make immediately to an

25    offense level of 43 under the guidelines, under Section, I think

1    it's 2E1.1(a)(2), or something like that.

2         We tried to point out in our memorandum that the

3    guidelines are quite clear that in applying any of the

4    cross-references, what the Court has to do is to take into

5    account relevant conduct, which is a bedrock principle of the

6    sentencing guidelines.  I don't know if Mr. -- apparently, Mr.

7    Harding still disagrees with me on that.

8         I would point out to the Court something which I

9    clearly don't need to point out to the Court, which is that in

10   the Holland case, which involved a cross-reference, as I

11   understand it, under the narcotics guidelines for a situation

12   where a murder was committed in furtherance, in furtherance of a

13   conspiracy or as part of the conspiracy, the Court did precisely

14   that, and in so doing, took the extra step of only imposing

15   liability under the guidelines where it made the finding of

16   complicity in a murder for which an individual is acquitted, not

17   by a preponderance of the evidence, but by clear and convincing

18   evidence.

19        THE COURT:  I have to say, Mr. Crowe, thanks for

20   mentioning that.  I thought the law was going to change.  And

21   here we are ten years later and it hasn't.  It's still

22   preponderance.

23        MR. CROWE:  It hasn't changed, but I'm not aware of any

24   definitive decision which has come down which says that, in fact,

25   that the law, the fact that the law is the preponderance.  And

1    there still is the statement in the one Supreme Court case which

2    Your Honor was concerned with, and which I think Judge Motz was

3    concerned with on the Fourth Circuit, which indicated that in a

4    situation where you are talking about a difference of many, many

5    offense levels, that the safer course of conduct was certainly to

6    make the finding, certainly make the finding by clear and

7    convincing evidence.

8           Our position, however, is, and I hope our brief made

9    this as clear as it could, that we don't believe that this is a

10    situation where Mr. Martin's complicity in the Wyche brothers

11    murders can be made even by a preponderance of the evidence.  I

12    don't intend to go through and lead the Court back through all

13    the evidence in the case.  But the evidence against Mr. Martin,

14    was extremely, extremely thin on that matter.

15           In fact, we think that the thinness of the evidence is

16    one of the reasons that the Justice Department never authorized,

17    never had a death notice for Mr. Martin in this case at any time.

18    There was testimony that Mr. Martin -- the evidence against Mr.

19    Martin was, whether or not his voice was on the tape of the

20    misdirected voice mail.  People such as the government's witness,

21    Darryl Bacon, who I'm sure Mr. Hanlon and Mr. Harding would vouch

22    for, said that his voice absolutely was not on it.  Natasha

23    Wyche, who is, I guess she probably wasn't a cooperative witness,

24    said the same thing.

25           In addition to that, it's my recollection, I forget

1    whether it was Mr. Benson or Mr. Klas, had actually listened to

2    the tape at great length and, in addition to that, had listened

3    to the defendant's various outbursts in court in an attempt to

4    identify the people who were speaking on the tape.  And we were

5    informed that one of them was not able to conclude that Mr.

6    Martin's voice was on there.

7         The word "Wayne" is on there but that, that doesn't

8    really mean anything.  And we know that that night, that there

9    were all sorts of phone calls that were made to Mr. Martin's

10   phone which he simply didn't answer, largely because we believe

11   that he was in the movie house at the time it occurred.

12        We think on the basis of all of that evidence that the

13   jury was correct that he wasn't guilty beyond a reasonable doubt

14   of complicity in the murder under any of the government's

15   theories.  And of course, not only did they consider direct

16   involvement, direct, involvement as an aider and abetter and as a

17   conspirator, but they also necessarily found that he was not

18   involved in terms of premeditated murder, second degree murder,

19   or felony murder.

20        We think that it's not something that one can find by

21   clear and convincing evidence or even by a preponderance of the

22   evidence.  And we would ask the Court not to make that leap.

23        We certainly appreciate Mr. Harding's suggestion or

24   acknowledgment within these circumstances that a departure from a

25   life sentence under, which one would arrive at at Offense Level

1    43 would be appropriate.  We think departures are appropriate,

2    also.  But we don't think they should be from offense level 43.

3    We think that they should be from a lower offense level.

4            THE COURT:  Mr. Crowe, few things make me more nervous

5    in connection with the performance of my duties than in any way

6    showing disrespect to the verdict of a jury.  You've alluded to

7    Montgomery and I think, frankly, that probably comes through

8    there.  But I have to say to you, sir, in this case, while I

9    absolutely respect the jury's verdict, the alibi evidence in my

10   judgment really seriously hurts Mr. Martin.  So I want to give

11   you a chance to address that.

12            I should be more explicit and blunt and say what

13   certainly appears to be the evidence of a false alibi.

14            MR. CROWE:  Your Honor, the evidence of the alibi's

15   falseness, as I see it, the principal evidence, was the testimony

16   of Mr. Montgomery that Mr. Gardner had in some fashion informed

17   him that Martin had an alibi because he was, in fact, because he

18   was going to be able to claim that he was at a movie that night.

19            This, I would submit -- I would submit that this

20   appears to be a classic situation of an individual such as Mr.

21   Montgomery, whose criminal record is just, is just terrible,

22   trying to help the government out over what might be a difficulty

23   in its case.  I don't have any doubt that a person such as Mr.

24   Montgomery, who is guilty of the double dealing that he was,

25   involving murders of people that he said were friends, coming

1    back and telling a lie in court.  It's incredible to me that one

2    would be able to believe very much of anything that Mr.

3    Montgomery said.

4           I would point out to the Court that if this were an

5    out, if this were a false alibi, there was a good deal of

6    serendipity to it.  I believe the Court will remember that the

7    young lady in question, that was her birthday, that Mr. Martin

8    was taking her out on her birthday.  The agents all agreed that

9    when they interviewed her, she said that was her birthday and we

10   were actually able to produce a birth certificate, which the jury

11   saw as well.

12          I would further point out to the Court that if it were

13   an alibi, it was perhaps not the best alibi one could imagine

14   because although Mr. Martin, we say, was clearly at the movie at

15   that time, the fact that it was still literally possible, it

16   would not have violated the laws of physics for him to have left

17   the theater after the movie ended and to get to the murder site

18   where the Wyches were killed.  And this was a matter of which I

19   recall one or more of the agents, one or more of the agents

20   testified to.

21          So that, essentially, what the alibi hung on was not

22   just the fact of the movie, but was on a much slimmer threat,

23   which was the testimony of the woman who was there with him.

24          I would suggest to you that if this were a concocted

25   alibi, that there would have been five or six people who would

1    have said for one reason or another that they were with Mr.

2    Martin that night.  And that's not the situation.

3            It's only a 1 in 365 chance that the person who

4    provided the alibi can say, Yeah, he took me to the movie, he

5    took me there because it was my birthday.

6            Now, I will admit that she wasn't the most elegant,

7    most articulate witness.  She might not have even been, might

8    have had trouble.  She might have stumbled in places.  But she

9    had no criminal record.  Unlike a number of the government's

10   witnesses, she was not impeached.  She certainly realized, I

11   think, that this was a most serious matter and that she had to

12   tell the truth.

13           Mr. Pyne and I didn't have any doubt that she was

14   telling the truth.  And I think the Court knows that we certainly

15   wouldn't have sponsored any false alibi testimony.

16           THE COURT:  Where would -- I'm sorry.  I don't mean to

17   interrupt.  And I won't now.  Go ahead.

18           MR. CROWE:  That's okay.  Mr. Pyne just reminded me

19   that we also have the evidence that, in fact, Mr. Mitchell was

20   calling Mr. Martin up until just before the Wyche shooting.  And

21   it appears that Mr. Martin was not answering any of those phone

22   calls, which is, again, consistent with the fact that he was,

23   that he was in a movie.  And these are all matters which I think

24   Mr. Pyne went into in great detail in the closing argument and

25   had a certain persuasive effect with the jury on that matter.

1          We think the jury was absolutely right in concluding

2     that Mr. Martin wasn't involved in the Wyche shootings.

3          I remember in the opening statement, Mr. Harding said,

4     just glossed over this whole thing.  And he will say that Mr.

5     Mitchell for some reason, Mr. Mitchell then came to the

6     conclusion that he needed more than Mr. Harris in the Wyche

7     murders, that he needed to involve Mr. Gardner and Mr. Martin as

8     well.  I remember saying in my, my opening, in my opening

9     statement to the jury that I didn't have a clue what he was

10    talking about and I doubt that the government was going to be

11    able to produce any evidence of that.  And in fact, they didn't.

12         I mean, they produced no more evidence about Mr. Martin

13    than they did about Mr. Gardner, who was also indicted for this.

14         I would just submit to the, submit to the Court, and

15    I'm sure I'm not supposed to argue personal opinion, but that the

16    evidence, I think, is just overwhelming that Mr. Martin was not

17    involved in those murders.  And I'm a little bit taken aback by

18    the Court's apparent determination that it feels there's a good

19    chance that that alibi was out and out perjured testimony.

20         THE COURT:  I think it was.  Where would, if you recall

21    and if you know, and what would perhaps be helpful, again, if you

22    know, and if you recall, what was the first mention of the alibi?

23         MR. CROWE:  The first mention --

24         THE COURT:  And I don't mean necessarily at trial.

25         MR. CROWE:  The first mention of the alibi was when Mr.

1    Martin was arrested on April 14th of 2002 and he was questioned

2    by officers in the Baltimore City Police Department.

3           THE COURT:  And that statement was admitted, correct?

4    Or a redacted version of it?  Was it not?  Mr. Harding --

5           MR. CROWE:  At a minimum, at a minimum, I believe we

6    got out of the officers the fact that Mr. Martin had said that

7    and, in addition to that, that Lakeisha McCoy, was the

8    girlfriend, had said that as soon as they talked to her.  That

9    that information had been given.  I mean, in fact, it was, I

10   mean, we had the tickets.  I mean, there's no --

11          THE COURT:  Well, there's no question.

12          MR. CROWE:  At a minimum, there's no question the

13   tickets were bought.

14          THE COURT:  There's no question the tickets were

15   purchased with Mr. Martin's credit card.  There's no question,

16   there's no question that that movie actually played in Owings

17   Mills that night.

18          MR. CROWE:  And I don't think there's any question that

19   it's Mr. Martin's signature on the credit card.

20          THE COURT:  But we don't know what time the ticket was

21   purchased.

22          MR. CROWE:  Yes, we do.

23          THE COURT:  We do, on the receipt.

24          MR. CROWE:  The time of the ticket was on the receipt.

25          THE COURT:  And what time was that?

1          MR. CROWE:  My recollection was that it was about 15

2     minutes before the show started, 10, 15 minutes before the show

3     started.  I apologize for not having that.

4          THE COURT:  No.  That's all right.

5          MR. CROWE:  And of course, you know, I don't want to

6     keep beating a --

7          THE COURT:  By the way, let me clarify.  When I say I

8     think it's perjured testimony, a perjured alibi, what I mean by

9     that is to the extent that the testimony directly or indirectly

10    is intended to convey the idea that Mr. Martin was at the movie

11    and, in fact, that the two of them left the movie and went

12    straight to Mr. Martin's home and spent the night together and

13    nobody in the whole world saw them between the time they left the

14    movie and went and spent the night together, that's what I'm

15    really getting to.

16         MR. CROWE:  Well, I mean, that is really the meat of

17    the testimony because it's the period of time when they left the

18    movie and when they were back home that we're talking about.  But

19    again, I would point out to Your Honor that sometimes weaknesses

20    in the alibi are the best evidence that they weren't concocted,

21    that is that they weren't perfect.

22         THE COURT:  Sometimes that's certainly true.  Now, as

23    Mr. Harding argued, and what I'm trying to do here, because as I

24    said, I don't want to trample on the jury's verdict.  I hope I

25    never do that.  But the jury's verdict says Mr. Martin was a full

1    participant.  So while I appreciate your argument and respect the

2    jury's verdict that the jury had a reasonable doubt as to exactly

3    where Mr. Martin was that night and for how long and with whom

4    doing what, the jury also said Mr. Martin was in it fully.  He

5    was a full participant in both conspiracies.

6           And of course, while I understand there's a continuing

7    objection to the whole flesh and blood evidence and the Court's

8    decision to admit that and so forth, and the Fourth Circuit will

9    have to consider that, certainly everything I've seen of Mr.

10   Martin in this courtroom and in 1-A over the last five years

11   certainly is perfectly consistent with the jury's verdict.

12          MR. CROWE:  Let me point out one other thing, which was

13   clearly in the record, in fact, was even the basis of the motion

14   which Your Honor denied this morning.

15          We had submitted a supplemental instruction that said,

16   in order to find somebody guilty of participating in a

17   conspiracy, it was necessary to find that that person had agreed

18   to, that either he or somebody else would commit one of the two

19   racketeering acts.  The Court never gave --

20          THE COURT:  Wait a minute.  That he or --

21          MR. CROWE:  He had to agree that either he or another

22   coconspirator would commit one of the two racketeering acts.

23          THE COURT:  I didn't think that was your request.  I'm

24   sorry?

25          MR. CROWE:  I'm quite certain that it was.

1          THE COURT:  I don't think it was.  I think you asked

2    the Court to instruct that Mr. Martin had specific knowledge that

3    either he or a coconspirator would commit two or more

4    racketeering acts.  I thought that's what -- not that they had to

5    find that he or a coconspirator had, that he knew that another, a

6    coconspirator had agreed to commit at least one.

7          I mean, in other words, as I understood your

8    instruction, your request, you wanted the jury to have to find a

9    specific agreement as to who would commit racketeering acts.  And

10   of course I rejected that reading of the law.

11         MR. CROWE:  Your Honor, we had the, I think we have the

12   instruction.

13         THE COURT:  Yeah.

14         MR. CROWE:  This is the instruction that we asked for

15   and it was a supplemental instruction.  It was Paper 59.

16         It says that in or to convict an defendant, which is a

17   grammatical mistake, for conspiracy to violate RICO, the

18   government must prove beyond a reasonable doubt that that

19   defendant agreed that he or another member of the RICO conspiracy

20   would commit at least two of the racketeering acts charged in the

21   indictment.

22         THE COURT:  Okay.  All right.

23         MR. CROWE:  And I think that that may be pretty close

24   to what Your Honor just said.

25         THE COURT:  Yeah.  I think that's essentially what I

1    said.  And I just didn't find any basis in the law, although you

2    did cite some cases, of course.  But as I parsed the language, I

3    could not find any basis for imposing on the government the

4    burden to prove that kind of specificity.  The jury had to find

5    that two or more, that two or more racketeering acts were

6    committed, of course, and that the defendant knowingly, during

7    the conspiracy.  But that third step that you were looking for is

8    not one I could find justification for.  But anyway, your point

9    is that's what explains the jury's verdict.

10         MR. CROWE:  That's what explains the jury's verdict.

11   And in fact, if the jury had thought that Mr. Martin -- first of

12   all, on the other murders, there's no evidence.  I mean, he

13   wasn't even in the area, as far as anybody knows.  Not even

14   within an area or zone of suspicion.

15         But with respect to those murders, I mean, the jury

16   made a whole passel of findings, again beyond a reasonable doubt,

17   that he wasn't a direct participant, he wasn't an aider and

18   abetter, and he was not somebody who had liability as a

19   conspirator.  And he, in fact, is the only one of the four

20   individuals tried in this case who was not convicted of a form of

21   federal murder.

22         We just submit that the evidence, by whatever standard

23   the Court may employ, that the jury got it right and that Mr.

24   Martin was not involved in these matters by a preponderance of

25   the evidence, by clear and convincing evidence, and certainly not

1    beyond a reasonable doubt.  I realize it's the lesser standards

2    that we have to struggle with here today.

3            THE COURT:  I'm going to ask you a question and it's

4    going to be a tough question for you, Mr. Crowe.  And you may or

5    may not be able to answer it and you may or may not choose to

6    answer it.  And the same question is directed at Mr. Pyne.

7            Have you been able to prepare for this sentencing with

8    your client's assistance?

9            MR. CROWE:  Yes, sir, we have.

10            THE COURT:  All right.  Then that leads to the second

11    question.  Why wouldn't he talk to the probation officer?

12            MR. CROWE:  He didn't talk to the probation officer

13    because we had, we had advised him that with an appeal pending,

14    anything that he said to the probation officer could be used in a

15    later trial should the Fourth Circuit send the case back.

16            THE COURT:  So I'm left with a record, I mean, I'm here

17    in a sentencing proceeding, and the decision this Court has to

18    make is whether to treat Mr. Martin as a full-fledged member of

19    this conspiracy, as the jury has found, and effectively treat him

20    as an aider and abettor of murder.  And so I just have to proceed

21    with what's before me.

22            MR. CROWE:  Could I have just a second to consult with

23    Mr. Pyne and Mr. Martin?

24            THE COURT:  Of course.

25            (Pause in Proceedings.)

1          MR. CROWE:  Mr. Pyne wanted me to make it very clear

2    that although there was certainly a period and an extended period

3    when problems were occurring in the courtroom where Mr. Martin

4    was not talking to us, he had, in fact, talked to us for a period

5    of several months before that.  We had, in fact, discussed the

6    case at some, in a fair amount of detail.  You know, we were

7    firmly of the opinion Mr. Martin is not a participant in these

8    murders.

9          My understanding is that that was, in fact, you know,

10   would, in fact, have been the situation when the Public

11   Defender's office was representing him.

12         THE COURT:  Well, again, I accept that representation

13   as a representation of counsel made in good faith.  But the jury

14   has found that he was a member of the conspiracy and so he was

15   involved in the murders.  He was a member of the conspiracy right

16   up to the very end.  Let me be very clear, in light of my last

17   comment, by the way.

18         I fully recognize and respect absolutely Mr. Martin's

19   Fifth Amendment privilege, which continues today and will

20   continue throughout the appeal process.  But it's a unique

21   circumstance here in which -- I mean, the very idea as a matter

22   of just historical practice and well recognized -- well, perhaps

23   I shouldn't say that.  Sometimes it's best not to say some

24   things.

25         MR. PYNE:  Your Honor, he did meet with Ms. Swilo and

1    speak with her.

2            THE COURT:  Okay.  Maybe that's what I needed

3    clarification of.  The Presentence Report says Mr. Martin -- so I

4    don't have anything about his background, his family, except what

5    you've given me, and what --

6            MR. PYNE:  What happened was we showed up at Supermax.

7    I think what happened was we caught Mr. Martin by surprise.  He

8    did not know we were coming that day.  He asked if we could meet

9    with him at a later date.  We went back up about two weeks later

10   and he did meet with Ms. Swilo and provided her with all the

11   normal information.

12           THE COURT:  I see.  Thank you, Mr. Pyne.  I misread, I

13   misread the Presentence Report.

14           MR. PYNE:  I think he did at that point answer anything

15   she wanted.

16           THE COURT:  He did indeed.  I see it here now.  I

17   apologize.  I apologize sincerely.

18           The other Presentence Reports had the same sentence,

19   Mr. X didn't talk to pretrial, didn't talk to the probation

20   officer, but did talk to Pretrial Services.  And so the

21   information I was provided was the information that had been

22   provided five years ago.  But I stand corrected and I apologize

23   for misreading the PSI.

24           All right.  Let me give Mr. Harding a chance to

25   respond.  Then I may have some additional questions.

1          MR. HARDING:  Thank you, Your Honor.  Your Honor, Mr.

2     Crowe did not respond to several points in the government's

3     letter of yesterday that pertained to the alibi in this case.

4          MR. CROWE:  Your Honor, I'm sorry.  I don't think I, I

5     haven't seen the letter.  That may perhaps be my fault.

6          MR. PYNE:  I don't think I received the letter, either.

7          MR. HARDING:  It was filed by ECF, Your Honor,

8     yesterday.

9          THE COURT:  Yeah.  I have a hard copy.  Let me, is our

10    fax, is our machine working?  You don't have an extra copy, do

11    you, Mr. Harding?

12         MR. HARDING:  I don't believe I do, Your Honor.  I'm

13    sorry.

14         THE COURT:  Here.  Why don't you just give this to Mr.

15    Crowe and he can read it while I hear Mr. Harding.

16         MR. HARDING:  For the most part, the letter recaps the

17    evidence about Mr. Martin's involvement in the Wyche brothers

18    murder.  It points out that Montgomery testified about Gardner's

19    report to him of this alibi defense that had been cooked up by

20    him and Martin and the others to explain where they were on the

21    night of the robbery and murder of the Wyche brothers.

22         And Montgomery knew that the alibi involved using a

23    credit card to pay for movie tickets in order to create a paper

24    trail.

25         What Mr. Crowe and Mr. Pyne have never been able to

1    explain is how Montgomery could possibly know something like that

2    unless it is, in fact, what Gardner told him.  There is, of

3    course, one way, and Mr. Crowe and Mr. Pyne do not suggest that.

4    The government could have told Mr. Montgomery to testify to that.

5    But that would be an outrageous claim and Mr. Crowe and Mr. Pyne

6    have not made it.

7          So other than that, the only possible way Montgomery

8    could have known about that is because it's true, because that's

9    what Montgomery told him.  There's no possible way that

10   Montgomery could have made that up.  And whatever one thinks of

11   Montgomery's credibility, and as I just said, the government has

12   a very high view of Mr. Montgomery's credibility, he still

13   couldn't have made that fact up.

14         Also, Your Honor, there has been some discussion of

15   fact that the movie ended long before the murder took place.  So

16   it doesn't provide a very good alibi.  It ended 47 minutes before

17   the murder took place.  And the murder scene was only 19 minutes

18   away from the movie theater.

19         Also, Mr. Martin, according to telephone records, was

20   on the phone using his phone before the movie ended.  So there's

21   good reason to believe that even if Martin did go to the movie,

22   he didn't stay through it.  He was on the phone for two minutes

23   at 11:37 p.m., after he gotten a 1 minute 22 second voice mail

24   from Mr. Mitchell.

25         Your Honor, another point that we make in the letter

1    is, and I suppose this is inevitable, Mr. Crowe just said that

2    Lakeisha McCoy was not impeached in the trial.  Our view is, and

3    I just consulted with my colleagues, was that she was very

4    effectively impeached, notably by this sworn affidavit that she

5    had produced a few weeks after the murder, which I think was

6    submitted in connection with bail proceedings in the state court

7    case, and in which she said that she stayed in the car when Mr.

8    Martin went to buy the tickets.

9           And that is completely at odds with what she said in

10   the grand jury, where she testified that he had paid for the

11   tickets with a credit card, and so there was a receipt for it.

12          The witness, Ms. McCoy, had absolutely no explanation

13   for that when she testified.  It was as if she was being

14   confronted with this affidavit out of the blue.  The government

15   suggested to her that someone must have told her to say, when she

16   went to the grand jury, that Martin paid for the tickets with a

17   credit card.  She had, she denied that.  But she had no

18   explanation at all for why she had made the statement she made in

19   the sworn affidavit.

20          She was impeached in other ways with her grand jury

21   testimony.  And the government's belief is that she looked very

22   bad on the stand.  So we completely disagree with Mr. Crowe's

23   assertion that she was not impeached.

24          In addition, the letter of yesterday and the sentencing

25   memorandum summarize all the other reasons for thinking that Mr.

27

1   Martin had a role in the murder of the Wyche brothers.  And as

2   the government has just said, in order to make a finding by a

3   preponderance of Pinkerton liability, there's no question that

4   the evidence is before this Court and would fully justify such a

5   finding.  Thank you.

6           THE COURT:  Thank you, Mr. Harding.  I believe that

7   your -- yeah.  I don't think your letter of yesterday has made it

8   into ECF yet.  That would explain why Mr. Pyne and Mr. Crowe --

9           MR. HARDING:  Well, if that's the case, I'm very sorry.

10  Is Your Honor checking the docketing sheet?

11          THE COURT:  Yeah, I'm looking at it now.

12          MR. CROWE:  Your Honor, I noted that although Mr.

13  Harding talks about it as yesterday's letter, it's date is March

14  23rd.  Mr. Pyne and I haven't seen it, no matter when it might

15  have been filed.

16          MR. HARDING:  It was yesterday, Your Honor.  And so the

17  date is just a mistake.  But I was trying to get this out

18  hurriedly to make sure people had it in enough time to

19  contemplate it before the hearing today.  I distinctly recall I

20  told my --

21          THE COURT:  I'm sorry.  Go ahead.

22          MR. HARDING:  I told my legal assistant to file it with

23  the court and she's normally prompt about such things.

24          THE COURT:  You know, I'm trying to remember.  I got

25  it, you sent an e-mail to everybody yesterday.

1          MR. HARDING:  I typically do that as well.  I typically

2     send the letter by e-mail as well as by filing it with ECF.  And

3     I also had a copy hand-delivered to your chambers.

4          THE COURT:  Right.  And I'm thinking that's why I

5     actually got it.  And I also got your e-mail but I wasn't sure --

6          MR. HARDING:  Does the e-mail reflect that other

7     counsel were also served?

8          THE COURT:  I think so.  But I was a little surprised

9     because, did you intend to attach that letter to the e-mail?

10          MR. HARDING:  Yes.

11          THE COURT:  Okay.  I think that's the problem.  I think

12     the letter, both letters in that e-mail relate to the whole

13     Shelton Harris merger and sentencing issues.

14          MR. PYNE:  I did get that.

15          MR. CROWE:  I do remember getting that.

16          THE COURT:  Yeah.  And I think you probably intended

17     for that e-mail to have both Shelton Harris response to Mr.

18     Flannery's letter, as well as this letter relating to Mr. Martin.

19          MR. HARDING:  Yes.  I meant to include the last, the

20     most, the third letter regarding the Harris sentencing, as well

21     as the letter regarding Martin 's sentencing.  And I think I said

22     that in the text of the e-mail that I sent.

23          THE COURT:  Yeah.  You're absolutely right.  Your

24     e-mail says, here are two letters filed today regarding

25     sentencings on Harris and Martin.  But the two letters both

29

1    related to Harris.

2           MR. HARDING:  Well, I apologize, Your Honor.  In any

3    case, I will simply recapitulate what we all heard in the trial.

4           THE COURT:  Exactly.  And I don't think Mr. Harris is

5    prejudiced.  And Mr. Crowe's had a chance now to look at it.  So

6    Mr. Crowe, I'll give you a chance to respond.

7           MR. CROWE:  Your Honor, as the Court may recall,

8    shortly after these murders, members of the Wyche family and

9    their friends got together.  They listened to this voice mail

10   over and over again.  And people have tried, attempted to

11   identify people.  And in fact, there was one witness who

12   supposedly, as I recalled the testimony, was that he had

13   contacted, he had contacted Martin or Gardner and told them that

14   they thought their voices were on it.

15          I certainly didn't suggest that the government had

16   said, Hey, Will Montgomery, we got a little problem.  You know,

17   we've got this, we've got this alibi and there may be, there may

18   be some documentary proof behind it, can you help us knock it

19   down?

20          What is quite conceivable is that Mr. Gardner may have

21   well said, said to him, you know, This stuff about Martin is all

22   nonsense.  He was in a movie and he's got tickets.  And Gardner

23   may well have known that because that might well have been

24   something that Mr. Martin would have said when, you know, when

25   the allegation was made.

1           Mr. Montgomery's a pretty clever guy.  And I would

2    suggest to the Court that anybody who's, that he's certainly not

3    beyond twisting the facts when he thinks a certain twisting of

4    the facts is something that's going to help him.

5           The fact still remains -- I'm sorry.  I don't know how

6    many times I can say this.  I mean, the jury verdict is the jury

7    verdict.  I keep coming back to that.  But I don't, I'm sure the

8    Court was well aware of that fact before it came out on the

9    bench.

10          And my recollection is also, and I may be mistaking

11   this, that I thought Montgomery actually testified at some point

12   that the alibi was supposed to have gone to three or four people

13   and it might have involved Mitchell as well.  But I'm not certain

14   about that.

15          The evidence, again, that knocks down the alibi is Will

16   Montgomery.  And as this Court said yesterday, he's the, he's the

17   most dangerous man that Your Honor has seen in a courtroom in

18   some 20 years, and that the temperature went down 15 degrees when

19   he walked into the courtroom.  And that was, that was certainly

20   my feeling as well.  I was glad during cross examination that I

21   had plenty of company, including the United States marshals.

22          I would suggest to the Court that the jury's verdict

23   does demand some respect, that there was certainly, that there

24   was little evidence that Mr. Martin was involved in those

25   murders.  And if he was, I would, you know, just challenge the

1    government to say, what do you think he did?  There's simply no

2    evidence that he was involved at all.  And there's a substantial

3    amount of evidence that he was some place else and that he was

4    not answering cell phone calls during this period of time.

5          Mr. Harding is correct.  There does appear to be this

6    one voice mail message that he took.  But this is, this is just

7    not the sort of evidence on which a murder prosecution would

8    normally be mounted.  And I would expect that the, that the

9    thinness of the evidence is probably, is probably an explanation

10   as to why the government didn't seek the death penalty against

11   Mr. Martin as it did against all his codefendants.

12         THE COURT:  All right.  Thank you, Mr. Crowe.  May I

13   have that letter back, please?

14         MR. CROWE:  Could I ask Mr. Harding, just so the record

15   is clear, that maybe, that he could e-file this so --

16         THE COURT:  He certainly will if he gets back to the

17   office and discovers it hasn't been filed, he certainly will.

18   But I can attest that it's not in the docket as of, as of this

19   moment.

20         Well, I am, as I say, I am as nervous as I ever am,

21   which is not often, when I'm asked to act in any way that is

22   inconsistent with a jury verdict.  And there is a twinge of

23   nervousness today.  But I am satisfied that the cross-reference

24   is appropriate without trenching on the jury's verdict.  And

25   indeed, it's consistent with the jury verdict for the reasons the

1    government has urged.

2         The Court finds by a preponderance of the evidence that

3    Mr. Martin was in that car, that he concocted the alibi.  The

4    Court brings a healthy skepticism to the statements and testimony

5    of people such as Will Montgomery.  But Mr. Harding speaks on the

6    basis of experience and actual knowledge when he says that Mr.

7    Montgomery, apart from his own self-impeaching disclosures about

8    his own past, his attitude, his behavior, was not in this case,

9    and Mr. Harding says has not been in other cases, seriously

10   impeached in terms of his basic credibility about historical

11   facts.

12        And it's no question that Mr. Gardner talked to Mr.

13   Montgomery, was relatively close to Mr. Montgomery.  Obviously,

14   they undertook the whole Spence escapade.

15        There is no suggestion whatsoever that Mr. Gardner

16   would have any motivation to speak anything to Mr. Montgomery

17   other than the truth.  It's the kind of coconspirator

18   statement -- obviously, other judges will have a chance to review

19   whether I correctly admitted it, because objection was made.  The

20   Court knows of no reason not to credit Mr. Gardner's statements

21   to Mr. Montgomery or Mr. Montgomery's testimony about those

22   statements.

23        There's the voice mail.  There's the identification

24   testimony, however weak or tentative or contradicted, for that

25   matter.  And there is the false alibi.

1          And ultimately, there's the jury's verdict that Mr.

2     Martin was a full participant in all of these activities,

3     corroborated by what the Court itself has observed of Mr.

4     Martin's dutiful and loyal performance in court in doing Mr.

5     Mitchell's bidding.

6          So the Court finds that the cross-reference is

7     appropriate and that the Offense Level is a 43.  You want to be

8     heard on whether the Court should depart and impose a term of

9     years?

10         MR. CROWE:  Yes, Your Honor.  Actually, because the

11    same factors can sometimes come into play in terms of either

12    departure or variance, I would sort of like to discuss both of

13    them at this time, if the Court considers it appropriate.

14         THE COURT:  Yes.  The Fourth Circuit says I must first

15    consider departure.  But you're right, the factors are the same.

16         MR. CROWE:  Yes, the factors are essentially the same.

17    We would suggest to the Court first that Mr. Harding's initial

18    comment is correct, that if, in fact, this is a situation where

19    the Court has found an Offense Level of 43 because of

20    participation, because of a cross-reference and participation in

21    conduct, particularly acquitted conduct, that is perhaps the

22    basis for a departure itself.

23         I thought I understood Mr. Harding to suggest that,

24    indeed, on Page Ten of our sentencing memorandum, we noted that a

25    couple of cases appear, a couple of cases, both from the Second

34

1    Circuit, the <u>Mulder</u> case and the <u>Cordoba Murgas</u> case, both seem

2    to have taken that tack.

3            Secondly, I would point out to the Court, as the Court

4    is certainly aware, for virtually the entire time Mr. Martin has

5    been in pretrial confinement, at least once the federal case was

6    filed, he has been over in Supermax.  There are cases which allow

7    for departures because of harsh conditions of pretrial detention.

8    And I would submit that, certainly, Mr. Martin has suffered

9    those.

10           I would also point out that I expect that all of the

11   time Mr., Mr. Pyne I got into the case matters were, detention

12   wasn't really an issue.  But I would expect that during the

13   initial hearings of this, that one of the reasons for pretrial

14   detention was supposedly, was likely the strength of the

15   government's case.

16           Your Honor, most of the reasons that I'm going to talk

17   about probably really fall more in the realm of 3553(a)

18   variances, which are matters that the Court must take into

19   account after it has established what would otherwise be the

20   advisory guideline range.

21           As we have tried to point out, by the time Mr. Pyne and

22   I got into the case, Mr. Martin was already in a much different

23   position than that of his codefendants.  The Department of

24   Justice had declined to issue a death notice again Mr. Martin.

25   They had issued death notices against the three codefendants.

1    And we would submit that he is indeed in a different category

2    than them at this point because, with all respect to the Court's

3    findings by a preponderance of the evidence, the jury in this

4    case didn't, you know, in obedience to its oath, did not find him

5    guilty beyond a reasonable doubt.

6         We are acutely aware of the fact that the Court has

7    imposed sentences of life imprisonment.  Indeed, if it's possible

8    in the federal system, even maybe sentences something in excess

9    of life imprisonment, like his three codefendants.  We think that

10   Mr. Martin's acquittal and the substantially weaker evidence in

11   the case against him sets him apart and is something which we

12   believe the Court should take into consideration.

13        With respect to the 3553(a) factors, we believe that a

14   sentence of substantially less than life imprisonment is going

15   to, certainly going to command some respect for the law in this

16   case.  Certainly, any of Mr. Martin's friends or acquaintances

17   who may be out on the street and who may have been involved in

18   the sort of things that he was admittedly involved with, in drug

19   activity, are not going to think that whatever the sentence,

20   whatever sentence the Court imposes is particularly, is a

21   particularly light one given the fact that the drug activity was

22   essentially all stuff that preceded the government's, that

23   preceded the federal indictment in this case and that the matters

24   which followed it were matters for which he was acquitted.

25        I don't think anybody out there is going to say, Boy,

1    you know, Wayne, Wayne really beat them on this one, given the

2    sentence that I think the Court, I think the Court's going to

3    impose a pretty substantial sentence, in any event.

4           So we think that's going to promote respect for the law

5    and we think it's also going to certainly afford adequate

6    deterrence to others who would be involved in that sort of

7    activity.

8           We further think that it's going to satisfy the

9    requirement of Subsection C of protecting the public from further

10    crimes by Mr. Martin.  I would suggest to the Court, although I'm

11    not encouraging this, if the Court is considering a lengthy

12    sentence, it certainly does not know, it's really kind of

13    guessing as to who Shelly Martin is going to be 20 or 25 or 30 or

14    35 years down the road.  We certainly know from statistics which

15    criminologists study and publish that people are much less likely

16    to go back to a life of crime in their 50's and their 60's than

17    they would as a 30 year old.

18           We would simply say that in terms of protecting the

19    public from anything Mr. Martin may do in the future, that the

20    type of sentence which the government is likely to recommend is

21    not going to be needed.

22           The Court, of course, also has to take into

23    consideration Mr. Martin's personal circumstances.  And we will

24    acknowledge that, clearly, that he was involved in a lot of drug

25    activity, mostly with Mr. Gardner.  It was repeated drug

1    activity.  And the interventions of law enforcement, as is often

2    the case, as the Court knows, in Baltimore City, were perhaps not

3    as severe as they should have been.  And certainly one can say

4    that even his reaction to his, based on the Court's findings, the

5    Court would certainly come to the conclusion that his reaction to

6    the sentence Judge Garbis imposed on him for being a felon in

7    possession of a firearm didn't have the intended effect.

8            I would still point out to the Court that Mr. Martin is

9    deserving of some sympathy and leniency, particularly when we

10   realize that that sympathy and leniency is something which is

11   going to take effect a long, long time from today.

12           Mr. Martin has, in effect, not had an easy life.  My

13   understanding, although it's not borne out by the letter from his

14   mother, is that the move from the relatively safer environments

15   of Roanoke, Virginia were perhaps prompted by difficulties one or

16   more of her other sons had.  Mr. Martin moved up initially to

17   Baltimore County.  Then financial circumstances required that he

18   have to, required that he move into Baltimore City with the

19   family.

20           Indeed, as the letter I think, of Mrs. Broomfield, who

21   is his aunt, points out, that he tried real hard to pose as a

22   Baltimore County resident.  And we might have all been in a

23   better situation had he stayed in Baltimore County.

24           I'm not for a minute suggesting that everybody who goes

25   to the Baltimore County schools (sic) is immediately condemned.

1    I know a lot of people, including a lot of practicing lawyers,

2    who've come out of it just fine.  But it's still not something

3    which is helpful.

4           Other another thing which I found very curious, both

5    Mr. Pyne and I were amazed at this when we first learned it, was

6    that Mr. Martin was placed in special education, because when we

7    talked with him originally before the, you know, the flesh and

8    blood nonsense start, he was alert, he was funny, he had a sense

9    of humor, he could talk about things logically.  He made some

10   suggestions to us which we quite plainly thought were correct and

11   true.  And he was a very easy client to deal with.

12          I would also say to the Court that the Shelly Wayne

13   Martin that we originally knew has come back.  And we've seen

14   him, we've seen him again since the jury verdict came back.  He's

15   much more the person that we knew before.  This is not a person

16   who is by any stretch of the imagination irredeemable.  In fact,

17   had we not had this very prolonged period of difficulty with

18   which the Court, about which the Court is very much aware, he

19   probably would have been one of the easier CJA clients that I had

20   ever represented.  He knew enough, I mean, he just reacted

21   appropriately and intelligently to everything, to everything that

22   we suggested.

23          Another matter, and this is reflected in the letters

24   which have come up today, and I apologize that they only came up

25   today, from Karza Walton, who is the mother of his child,

39

1    Malaysia, and from Malaysia herself.  The mother, Karza Walton,

2    thinks that Mr. Martin is basically in the core a good person.

3    She just wishes more than anything in the world that when she

4    found it necessary to move down to Roanoke, Virginia, not to

5    Roanoke, Virginia, but to Raleigh, North Carolina, that he had

6    moved, had moved down there with her, but he didn't.

7          The letters from Mrs. Parsons, who's his mother, from

8    Willa Mae Broomfield, who is his aunt, from Karza Walton, and

9    indeed from Malaysia herself, indicate that Mr. Martin, to the

10   extent he's been able to be it for the last few years, has done

11   everything that he can to maintain contact with his daughter.

12   And in fact, we had attached to the correspondence a number of

13   letters, a number of, I think, fairly recent letters going back

14   to last fall, which he has, which he has written to Malaysia.

15         I know when Mr. Pyne and I took over the case, one of

16   the first things the Public Defender's told us was that there was

17   this wonderful woman by the name of Karza Walton who was down in

18   North Carolina who had a good relationship with Mr. Martin and

19   that their daughter, Malaysia, was very much the, sort of the

20   light of his life.  And I think to a very large degree those

21   letters indicate, those letters indicate that as well.

22         Your Honor, this is, as the Court knows, this has been

23   a very difficult case on everybody.  It's been hard on the

24   prosecution.  It's certainly been hard on the Court.  It's been

25   hard on the defense lawyers.  I've been practicing a long time.

40

1    I've never had one like this, and I hope never to have one that's

2    anything like this again.

3          But I would just say that Mr. Martin is the sort of

4    person who needs to know that at some point in his life, even at

5    some distant point in his life, there's a chance that he will be

6    able to get out, that he will be able to see such if his

7    relatives are still alive, and that he can get back in some

8    fashion into his daughter's life.

9          I'm sure whatever sentence the Court passes today is

10   going to seem like a life sentence to his 12-year-old daughter,

11   because that's just the way 12-year-old minds work.  You know,

12   when you're that age, sometimes you have trouble seeing the end

13   of the school year when you start in September.  But at some

14   point that is going to mean something to him.

15         Mr. Martin is a fellow who has, I think, a lot of good

16   in him despite everything that the Court has heard.  And I would

17   just implore the Court, please leave him with the hope that at

18   some point he will win his freedom so that when the cell door

19   slams today up in the marshal's lockup, he doesn't think that's

20   forever.  Thank you.

21         THE COURT:  Thank you, Mr. Crowe.  Mr. Harding, do you

22   want to be heard very briefly?

23         MR. HARDING:  Yes, very briefly, Your Honor.  The

24   government pointed out that there is a possibility of giving a

25   departure to Mr. Martin because it's expressly provided for in

1    Section 2A1.1.  The government doesn't feel it's appropriate in

2    this case and that results not only from the facts of this case,

3    but also from the language of the departure.

4         The commentary, Application Note Two, tells the Court

5    when a departure may or may not be appropriate on a murder

6    charge.  Section A says that in a case of premeditated killing,

7    life imprisonment is the appropriate sentence if a sentence of

8    death is not imposed.  A downward departure would not be

9    appropriate in such a case.

10        And then Section B says, in cases of felony murder, if

11   the defendant did not cause the death intentionally or knowingly,

12   a downward departure may be warranted.  For example, a downward

13   departure may be warranted if, in robbing a bank, the defendant

14   merely passed a note to the teller, as a result of which the

15   teller had a heart attack and died.  The extent of the departure

16   should be based upon the defendant's state of mind, e.g.,

17   recklessness or negligence, the degree of risk inherent in the

18   conduct, and the nature of the underlying offense conduct.

19   However, a departure below the minimum guideline sentence

20   provided for second degree murder is not likely to be

21   appropriate.

22        Judge, whatever it was about the evidence against Mr.

23   Martin that led the jurors to acquit him of the Wyche brothers

24   murder, it didn't have anything to do with the intent or

25   knowledge elements in this crime.  This was a crime that was

1    planned in advance and which was, it's crystal clear, a robbery

2    in which the victims had to be murdered in order to preclude any

3    possibility of retaliation.  This was a crime that was

4    premeditated thoroughly.  That was, Mr. Martin went to a movie

5    theater and got tickets to provide himself hours in advance with

6    an alibi for the commission of this murder.

7          We also note from the other home invasion robberies and

8    things like the Goose, the planned murder of Goose, that murder

9    was an inherent part of these robbery schemes.  There can be no

10    question that this was an intentional murder.  And the Court has

11    already made a finding that Mr. Martin was an aider and abetter

12    at the very least in this crime, and that he was in the car.

13    Under those circumstances, the government sees no justification

14    for giving a departure based on intent or knowledge in this case.

15          So the government's position is that, first of all,

16    even if the Court did give a departure, it should only be for one

17    level because a life sentence is appropriate in this case.  And

18    if the Court gave a departure of more than one level, the Court

19    would not be able to impose a life sentence.

20          But more fundamentally, Your Honor, no departure is

21    warranted in this case because a departure would have to be based

22    on the mental element with which this crime was committed.  And

23    there really is no doubt that this was an intentional and

24    premeditated murder and that Mr. Martin was involved in it, then

25    he intentionally did so and did so with full knowledge of what

1    was going to happen.  So that's the government's position.

2            THE COURT:  What about a variance, Mr. Harding?

3            MR. HARDING:  Again, Your Honor, the evidence -- Your

4    Honor, Mr. Martin had an opportunity in the last five years or

5    the last, ever since 2002, really, for the last seven years, to

6    come forward with information about this case and the other

7    defendants in this case, or whatever information he wanted to.

8    Far from doing that, Mr. Martin chose to actively join this

9    scheme to disrupt court proceedings for years.  Mr. Martin was

10   not the wallflower in those proceedings.  If anybody was, I

11   suppose it was Mr. Gardner, as Your Honor said yesterday.  Mr.

12   Martin was a very active and vocal participant in all those

13   disturbances.

14           He has no remorse about his involvement in this

15   criminal activity, this multi-faceted criminal activity.  And he

16   has, essentially, for the last five years, jammed it down the

17   Court's throat that he does not participate in these proceedings.

18           He has made as clear as anybody ever could that he

19   cannot be rehabilitated.  The government thinks that Mr. Martin

20   and the other three defendants as well are among the most

21   unlikely candidates for rehabilitation that I've ever seen.  I've

22   never seen defendants, and this completely includes Mr. Martin,

23   who are so, who have decided so completely and thoroughly to put

24   themselves outside the whole criminal justice system, to have

25   nothing to do with it, to thumb their noses at it on an ongoing,

1    regular basis, and in concert with one another.

2         Not only have they refused to cooperate, they have

3    refused to participate in the system.  That is how they are going

4    to lead the rest of their lives in jail, all four of them.  Mr.

5    Martin is not going to be rehabilitated, Your Honor.  The

6    government simply cannot believe that, not based on what he's

7    done in this courtroom over the last five years.

8         So the government does not believe a variance is

9    appropriate, either.

10        THE COURT:  Thank you, Mr. Harding.  Mr. Martin, before

11   the Court imposes sentence, you have the opportunity, if you

12   wish, to address the Court.

13        THE DEFENDANT:  Yes, Your Honor.  First off, I would

14   like to apologize to my family, for supporting and standing by

15   me, apologize to my family, for seven years, just sending them

16   through so much trouble that I would like to thank them for

17   supporting me, standing by me, and believing in my innocence.

18        I would also like to apologize to the Court for my

19   behavior.  That was due to the fact I thought as though I was

20   being wronged, deprived of my freedom for something I didn't do.

21   So again, I would like to apologize to the Court, tell you that I

22   am very remorseful for my actions in the courtroom and outside

23   the courtroom and it is possibility I could be rehabilitated.

24        THE COURT:  Thank you, Mr. Martin.  What an incredible

25   development after all this time.  Well, I thank counsel for your

1    presentations and in particular, Mr. Crowe, Mr. Pyne, the Court

2    deeply appreciates your work in this case.  I know it will

3    continue on Mr. Martin's behalf.

4           I agree with Mr. Harding to this extent; that the

5    likelihood that any of these defendants, including Mr. Martin,

6    will be rehabilitated is de minimis.  But I do -- by the way, Mr.

7    Crowe, you didn't say anything about merger.  It seems to me that

8    the two counts on which Mr. Martin was convicted are separate and

9    distinct and Blockberger and separate sentences are appropriate.

10          The Court's going to depart one offense level in the

11   belief that the jury's decision not to convict Mr. Martin on the

12   murder counts reflects at the least the jury's decision not just

13   that the evidence as to Mr. Martin was insufficient, but at that

14   there is some cognizable difference between Mr. Martin and the

15   other three defendants.  That may be wrong but that's an

16   interpretation that the Court is willing to place on the jury's

17   verdict.

18          I believe that Mr. Martin was there, that he had

19   knowing involvement, and I so find by a preponderance of the

20   evidence.  Nothing in the evidence, however, persuades me that

21   Mr. Martin was the shooter and nothing in the evidence persuades

22   me that hope for Mr. Martin is so lacking that as an old man he

23   might not be able to live in free society.  I don't know that I

24   could make that statement, frankly, with confidence about any of

25   the other three defendants.

1          So the Court will grant a variance of one offense level

2     to a Level 42 and impose a sentence of 400 months incarceration,

3     custody of the Bureau of Prisons, concurrent as to Counts One and

4     Eight.  And that sentence will be effective from April 17th,

5     2002.

6          Supervised release will be for five years as to both

7     counts, to be served concurrently, with no special conditions in

8     light of the length of the sentence.  The special assessment of

9     $200 is to be paid immediately.

10         You have ten days, Mr. Martin, within which to file a

11    notice of appeal.  I know that Mr. Crowe, Mr. Pyne, will take

12    care of that on your behalf.  And you will be appointed counsel

13    to represent you on the appeal.

14         I have the government's Motion to Dismiss the Harris

15    indictment, 05-0337, and I have entered that.

16         The government has a motion with respect to the

17    original and superseding indictments as to Mr. Martin?

18         MR. HARDING:  Yes.  The government moves to dismiss the

19    indictments except for the fourth superseding indictment in this

20    case as to Mr. Martin.

21         THE COURT:  All right.  So ordered.  Thank you,

22    counsel, very much.

23         (Conclusion of Proceedings at 1:40 p.m.)

24

25

REPORTER'S CERTIFICATE

1

2

3        I, Mary M. Zajac, do hereby certify that I recorded

4  stenographically the proceedings in the matter of USA v. Shelly

5  Wayne Martin, Case Number(s) AMD-04-029, on March 27, 2009.

6        I further certify that the foregoing pages constitute

7  the official transcript of proceedings as transcribed by me to

8  the within matter in a complete and accurate manner.

9        In Witness Whereof, I have hereunto affixed my

10  signature this _____ day of _____, 2009.

11

12

13

14        _____

             Mary M. Zajac,
15             Official Court Reporter

16

17

18

19

20

21

22

23

24

25

## $

**$200** [1] - 46:9

## 0

**05-0337** [1] - 46:15

## 1

**1** [2] - 14:3, 25:23
**1-A** [1] - 18:10
**10** [1] - 17:2
**101** [1] - 1:23
**11:37** [1] - 25:23
**12-year-old** [2] - 40:10, 40:11
**12:10** [1] - 2:1
**1369** [1] - 6:3
**1380** [1] - 6:4
**14th** [1] - 16:1
**15** [3] - 17:1, 17:2, 30:18
**17th** [1] - 46:4
**19** [1] - 25:17
**1996** [1] - 6:4
**1:40** [1] - 46:23

## 2

**20** [2] - 30:18, 36:13
**2002** [3] - 16:1, 43:5, 46:5
**2009** [3] - 1:10, 47:5, 47:10
**21201** [1] - 1:24
**22** [1] - 25:23
**23rd** [1] - 27:14
**25** [1] - 36:13
**27** [2] - 1:10, 47:5
**2A1.1** [1] - 41:1
**2E1.1(a)(2** [1] - 9:1

## 3

**30** [2] - 36:13, 36:17
**35** [1] - 36:14
**3553(a** [2] - 34:17, 35:13
**365** [1] - 14:3

## 4

**400** [1] - 46:2
**41** [1] - 5:8

**42** [1] - 46:2
**43** [6] - 6:17, 8:25, 12:1, 12:2, 33:7, 33:19
**47** [1] - 25:16

## 5

**50's** [1] - 36:16
**5515** [1] - 1:23
**59** [1] - 19:15

## 6

**60's** [1] - 36:16

## 8

**88** [1] - 6:3

## A

**aback** [1] - 15:17
**abetter** [4] - 8:16, 11:16, 20:18, 42:11
**abettor** [1] - 21:20
**able** [14] - 3:19, 11:5, 12:18, 13:2, 13:10, 15:11, 21:5, 21:7, 24:25, 39:10, 40:6, 42:19, 45:23
**absolutely** [7] - 3:17, 10:22, 12:9, 15:1, 22:18, 26:12, 28:23
**accept** [1] - 22:12
**according** [2] - 7:7, 25:19
**account** [2] - 9:5, 34:19
**accurate** [1] - 47:8
**acknowledge** [1] - 36:24
**acknowledgment** [1] - 11:24
**acquaintances** [1] - 35:16
**acquit** [1] - 41:23
**Acquittal** [2] - 2:14, 4:13
**acquittal** [1] - 35:10
**acquitted** [3] - 9:16, 33:21, 35:24
**act** [1] - 31:21
**actions** [1] - 44:22
**active** [1] - 43:12
**actively** [1] - 43:8
**activities** [3] - 5:10, 5:15, 33:2
**activity** [7] - 35:19, 35:21, 36:7, 36:25, 37:1,

43:15
**acts** [6] - 18:19, 18:22, 19:4, 19:9, 19:20, 20:5
**actual** [1] - 32:6
**acutely** [1] - 35:6
**addition** [4] - 10:25, 11:2, 16:7, 26:24
**additional** [1] - 23:25
**address** [2] - 12:11, 44:12
**adequate** [1] - 36:5
**admit** [2] - 14:6, 18:8
**admitted** [2] - 16:3, 32:19
**admittedly** [1] - 35:18
**advance** [2] - 42:1, 42:5
**advised** [2] - 8:17, 21:13
**advisory** [1] - 34:20
**affidavit** [3] - 26:4, 26:14, 26:19
**affixed** [1] - 47:9
**afford** [1] - 36:5
**afternoon** [3] - 2:6, 2:7, 2:8
**age** [1] - 40:12
**agents** [3] - 13:8, 13:19
**ago** [1] - 23:22
**agree** [3] - 5:21, 18:21, 45:4
**agreed** [4] - 13:8, 18:17, 19:6, 19:19
**agreement** [1] - 19:9
**ahead** [2] - 14:17, 27:21
**aider** [5] - 8:16, 11:16, 20:17, 21:20, 42:11
**alert** [1] - 38:8
**alibi** [25] - 12:9, 12:13, 12:17, 13:5, 13:13, 13:21, 13:25, 14:4, 14:15, 15:19, 15:22, 15:25, 17:8, 17:20, 24:3, 24:19, 24:22, 25:16, 29:17, 30:12, 30:15, 32:3, 32:25, 42:6
**alibi's** [1] - 12:14
**alive** [1] - 40:7
**allegation** [1] - 29:25
**allow** [1] - 34:6
**alluded** [1] - 12:6
**alternative** [1] - 4:13
**amazed** [1] - 38:5
**AMD-04-0029** [1] - 2:3
**AMD-04-029** [1] - 1:6, 47:5
**Amendment** [1] - 22:19
**AMERICA** [1] - 1:4
**amount** [2] - 22:6, 31:3
**Andre** [1] - 1:12

**answer** [6] - 3:3, 8:6, 11:10, 21:5, 21:6, 23:14
**answering** [2] - 14:21, 31:4
**anyway** [1] - 20:8
**apart** [2] - 32:7, 35:11
**apologize** [10] - 17:3, 23:17, 23:22, 29:2, 38:24, 44:14, 44:15, 44:18, 44:21
**apparent** [1] - 15:18
**appeal** [4] - 21:13, 22:20, 46:11, 46:13
**appear** [2] - 31:5, 33:25
**Appearances** [1] - 1:15
**Application** [1] - 41:4
**applies** [1] - 6:17
**applying** [1] - 9:3
**appointed** [1] - 46:12
**appreciate** [2] - 11:23, 18:1
**appreciates** [1] - 45:2
**appropriate** [16] - 6:23, 8:2, 8:4, 12:1, 31:24, 33:7, 33:13, 41:1, 41:5, 41:7, 41:9, 41:21, 42:17, 44:9, 45:9
**appropriately** [1] - 38:21
**April** [2] - 16:1, 46:4
**Aramony** [1] - 6:3
**area** [3] - 3:18, 20:13, 20:14
**argue** [1] - 15:15
**argued** [2] - 8:20, 17:23
**argument** [1] - 14:24, 18:1
**armed** [1] - 5:18
**arrangement** [1] - 2:16
**arrested** [1] - 16:1
**arrive** [1] - 11:25
**articulate** [2] - 2:21, 14:7
**assertion** [1] - 26:23
**assessment** [2] - 7:9, 46:8
**assistance** [1] - 21:8
**assistant** [1] - 27:22
**associated** [1] - 5:9
**attach** [1] - 28:9
**attached** [1] - 39:12
**attack** [1] - 41:15
**attempt** [1] - 11:3
**attempted** [1] - 29:10
**attest** [1] - 31:18
**attitude** [1] - 32:8
**aunt** [2] - 37:21, 39:8
**authorize** [1] - 4:6
**authorized** [1] - 10:16

**aware** [6] - 7:15, 9:23, 30:8, 34:4, 35:6, 38:18

## B

**background** [1] - 23:4
**Bacon** [1] - 10:21
**bad** [1] - 26:22
**bail** [1] - 26:6
**Baltimore** [7] - 1:11, 1:24, 16:2, 37:2, 37:17, 37:18, 37:22, 37:23, 37:25
**bank** [1] - 41:13
**barring** [1] - 2:16
**Base** [1] - 6:17
**based** [5] - 37:4, 41:16, 42:14, 42:21, 44:6
**bases** [1] - 2:21
**basic** [1] - 32:10
**basis** [8] - 3:21, 11:12, 18:13, 20:1, 20:3, 32:6, 33:22, 44:1
**beat** [1] - 36:1
**beating** [1] - 17:6
**bedrock** [1] - 9:5
**Behalf** [2] - 1:16, 1:18
**behalf** [2] - 45:3, 46:12
**behavior** [2] - 32:8, 45:11
**behind** [1] - 29:18
**belief** [3] - 2:25, 26:21, 45:11
**believes** [1] - 8:1
**below** [1] - 41:19
**bench** [1] - 30:9
**Benson** [1] - 11:1
**best** [3] - 13:13, 17:20, 22:23
**better** [2] - 2:21, 37:23
**between** [2] - 17:13, 45:14
**beyond** [13] - 4:9, 5:12, 5:17, 5:20, 5:22, 5:23, 6:13, 11:13, 19:18, 20:16, 21:1, 30:3, 35:5
**bidding** [1] - 33:5
**birth** [1] - 13:10
**birthday** [4] - 13:7, 13:8, 13:9, 14:5
**bit** [2] - 7:23, 15:17
**Blockberger** [1] - 45:9
**blood** [2] - 18:7, 38:8
**blue** [1] - 26:14
**blunt** [1] - 12:12
**borne** [2] - 7:1, 37:13
**bought** [1] - 16:13
**Boy** [1] - 35:25
**brief** [1] - 10:8

briefly [2] - 40:22, 40:23
brings [1] - 32:4
Broomfield [2] - 37:20, 39:8
brothers [6] - 6:9, 10:10, 24:17, 24:21, 27:1, 41:23
brothers' [1] - 5:25
burden [1] - 20:4
Bureau [1] - 46:3
buy [1] - 26:8

**C**

candidates [1] - 43:21
cannot [3] - 5:8, 43:19, 44:6
car [3] - 26:7, 32:3, 42:12
card [5] - 16:15, 16:19, 24:23, 26:11, 26:17
care [1] - 46:12
Carolina [2] - 39:5, 39:18
Case [1] - 47:5
case [43] - 4:4, 6:9, 7:1, 7:23, 8:11, 9:10, 10:1, 10:13, 10:17, 12:8, 12:23, 20:20, 21:15, 22:6, 24:3, 26:7, 27:9, 29:3, 32:8, 34:1, 34:5, 34:11, 34:15, 34:22, 35:4, 35:11, 35:16, 35:23, 37:2, 39:15, 39:23, 41:2, 41:6, 41:9, 42:14, 42:17, 42:21, 43:6, 43:7, 45:2, 46:20
CASE [1] - 1:5
cases [6] - 20:2, 32:9, 33:25, 34:6, 41:10
category [1] - 35:1
caught [1] - 23:7
cell [2] - 31:4, 40:18
certain [5] - 2:22, 14:25, 18:25, 30:3, 30:13
Certainly [1] - 35:16
certainly [27] - 3:19, 10:5, 10:6, 11:23, 12:13, 14:10, 14:14, 17:22, 18:9, 18:11, 20:25, 22:2, 29:15, 30:2, 30:19, 30:23, 31:16, 31:17, 34:4, 34:8, 35:15, 36:5, 36:12, 36:14, 37:3, 37:5, 39:24
certificate [1] - 13:10
CERTIFICATE [1] - 47:1
certify [2] - 47:3, 47:6
challenge [1] - 30:25

chambers [1] - 28:3
chance [8] - 12:11, 14:3, 15:19, 23:24, 29:5, 29:6, 32:18, 40:5
change [1] - 9:20
changed [1] - 9:23
charge [1] - 41:6
charged [3] - 7:23, 8:22, 19:20
checking [1] - 27:10
child [1] - 38:25
choose [1] - 21:5
chose [1] - 43:8
Circuit [7] - 6:3, 6:4, 10:3, 18:8, 21:15, 33:14, 34:1
circumstance [1] - 22:21
circumstances [4] - 11:24, 36:23, 37:17, 42:13
cite [1] - 20:2
City [3] - 16:2, 37:2, 37:18
CJA [1] - 38:19
claim [2] - 12:18, 25:5
clarification [1] - 23:3
clarify [1] - 17:7
classic [1] - 12:20
clear [11] - 9:3, 9:17, 10:6, 10:9, 11:21, 20:25, 22:1, 22:16, 31:15, 42:1, 43:18
clearly [4] - 9:9, 13:14, 18:13, 36:24
clever [1] - 30:1
client [2] - 2:9, 38:11
client's [1] - 21:8
clients [1] - 38:19
close [2] - 19:23, 32:13
closing [1] - 14:24
clue [1] - 15:9
coconspirator [5] - 18:22, 19:3, 19:5, 19:6, 32:17
coconspirators [1] - 6:6
codefendants [5] - 4:16, 31:11, 34:23, 34:25, 35:9
cognizable [1] - 45:14
cold [1] - 7:10
colleagues [1] - 26:3
coming [1] - 12:25, 23:8, 30:7
command [1] - 35:15
commanded [1] - 8:17
comment [2] - 22:17, 33:18
commentary [1] - 41:4

commission [2] - 8:17, 42:6
commit [6] - 18:18, 18:22, 19:3, 19:6, 19:9, 19:20
committed [4] - 6:7, 9:12, 20:6, 42:22
committing [1] - 6:10
company [1] - 30:21
complete [1] - 47:8
completely [5] - 7:1, 26:9, 26:22, 43:22, 43:23
complicity [1] - 9:16, 10:10, 11:14
conceivable [1] - 29:20
concerned [2] - 10:2, 10:3
concert [1] - 44:1
conclude [1] - 11:5
concluding [1] - 15:1
conclusion [2] - 15:6, 37:5
Conclusion [1] - 46:23
concocted [3] - 13:24, 17:20, 32:3
concurrent [1] - 46:3
concurrently [1] - 46:7
condemned [1] - 37:25
conditions [2] - 34:7, 46:7
conduct [2] - 9:5, 10:5, 33:21, 41:18
confidence [1] - 45:24
confinement [1] - 34:5
confronted [1] - 26:14
connected [1] - 5:12
connection [4] - 4:25, 12:5, 26:6
consider [3] - 11:15, 18:9, 33:15
consideration [2] - 35:12, 36:23
considering [1] - 36:11
considers [1] - 37:13
consistent [3] - 14:22, 18:11, 31:25
conspiracies [1] - 18:5
conspiracy [21] - 5:6, 5:21, 5:22, 6:8, 6:10, 6:11, 6:17, 6:18, 8:13, 8:14, 8:23, 9:13, 18:17, 19:17, 19:19, 20:7, 21:19, 22:14, 22:15
conspirator [4] - 8:12, 8:13, 11:17, 20:19
constitute [1] - 47:6
consult [1] - 21:22
consulted [1] - 26:3
Contact [1] - 4:17
contact [1] - 39:11

contacted [2] - 29:13
contemplate [1] - 27:19
contested [1] - 4:4
continue [2] - 22:20, 45:3
continues [1] - 22:19
continuing [1] - 18:6
continuous [1] - 7:2
continuously [1] - 7:3
contradicted [1] - 32:24
controlled [1] - 5:19
convey [1] - 17:10
convict [4] - 6:20, 7:22, 19:16, 45:11
convicted [5] - 6:24, 20:20, 45:8
convictions [1] - 7:13
convincing [4] - 9:17, 10:7, 11:21, 20:25
cooked [1] - 24:19
cooperate [1] - 44:2
cooperative [1] - 10:23
copy [3] - 24:9, 24:10, 28:3
Cordoba [1] - 34:1
core [1] - 39:2
correct [7] - 3:13, 3:17, 11:13, 16:3, 31:5, 33:18, 38:10
corrected [1] - 23:22
correctly [1] - 32:19
correspondence [2] - 4:20, 39:12
corroborated [1] - 33:3
counsel [6] - 8:10, 22:13, 28:7, 44:25, 46:12, 46:22
counseled [1] - 8:17
count [3] - 5:6, 6:18
Counts [1] - 46:3
counts [4] - 2:18, 45:8, 45:12, 46:7
County [4] - 37:17, 37:22, 37:23, 37:25
couple [1] - 33:25
course [12] - 3:24, 5:1, 10:5, 11:15, 17:5, 18:6, 19:10, 20:2, 20:6, 21:24, 25:3, 36:22
court [6] - 11:3, 13:1, 26:6, 27:23, 33:4, 43:9
Court [82] - 2:13, 2:17, 2:23, 2:24, 3:2, 4:6, 4:15, 5:4, 6:1, 6:14, 6:15, 6:16, 6:21, 6:22, 7:25, 8:2, 8:23, 9:4, 9:8, 9:9, 9:13, 10:1, 10:12, 11:22, 13:4, 13:6, 13:12, 14:14, 15:14, 18:19, 19:2, 20:23, 21:17, 27:4,

29:7, 30:2, 30:8, 30:16, 30:22, 32:2, 32:4, 32:20, 33:3, 33:6, 33:8, 33:13, 33:17, 33:19, 34:3, 34:18, 35:6, 35:12, 35:20, 36:2, 36:10, 36:11, 36:22, 37:2, 37:5, 37:8, 38:12, 38:18, 39:22, 39:24, 40:9, 40:16, 40:17, 41:4, 42:10, 42:16, 42:18, 44:11, 44:12, 44:18, 44:21, 45:1, 45:16, 46:1, 47:15
COURT [58] - 1:1, 2:5, 2:9, 3:4, 3:10, 3:14, 3:16, 4:12, 5:3, 8:9, 9:19, 12:4, 14:16, 15:20, 15:24, 16:3, 16:11, 16:14, 16:20, 16:23, 16:25, 17:4, 17:7, 17:22, 18:20, 18:23, 19:1, 19:13, 19:22, 19:25, 21:3, 21:10, 21:16, 21:24, 22:12, 23:2, 23:12, 23:16, 24:9, 24:14, 27:6, 27:11, 27:21, 27:24, 28:4, 28:8, 28:11, 28:16, 28:23, 29:4, 31:12, 31:16, 33:14, 40:21, 43:2, 44:10, 44:24, 46:21
Court's [10] - 4:5, 7:9, 8:18, 15:18, 18:7, 35:2, 36:2, 37:4, 43:17, 45:10
Courthouse [1] - 1:23
courtroom [7] - 18:10, 22:3, 30:17, 30:19, 44:7, 44:22, 44:23
create [1] - 24:23
credibility [4] - 7:16, 25:11, 25:12, 32:10
credible [1] - 7:11
credit [6] - 16:15, 16:19, 24:23, 26:11, 26:17, 32:20
crew [2] - 7:2, 7:24
crime [6] - 6:10, 36:16, 41:25, 42:3, 42:12, 42:22
crimes [4] - 6:5, 7:20, 7:24, 36:10
CRIMINAL [1] - 1:5
criminal [5] - 12:21, 14:9, 43:15, 43:24
criminologists [1] - 36:15
cross [6] - 9:4, 9:10, 30:20, 31:23, 33:6, 33:20
cross-reference [4] - 9:10, 31:23, 33:6, 33:20

cross-references [1] - 9:4

CROWE [37] - 2:7, 2:12, 3:8, 3:13, 3:15, 8:11, 9:23, 12:14, 14:18, 15:23, 15:25, 16:5, 16:12, 16:18, 16:22, 16:24, 17:1, 17:5, 17:16, 18:12, 18:21, 18:25, 19:11, 19:14, 19:23, 20:10, 21:9, 21:12, 21:22, 22:1, 24:4, 27:12, 28:15, 29:7, 31:14, 33:10, 33:16

Crowe [20] - 1:19, 2:5, 3:4, 4:21, 9:19, 12:4, 21:4, 24:2, 24:15, 24:25, 25:3, 25:5, 26:1, 27:8, 29:6, 31:12, 40:21, 45:1, 45:7, 46:11

Crowe's [2] - 26:22, 29:5

crystal [1] - 42:1
culpable [2] - 6:23, 7:23
curious [2] - 3:19, 38:4
custody [1] - 46:3

**D**

dangerous [1] - 30:17
Darius [1] - 7:19
Darryl [1] - 10:21
date [3] - 23:9, 27:13, 27:17
daughter [1] - 39:11, 39:19, 40:10
daughter's [1] - 40:8
Davis [1] - 1:12
days [1] - 46:10
de [1] - 45:6
deal [3] - 4:4, 13:5, 38:11
dealing [1] - 12:24
death [6] - 10:17, 31:10, 34:24, 34:25, 41:8, 41:11
decided [1] - 43:23
decision [5] - 9:24, 18:8, 21:17, 45:11, 45:12
declined [1] - 34:24
deeply [1] - 45:2
Defendant [2] - 1:7, 1:18
defendant [10] - 2:19, 5:6, 5:12, 5:13, 8:10, 19:16, 19:19, 20:6, 41:11, 41:13
DEFENDANT [1] - 44:13
defendant's [2] - 11:3,

41:16
defendants [8] - 6:24, 7:25, 43:7, 43:20, 43:22, 45:5, 45:15, 45:25
Defender's [2] - 22:11, 39:16
defense [2] - 24:19, 39:25
definitive [1] - 9:24
degree [4] - 11:18, 39:20, 41:17, 41:20
degrees [1] - 30:18
delivered [1] - 28:3
demand [1] - 30:23
denied [4] - 4:13, 4:18, 18:14, 26:17
depart [2] - 33:8, 45:10
Department [3] - 10:16, 16:2, 34:23
departure [19] - 6:22, 8:1, 11:24, 33:12, 33:15, 33:22, 40:25, 41:3, 41:5, 41:8, 41:12, 41:13, 41:15, 41:19, 42:14, 42:16, 42:18, 42:20, 42:21
departures [2] - 12:1, 34:7
deprived [1] - 44:20
deserving [1] - 37:9
despite [1] - 40:16
detail [2] - 14:24, 22:6
detention [3] - 34:7, 34:11, 34:14
determination [1] - 15:18
determine [1] - 2:17
deterrence [1] - 36:6
development [1] - 44:25
died [1] - 41:15
difference [3] - 8:21, 10:4, 45:14
different [2] - 34:22, 35:1
difficult [1] - 39:23
difficulties [1] - 37:15
difficulty [2] - 12:22, 38:17
direct [4] - 8:16, 11:15, 11:16, 20:17
directed [1] - 21:6
directly [1] - 17:6
disagree [1] - 26:22
disagrees [1] - 9:7
disclosures [1] - 32:7
discovers [1] - 31:17
discuss [1] - 33:12
discussed [1] - 22:5
discussion [1] - 25:14

Dismiss [1] - 46:14
dismiss [1] - 46:18
disrespect [1] - 12:6
disrupt [1] - 43:9
distant [1] - 40:5
distinct [1] - 45:9
distinctly [1] - 27:19
distribution [1] - 5:19
DISTRICT [2] - 1:1, 1:1
disturbances [1] - 43:13
DIVISION [1] - 1:2
docket [1] - 31:18
docketing [1] - 27:10
documentary [1] - 29:18
done [2] - 39:10, 44:7
door [1] - 40:18
double [1] - 12:24
doubt [18] - 3:4, 5:12, 5:17, 5:23, 6:13, 7:6, 7:17, 8:15, 11:13, 12:23, 14:13, 15:10, 18:2, 19:18, 20:16, 21:1, 35:5, 42:23
down [11] - 3:22, 8:8, 9:24, 29:19, 30:15, 30:18, 36:14, 39:4, 39:6, 39:17, 43:16
downward [5] - 6:22, 8:1, 41:8, 41:12
draw [1] - 4:24
drug [7] - 5:22, 6:18, 8:13, 35:18, 35:21, 36:24, 36:25
due [1] - 44:19
during [5] - 4:14, 20:6, 30:20, 31:4, 34:12
duties [1] - 12:5
dutiful [1] - 33:4

**E**

e-file [1] - 31:15
e-mail [9] - 27:25, 28:2, 28:5, 28:6, 28:9, 28:12, 28:17, 28:22, 28:24
e.g [1] - 41:16
earnestness [1] - 3:5
easier [1] - 38:19
easy [2] - 37:12, 38:11
ECF [3] - 24:7, 27:8, 28:2
education [1] - 38:6
effect [4] - 14:25, 37:7, 37:11, 37:12
effective [1] - 46:4
effectively [4] - 7:14, 7:15, 21:19, 26:4

Eight [1] - 46:4
either [6] - 18:18, 18:21, 19:3, 24:6, 33:11, 44:9
elegant [1] - 14:6
element [5] - 5:11, 42:22
elements [1] - 41:25
employ [1] - 20:23
employed [1] - 5:9
encouraging [1] - 36:11
end [2] - 22:16, 40:12
ended [4] - 13:17, 25:15, 25:16, 25:20
enforcement [1] - 37:1
engaged [1] - 7:3
entered [1] - 46:15
enterprise [5] - 5:9, 5:13, 5:14, 5:16, 5:17
enterprise's [1] - 6:15
entire [1] - 34:4
environments [1] - 37:14
escapade [1] - 32:14
especially [1] - 6:15
Esquire [4] - 1:16, 1:17, 1:18, 1:19
essentially [6] - 8:21, 13:21, 19:25, 33:16, 35:22, 43:16
established [1] - 34:19
event [1] - 39:5
evidence [45] - 4:4, 6:16, 7:1, 9:17, 9:18, 10:7, 10:11, 10:13, 10:15, 10:18, 11:12, 11:21, 11:22, 12:9, 12:13, 12:14, 12:15, 14:19, 15:11, 15:12, 15:16, 17:20, 18:7, 20:12, 20:22, 20:25, 26:17, 27:4, 30:15, 30:24, 31:2, 31:3, 31:7, 31:9, 32:2, 35:3, 35:10, 41:22, 43:3, 45:13, 45:20, 45:21
Exactly [1] - 29:4
exactly [1] - 18:2
exaggerate [1] - 7:8
examination [1] - 30:20
example [1] - 41:12
exceedingly [1] - 7:10
except [2] - 23:4, 46:19
excess [1] - 35:8
existence [2] - 5:10, 5:14
expect [3] - 31:8, 34:10, 34:12
experience [1] - 32:6
explain [3] - 24:20, 25:1, 27:8

explains [2] - 20:9, 20:10
explanation [3] - 26:12, 26:18, 31:9
explicit [1] - 12:12
expressly [1] - 40:25
extended [1] - 22:2
extent [4] - 17:9, 39:10, 41:15, 45:4
extra [2] - 9:14, 24:10
extremely [2] - 10:14

**F**

F.3d [1] - 6:3
faceted [1] - 43:15
fact [35] - 2:17, 4:2, 6:20, 6:23, 9:24, 9:25, 10:15, 12:17, 13:15, 13:22, 14:19, 14:22, 15:11, 16:6, 16:9, 17:11, 18:13, 20:11, 20:19, 22:4, 22:5, 22:9, 22:10, 25:2, 25:13, 25:15, 29:11, 30:5, 30:8, 33:18, 35:6, 35:21, 38:16, 39:12, 44:19
factors [4] - 33:11, 33:15, 33:16, 35:13
facts [5] - 4:18, 30:3, 30:4, 32:11, 41:2
fair [1] - 22:6
fairly [1] - 39:13
faith [2] - 2:25, 3:5, 22:13
fall [2] - 34:17, 39:14
falls [1] - 4:4
false [4] - 12:13, 13:5, 14:15, 32:25
falseness [1] - 12:15
family [5] - 23:4, 29:8, 37:19, 44:14, 44:15
far [2] - 4:4, 20:13
Far [1] - 43:8
fashion [2] - 12:16, 40:8
fault [1] - 24:5
fax [1] - 24:10
federal [4] - 20:21, 34:5, 35:8, 35:23
fellow [1] - 40:15
felon [1] - 37:6
felony [2] - 11:19, 41:10
few [4] - 8:9, 12:4, 26:5, 39:10
Fifth [1] - 22:19
file [3] - 27:22, 31:15, 46:10
filed [7] - 2:15, 3:11, 24:7, 27:15, 28:24,

filing [1] - 28:2
final [1] - 4:24
financial [1] - 37:17
findings [4] - 8:24, 20:16, 35:3, 37:4
fine - 38:2
firearm [1] - 37:7
firmly [1] - 22:7
first [11] - 2:13, 3:22, 15:22, 15:23, 15:25, 20:11, 33:14, 33:17, 38:5, 39:16, 42:15
First [1] - 44:13
five [7] - 13:25, 18:10, 23:22, 43:4, 43:16, 44:7, 46:6
Flannery's [1] - 28:18
fledged [2] - 7:2, 21:18
flesh [2] - 18:7, 38:7
followed [1] - 35:24
FOR [1] - 1:1
forced [1] - 8:23
foregoing [1] - 47:6
forever [1] - 40:20
forget [1] - 10:25
forgive [1] - 3:18
form [1] - 20:20
forth [2] - 3:17, 18:8
forward [1] - 43:6
four [3] - 20:19, 30:12, 44:4
Fourth [6] - 6:3, 6:4, 10:3, 18:8, 21:15, 33:14
fourth [2] - 2:18, 46:19
frankly [2] - 12:7, 45:24
free [1] - 45:23
freedom [2] - 40:18, 44:20
Friday [1] - 1:10
friends [3] - 12:25, 29:9, 35:16
full [6] - 7:2, 17:25, 18:5, 21:18, 33:2, 42:25
full-fledged [2] - 7:2, 21:18
fully [3] - 18:4, 22:18, 27:4
fundamentally [1] - 42:20
funny [1] - 38:8
furtherance [3] - 6:11, 9:12
future [1] - 36:19

## G

Garbis [1] - 37:6
Gardner [11] - 12:16,

15:7, 15:13, 25:2, 29:13, 29:20, 29:22, 32:12, 32:15, 36:25, 43:11
Gardner's [2] - 24:18, 32:20
general [1] - 5:14
girlfriend [1] - 16:8
given [4] - 16:9, 23:5, 35:21, 36:1
glad [2] - 2:10, 30:20
glossed [1] - 15:4
Goose [5] - 7:6, 7:7, 7:18, 42:8
Government [1] - 1:16
government [30] - 3:17, 4:9, 4:20, 5:1, 5:11, 6:6, 8:1, 8:3, 8:20, 12:22, 15:10, 19:18, 20:3, 25:4, 25:11, 26:14, 27:2, 29:15, 31:1, 31:10, 32:1, 36:20, 40:24, 41:1, 42:13, 43:19, 44:6, 44:8, 46:16, 46:18
government's [14] - 3:12, 6:14, 6:25, 7:21, 10:20, 11:14, 14:9, 24:2, 26:21, 34:15, 35:22, 42:15, 43:1, 46:14
grammatical [1] - 19:17
grand [3] - 26:10, 26:16, 26:20
grant [1] - 46:1
great [3] - 4:4, 11:2, 14:24
guess [3] - 3:10, 10:23
guessing [1] - 36:13
guideline [1] - 34:20, 41:19
guidelines [6] - 6:21, 8:25, 9:3, 9:6, 9:11, 9:15
guilty [6] - 5:6, 8:12, 11:13, 12:24, 18:16, 35:5
guy [1] - 30:1

## H

hand [1] - 28:3
hand-delivered [1] - 28:3
Hanlon [2] - 1:17, 10:21
happy [2] - 8:6, 8:7
hard [5] - 24:9, 37:21, 39:23, 39:24, 39:25
Harding [22] - 1:16, 4:22, 8:9, 9:7, 10:21, 15:3, 16:4, 17:23, 23:24, 24:11, 24:15, 27:6, 27:13, 31:5, 31:14, 32:5, 32:9, 33:23, 40:21, 43:2,

44:10, 45:4
HARDING [19] - 2:2, 4:11, 4:23, 5:4, 24:1, 24:7, 24:12, 24:16, 27:9, 27:16, 27:22, 28:1, 28:6, 28:10, 28:19, 29:2, 40:23, 43:3, 46:18
Harding's [2] - 11:23, 33:17
Harris [9] - 3:7, 15:6, 28:13, 28:17, 28:20, 28:25, 29:1, 29:4, 46:14
harsh [1] - 34:7
healthy [1] - 32:4
hear [5] - 2:10, 4:8, 4:19, 8:10, 24:15
heard [5] - 2:10, 29:3, 33:8, 40:16, 40:22
hearing [1] - 27:19
hearings [1] - 34:13
heart [1] - 41:15
help [3] - 12:22, 29:18, 30:4
helpful [2] - 15:21, 38:3
hereby [1] - 47:3
hereunto [1] - 47:9
herself [2] - 39:1, 39:9
high [2] - 7:16, 25:12
highly [1] - 7:11
himself [1] - 42:5
historical [2] - 22:22, 32:10
Holland [1] - 9:10
home [5] - 5:18, 7:4, 17:12, 17:18, 42:7
homicide [1] - 6:9
homicides [4] - 5:24, 5:25, 7:23, 8:22
honestly [1] - 2:20
Honor [42] - 2:2, 2:4, 2:7, 2:12, 2:22, 4:11, 4:23, 5:7, 5:20, 8:11, 10:2, 12:14, 17:19, 18:14, 19:11, 19:24, 22:25, 24:1, 24:4, 24:7, 24:12, 25:14, 25:25, 27:10, 27:12, 27:16, 29:2, 29:7, 30:17, 33:10, 34:16, 39:22, 40:23, 42:20, 43:3, 43:4, 43:11, 44:5, 44:13
Honorable [1] - 1:12
hope [5] - 10:8, 17:24, 40:1, 40:17, 45:22
hours [1] - 42:5
house [1] - 11:11
humor [1] - 38:9
hung [1] - 13:21
hurriedly [1] - 27:18
hurts [1] - 12:10

## I

idea [2] - 17:10, 22:21
identification [1] - 32:23
identify [2] - 11:4, 29:11
imagination [1] - 38:16
imagine [1] - 13:13
immediately [3] - 8:24, 37:25, 46:9
impeached [8] - 7:14, 7:15, 14:10, 26:2, 26:4, 26:20, 26:23, 32:10
impeaching [2] - 3:22, 32:7
implore [1] - 40:17
impose [2] - 6:5, 33:8, 36:3, 42:19, 46:2
imposed [3] - 35:7, 37:6, 41:8
imposes [2] - 35:20, 44:11
imposing [2] - 9:14, 20:3
imprisonment [4] - 35:7, 35:9, 35:14, 41:7
IN [1] - 1:1
incarceration [2] - 8:3, 46:2
incentive [1] - 7:7
include [1] - 28:19
includes [1] - 43:22
including [4] - 5:24, 30:21, 38:1, 45:5
inconsistent [1] - 31:22
incorporates [1] - 4:15
incredible [2] - 13:1, 44:24
Indeed [1] - 35:7, 37:20
indeed [6] - 5:3, 23:16, 31:25, 33:24, 35:1, 39:9
indicate [3] - 39:9, 39:21
indicated [1] - 10:3
indication [2] - 2:24, 2:25
indicted [1] - 15:13
indictment [5] - 2:18, 19:21, 35:23, 46:15, 46:19
indictments [2] - 46:17, 46:19
indirectly [1] - 17:9
individual [2] - 9:16, 12:20
individually [1] - 7:22
individuals [1] - 20:20
inevitable [1] - 26:1
information [6] - 16:9,

23:11, 23:21, 43:6, 43:7
informed [2] - 11:5, 12:16
inherent [2] - 41:17, 42:9
initial [2] - 33:17, 34:13
innocence [1] - 44:17
inquiry [1] - 4:6
instruct [1] - 19:2
instructed [3] - 5:7, 6:1
instruction [5] - 18:15, 19:8, 19:12, 19:14, 19:15
instructions [2] - 5:8, 8:18
instrumental [1] - 7:13
insufficient [1] - 45:13
intelligently [1] - 38:21
intend [2] - 10:12, 28:9
intended [3] - 17:10, 28:16, 37:7
intent [2] - 41:24, 42:14
intentional [2] - 42:10, 42:23
intentionally [2] - 41:11, 42:25
interesting [1] - 3:19
interpretation [1] - 45:16
interrupt [1] - 14:17
interventions [1] - 37:1
interviewed [1] - 13:8
invasion [2] - 5:18, 7:4, 42:7
involve [1] - 15:7
involved [17] - 7:19, 8:14, 9:10, 11:18, 15:2, 15:17, 20:24, 22:15, 24:22, 30:13, 30:24, 31:2, 35:17, 35:18, 36:6, 36:24, 42:24
involvement [5] - 11:16, 24:17, 43:14, 45:19
involving [1] - 12:25
irredeemable [1] - 38:16
issue [3] - 7:8, 34:12, 34:24
issued [1] - 34:25
issues [2] - 8:7, 28:13
itself [3] - 4:6, 33:3, 33:22

## J

jail [1] - 44:4
James [1] - 1:18
jammed [1] - 43:16
join [1] - 43:8

**Judge** [4] - 1:12, 10:2, 37:6, 41:22
  **judges** [1] - 32:18
  **judgment** [2] - 4:5, 12:10
  **Judgment** [2] - 2:14, 4:12
  **jurors** [3] - 2:16, 3:20, 41:23
  **Jury** [1] - 4:17
  **jury** [36] - 2:19, 3:24, 4:2, 5:6, 5:16, 5:22, 6:1, 6:12, 6:20, 7:22, 8:11, 8:24, 11:13, 12:6, 13:10, 14:25, 15:1, 15:9, 18:2, 18:4, 19:8, 20:4, 20:11, 20:15, 20:23, 21:19, 22:13, 26:10, 26:16, 26:20, 30:6, 31:22, 31:25, 35:3, 38:14
  **jury's** [14] - 3:22, 12:9, 17:24, 17:25, 18:2, 18:11, 20:9, 20:10, 30:22, 31:24, 33:1, 45:11, 45:12, 45:16
  **justice** [1] - 43:24
  **Justice** [2] - 10:16, 34:24
  **justification** [2] - 20:8, 42:13
  **justify** [1] - 27:4

**K**

**Karza** [4] - 38:25, 39:1, 39:8, 39:17
  **keep** [2] - 17:6, 30:7
  **kill** [4] - 7:6, 7:7, 7:18, 7:19
  **killed** [1] - 13:18
  **killer** [1] - 7:10
  **killing** [1] - 41:6
  **kind** [3] - 20:4, 32:17, 36:12
  **kinds** [1] - 3:20
  **Klas** [1] - 11:1
  **knock** [1] - 29:18
  **knocks** [1] - 30:15
  **knowing** [1] - 45:19
  **knowingly** [2] - 20:6, 41:11
  **knowledge** [5] - 19:2, 32:6, 41:25, 42:14, 42:25
  **known** [2] - 25:8, 29:23
  **knows** [5] - 14:14, 20:13, 32:20, 37:2, 39:22

**L**

**lack** [1] - 2:25
  **lacking** [1] - 45:22
  **lady** [1] - 13:7
  **Lakeisha** [2] - 16:7, 26:2
  **language** [3] - 3:18, 20:2, 41:3
  **large** [1] - 39:20
  **largely** [1] - 11:10
  **last** [11] - 2:17, 18:10, 22:16, 28:19, 39:10, 39:14, 43:4, 43:5, 43:16, 44:7
  **law** [11] - 3:18, 3:21, 4:18, 9:20, 9:25, 19:10, 20:1, 35:15, 36:4, 37:1
  **laws** [1] - 13:16
  **lawyers** [2] - 38:1, 39:25
  **lead** [2] - 10:12, 44:4
  **leads** [1] - 21:10
  **leap** [1] - 11:22
  **learned** [1] - 38:5
  **least** [7] - 8:15, 8:20, 19:6, 19:20, 34:5, 42:12, 45:12
  **leave** [1] - 40:17
  **led** [1] - 41:23
  **left** [5] - 13:16, 17:11, 17:13, 17:17, 21:16
  **legal** [1] - 27:22
  **length** [2] - 11:2, 46:8
  **lengthy** [1] - 36:11
  **leniency** [1] - 37:9, 37:10
  **less** [2] - 35:14, 36:15
  **lesser** [1] - 21:1
  **letter** [19] - 5:4, 24:3, 24:5, 24:6, 24:16, 25:25, 26:24, 27:7, 27:13, 28:2, 28:9, 28:12, 28:18, 28:20, 28:21, 31:13, 37:13, 37:20
  **letters** [9] - 28:12, 28:24, 28:25, 38:23, 39:7, 39:13, 39:21
  **Level** [5] - 6:17, 11:25, 33:7, 33:19, 46:2
  **level** [7] - 8:25, 12:2, 12:3, 42:17, 42:18, 45:10, 46:1
  **levels** [2] - 6:22, 10:5
  **liability** [6] - 6:2, 6:5, 8:19, 9:15, 20:18, 27:3
  **liable** [1] - 5:24
  **lie** [2] - 7:8, 13:1
  **life** [15] - 8:4, 11:25,

35:7, 35:9, 35:14, 36:16, 37:12, 39:20, 40:4, 40:5, 40:8, 40:10, 41:7, 42:17, 42:19
  **light** [4] - 22:16, 35:21, 39:20, 46:8
  **likelihood** [1] - 45:5
  **likely** [4] - 34:14, 36:15, 36:20, 41:20
  **likewise** [1] - 4:17
  **listened** [3] - 11:1, 11:2, 29:9
  **literally** [1] - 13:15
  **live** [1] - 45:23
  **lives** [1] - 44:4
  **lockstep** [1] - 8:23
  **lockup** [1] - 40:19
  **logically** [1] - 38:9
  **Lombard** [1] - 1:23
  **look** [1] - 29:5
  **looked** [1] - 26:21
  **looking** [2] - 20:7, 27:11
  **lower** [1] - 12:3
  **loyal** [1] - 33:4

**M**

**machine** [1] - 24:10
  **Mae** [1] - 39:8
  **mail** [14] - 10:20, 25:23, 27:25, 28:2, 28:5, 28:6, 28:9, 28:12, 28:17, 28:22, 28:24, 29:9, 31:6, 32:23
  **main** [1] - 7:4
  **maintain** [1] - 39:11
  **Malaysia** [5] - 39:1, 39:9, 39:14, 39:19
  **man** [3] - 7:5, 30:17, 45:22
  **manner** [1] - 47:8
  **March** [3] - 1:10, 27:13, 47:5
  **marshal's** [1] - 40:19
  **marshals** [1] - 30:21
  **Martin** [99] - 2:3, 5:21, 6:20, 7:1, 7:4, 7:17, 7:22, 8:2, 8:12, 10:13, 10:17, 10:18, 10:19, 12:10, 12:17, 13:7, 13:14, 14:2, 14:20, 14:21, 15:2, 15:7, 15:12, 15:16, 16:1, 16:6, 17:10, 17:25, 18:3, 18:4, 18:10, 19:2, 20:11, 20:24, 21:18, 21:23, 22:3, 22:7, 23:3, 23:7, 24:20, 25:19, 25:21, 26:8, 26:16, 27:1,

28:18, 28:21, 28:25, 29:13, 29:21, 29:24, 30:24, 31:11, 32:3, 33:2, 34:4, 34:8, 34:22, 34:24, 36:10, 36:13, 36:19, 37:8, 37:12, 37:16, 38:6, 38:13, 39:2, 39:9, 39:18, 40:3, 40:15, 40:25, 41:23, 42:4, 42:11, 42:24, 43:4, 43:8, 43:9, 43:12, 43:19, 43:22, 44:5, 44:10, 44:24, 45:5, 45:8, 45:11, 45:13, 45:14, 45:18, 45:21, 45:22, 46:10, 46:17, 46:20, 47:5
  **MARTIN** [1] - 1:6
  **Martin's** [14] - 4:16, 10:10, 11:6, 11:9, 16:15, 16:19, 17:12, 22:18, 24:17, 33:4, 35:10, 35:16, 36:23, 45:3
  **Mary** [3] - 1:22, 47:3, 47:14
  **MARYLAND** [1] - 1:1
  **Maryland** [2] - 1:11, 1:24
  **mastermind** [1] - 7:17
  **matter** [11] - 3:21, 10:14, 13:18, 14:11, 14:25, 22:21, 27:14, 32:25, 38:23, 47:4, 47:8
  **matters** [9] - 2:10, 2:13, 3:5, 14:23, 20:24, 34:11, 34:18, 35:23, 35:24
  **McCoy** [3] - 16:7, 26:2, 26:12
  **mean** [19] - 2:23, 3:25, 11:8, 14:16, 15:12, 15:24, 16:9, 16:10, 17:8, 17:16, 19:7, 20:12, 20:15, 21:16, 22:21, 30:6, 38:20, 40:14
  **meaningful** [1] - 5:13
  **meant** [1] - 28:19
  **meat** [1] - 17:16
  **meet** [3] - 22:25, 23:8, 23:10
  **member** [7] - 5:21, 6:10, 7:2, 19:19, 21:18, 22:14, 22:15
  **members** [2] - 6:7, 29:8
  **memorandum** [8] - 3:11, 5:2, 5:5, 7:5, 8:21, 9:2, 26:25, 33:24
  **mental** [1] - 42:22
  **mention** [3] - 15:22, 15:23, 15:25
  **mentioning** [2] - 3:25, 9:20

**mere** [1] - 4:2
  **merely** [1] - 41:14
  **merger** [2] - 28:13, 45:7
  **merit** [1] - 3:1
  **message** [1] - 31:6
  **Michael** [1] - 1:17
  **might** [9] - 12:22, 14:7, 14:8, 27:14, 29:23, 30:13, 37:22, 45:23
  **Mills** [1] - 16:17
  **mind** [1] - 41:16
  **minds** [1] - 40:11
  **minimis** [1] - 45:6
  **minimum** [4] - 16:5, 16:12, 41:19
  **minute** [3] - 18:20, 25:23, 37:24
  **minutes** [5] - 17:2, 25:16, 25:17, 25:22
  **misdirected** [1] - 10:20
  **misread** [2] - 23:12, 23:13
  **misreading** [1] - 23:23
  **missed** [1] - 37:23
  **mistake** [1] - 19:17, 27:17
  **mistaking** [1] - 30:10
  **Mitchell** [6] - 3:8, 14:19, 15:5, 25:24, 30:13
  **Mitchell's** [1] - 33:5
  **moment** [1] - 31:19
  **Montgomery** [22] - 7:7, 12:7, 12:16, 12:21, 12:24, 13:3, 24:18, 24:22, 25:1, 25:4, 25:7, 25:9, 25:10, 29:16, 30:11, 30:16, 32:5, 32:7, 32:13, 32:16, 32:21
  **Montgomery's** [4] - 25:11, 25:12, 30:1, 32:21
  **months** [2] - 22:5, 46:2
  **morning** [4] - 4:21, 18:14
  **most** [9] - 3:3, 14:6, 14:7, 14:11, 24:16, 28:20, 30:17, 34:16, 43:20
  **mostly** [1] - 36:25
  **mother** [4] - 37:14, 38:25, 39:1, 39:7
  **motion** [3] - 4:1, 18:13, 46:16
  **Motion** [4] - 2:13, 4:12, 4:17, 46:14
  **motions** [3] - 2:21, 3:1, 4:16
  **motivation** [1] - 32:16
  **Motz** [1] - 10:2
  **mounted** [1] - 31:8
  **move** [3] - 37:14, 37:18,

39:4
**moved** [3] - 37:16, 39:6
**moves** [1] - 46:18
**movie** [19] - 11:11, 12:18, 13:14, 13:17, 13:22, 14:4, 14:23, 16:16, 17:10, 17:11, 17:14, 17:18, 24:23, 25:15, 25:18, 25:20, 25:21, 29:22, 42:4
**MR** [62] - 2:2, 2:7, 2:8, 2:12, 3:8, 3:13, 3:15, 4:11, 4:23, 5:4, 8:11, 9:23, 12:14, 14:18, 15:23, 15:25, 16:5, 16:12, 16:18, 16:22, 16:24, 17:1, 17:5, 17:16, 18:12, 18:21, 18:25, 19:11, 19:14, 19:23, 20:10, 21:9, 21:12, 21:22, 22:1, 22:25, 23:6, 23:14, 24:1, 24:4, 24:6, 24:7, 24:12, 24:16, 27:9, 27:12, 27:16, 27:22, 28:1, 28:6, 28:10, 28:14, 28:15, 28:19, 29:2, 29:7, 31:14, 33:10, 33:16, 40:23, 43:3, 46:18
**Mulder** [1] - 34:1
**multi** [1] - 43:15
**multi-faceted** [1] - 43:15
**murder** [28] - 5:18, 9:12, 9:16, 11:14, 11:18, 11:19, 13:17, 20:21, 21:20, 24:18, 24:21, 25:15, 25:17, 26:5, 27:1, 31:7, 41:5, 41:10, 41:20, 41:24, 42:6, 42:8, 42:10, 42:24, 45:12
**murdered** [1] - 42:2
**murders** [14] - 6:21, 6:24, 7:4, 8:15, 10:11, 12:25, 15:7, 15:17, 20:12, 20:15, 22:8, 22:15, 29:8, 30:25
**Murgas** [1] - 34:1
**must** [6] - 5:11, 6:6, 19:18, 26:15, 33:14, 34:18

**N**

**name** [1] - 39:17
**narcotics** [2] - 7:3, 9:11
**Natasha** [1] - 10:22
**nature** [3] - 5:10, 5:14, 41:18
**necessarily** [2] - 11:17,

15:24
**necessary** [2] - 18:17, 39:4
**need** [3] - 4:8, 5:23, 9:9
**needed** [4] - 15:6, 15:7, 23:2, 36:21
**needs** [1] - 40:4
**negligence** [1] - 41:17
**nervous** [2] - 12:4, 31:20
**nervousness** [1] - 31:23
**never** [3] - 31:21, 37:1
**New** [2] - 2:14, 4:13
**night** [8] - 11:8, 12:18, 14:2, 16:17, 17:12, 17:14, 18:3, 24:21
**NO** [1] - 1:5
**nobody** [1] - 17:13
**nonsense** [2] - 29:22, 38:8
**normal** [1] - 23:11
**normally** [2] - 27:23, 31:8
**North** [2] - 39:5, 39:18
**NORTHERN** [1] - 1:2
**noses** [1] - 43:25
**notably** [1] - 26:4
**Note** [1] - 41:4
**note** [3] - 4:2, 41:14, 42:7
**noted** [2] - 27:12, 33:24
**Nothing** [1] - 45:20
**nothing** [2] - 43:25, 45:21
**notice** [3] - 10:17, 34:24, 46:11
**notices** [1] - 34:25
**number** [4] - 7:13, 14:9, 39:12, 39:13
**Number(s** [1] - 47:5

**O**

**oath** [1] - 35:4
**obedience** [1] - 35:4
**objection** [2] - 18:7, 32:19
**observed** [1] - 33:3
**obtaining** [1] - 7:13
**Obviously** [1] - 32:13
**obviously** [1] - 32:18
**occurred** [1] - 11:11
**occurring** [1] - 22:3
**odds** [1] - 26:9
**OF** [2] - 1:1, 1:4
**offense** [8] - 6:7, 8:25,

10:5, 12:2, 12:3, 41:18, 45:10, 46:1
**Offense** [4] - 6:17, 11:25, 33:7, 33:19
**offenses** [1] - 8:18
**office** [2] - 22:11, 31:17
**officer** [8] - 6:18, 6:19, 8:5, 21:11, 21:12, 21:14, 23:20
**officers** [1] - 16:2, 16:6
**official** [1] - 47:7
**Official** [1] - 47:15
**often** [2] - 31:21, 37:1
**old** [2] - 36:17, 45:22
**once** [1] - 34:5
**one** [40] - 3:4, 4:24, 6:6, 6:7, 6:10, 8:18, 10:1, 10:16, 11:5, 11:20, 11:25, 13:1, 13:13, 13:19, 14:1, 18:12, 18:18, 18:22, 19:6, 20:8, 20:19, 25:3, 25:10, 29:11, 31:6, 34:13, 35:21, 36:1, 37:3, 37:15, 38:19, 39:15, 40:1, 42:16, 42:18, 44:1, 45:10, 46:1
**One** [1] - 46:3
**ongoing** [1] - 43:25
**opening** [3] - 15:3, 15:8
**opinion** [2] - 15:15, 22:7
**opportunity** [3] - 4:24, 43:4, 44:11
**opposition** [1] - 3:12
**order** [5] - 5:11, 18:16, 24:23, 27:2, 42:2
**ordered** [1] - 46:21
**original** [1] - 46:17
**originally** [2] - 38:7, 38:13
**otherwise** [1] - 34:19
**outbursts** [1] - 11:3
**outrageous** [1] - 25:5
**outside** [2] - 43:24, 44:22
**overwhelming** [1] - 15:16
**Owings** [1] - 16:16
**own** [2] - 32:7, 32:8

**P**

**p.m** [3] - 2:1, 25:23, 46:23
**Page** [2] - 5:8, 33:24
**pages** [1] - 47:6
**paid** [3] - 26:10, 26:16, 46:9

**Paper** [1] - 19:15
**paper** [2] - 8:7, 24:23
**papers** [1] - 2:22
**parsed** [1] - 20:2
**Parsons** [1] - 39:7
**part** [4] - 7:18, 9:13, 24:16, 42:9
**participant** [7] - 8:16, 18:1, 18:5, 20:17, 22:7, 33:2, 43:12
**participate** [2] - 43:17, 44:3
**participating** [1] - 18:16
**participation** [2] - 33:20
**particular** [1] - 45:1
**particularly** [4] - 33:21, 35:20, 35:21, 37:9
**passed** [1] - 41:14
**passel** [1] - 20:16
**passes** [1] - 40:9
**past** [1] - 32:8
**path** [1] - 3:22
**Pause** [1] - 21:25
**pay** [1] - 24:23
**penalty** [1] - 31:10
**pending** [2] - 2:13, 21:13
**People** [1] - 10:20
**people** [10] - 11:4, 12:25, 13:25, 27:18, 29:10, 29:11, 30:12, 32:5, 36:15, 38:1
**perfect** [1] - 17:21
**perfectly** [1] - 18:11
**performance** [2] - 12:5, 33:4
**perhaps** [7] - 13:13, 15:21, 22:22, 24:5, 33:21, 37:2, 37:15
**period** [6] - 17:17, 22:2, 22:4, 31:4, 38:17
**perjured** [2] - 15:19, 17:8
**permission** [1] - 2:15
**person** [8] - 5:8, 12:23, 14:3, 18:17, 38:15, 39:2, 40:4
**personal** [2] - 15:15, 36:23
**persuades** [2] - 45:20, 45:21
**persuasive** [1] - 14:25
**pertained** [1] - 24:3
**phone** [7] - 11:9, 11:10, 14:21, 25:20, 25:22, 31:4
**physics** [1] - 13:16
**Pinkerton** [5] - 5:24, 6:2, 6:5, 8:19, 27:3
**place** [4] - 25:15, 25:17, 31:3, 45:16

**placed** [1] - 38:6
**places** [1] - 14:8
**plainly** [1] - 38:10
**plan** [4] - 7:5, 7:6, 7:18, 7:19
**planned** [2] - 42:1, 42:8
**play** [1] - 33:11
**played** [1] - 16:16
**pleadings** [1] - 4:25
**pleased** [1] - 3:3
**plenty** [1] - 30:21
**point** [21] - 8:8, 9:2, 9:8, 9:9, 13:4, 13:12, 17:19, 18:12, 20:8, 23:14, 25:25, 30:11, 34:3, 34:10, 34:21, 35:2, 37:8, 40:4, 40:5, 40:14, 40:18
**pointed** [2] - 5:5, 40:24
**points** [3] - 24:2, 24:18, 37:21
**Police** [1] - 16:2
**pose** [1] - 37:21
**position** [7] - 6:14, 6:25, 7:21, 10:8, 34:23, 42:15, 43:1
**possession** [1] - 37:7
**possibility** [3] - 40:24, 42:3, 44:23
**possible** [4] - 13:15, 25:7, 25:9, 35:7
**possibly** [1] - 25:1
**practice** [1] - 22:22
**practicing** [2] - 38:1, 39:25
**preceded** [2] - 35:22, 35:23
**precisely** [1] - 9:13
**preclude** [1] - 42:2
**prejudiced** [1] - 29:5
**preliminary** [1] - 2:10
**premeditated** [4] - 11:18, 41:6, 42:4, 42:24
**prepare** [1] - 21:7
**preponderance** [11] - 6:16, 9:17, 9:22, 9:25, 10:11, 11:21, 20:24, 27:3, 32:2, 35:3, 45:19
**presentations** [1] - 45:1
**Presentence** [3] - 23:3, 23:13, 23:18
**pressing** [1] - 3:5
**pretrial** [6] - 6:18, 8:4, 23:19, 34:5, 34:7, 34:13
**Pretrial** [2] - 6:19, 23:20
**pretty** [3] - 19:23, 30:1, 36:3
**previously** [1] - 4:14
**principal** [1] - 12:15
**principle** [1] - 9:5
**Prisons** [1] - 46:3

privilege [1] - 22:19
probation [6] - 6:19, 8:5, 21:11, 21:12, 21:14, 23:19
problem [2] - 28:11, 29:16
problems [1] - 22:3
proceed [3] - 2:9, 4:19, 21:20
proceeding [1] - 21:17
proceedings [8] - 7:12, 7:16, 26:6, 43:9, 43:10, 43:17, 47:4, 47:7
Proceedings [3] - 2:1, 21:25, 46:23
process [1] - 22:20
procured [1] - 8:17
produce [2] - 13:10, 15:11
produced [2] - 15:12, 26:5
prolonged [1] - 38:17
promote [1] - 36:4
prompt [1] - 27:23
prompted [1] - 37:15
proof [1] - 29:18
prosecution [2] - 31:7, 39:24
protecting [2] - 36:9, 36:18
prove [5] - 5:11, 6:6, 19:18, 20:4
provide [2] - 25:16, 42:5
provided [7] - 4:20, 14:4, 23:10, 23:21, 23:22, 40:25, 41:20
PSI [1] - 23:23
Public [2] - 22:10, 39:16
public [2] - 36:9, 36:19
publish [1] - 36:15
purchased [2] - 16:15, 16:21
purposes [1] - 5:16
pursuant [1] - 6:21
pursue [2] - 3:20, 4:6
put [1] - 43:23
Pyne [20] - 1:18, 2:5, 14:13, 14:18, 14:24, 21:6, 21:23, 22:1, 23:12, 24:25, 25:3, 25:5, 27:8, 27:14, 34:11, 34:21, 38:5, 39:15, 45:1, 46:11
PYNE [6] - 2:8, 22:25, 23:6, 23:14, 24:6, 28:14

## Q

questioned [1] - 16:1

questions [4] - 3:2, 8:6, 8:10, 23:25
quite [5] - 2:20, 9:3, 18:25, 29:20, 38:10

## R

racketeering [6] - 18:19, 18:22, 19:4, 19:9, 19:20, 20:5
Raleigh [1] - 39:5
range [1] - 34:20
reached [1] - 2:19
reacted [1] - 38:20
reaction [2] - 37:4, 37:5
read [2] - 2:23, 24:15
reading [1] - 19:10
ready [2] - 2:9, 4:19
real [1] - 37:21
realize [2] - 21:1, 37:10
realized [1] - 14:10
really [11] - 2:20, 11:8, 12:10, 17:15, 17:16, 34:12, 34:17, 36:1, 36:12, 42:23, 43:5
realm [1] - 34:17
reason [4] - 14:1, 15:5, 25:21, 32:20
reasonable [1] - 5:12, 5:17, 5:23, 6:13, 8:15, 11:13, 18:2, 19:18, 20:16, 21:1, 35:5
reasons [6] - 4:14, 10:16, 26:25, 31:25, 34:13, 34:16
recalled [1] - 29:12
recapitulate [1] - 29:3
recaps [1] - 24:16
receipt [3] - 16:23, 16:24, 26:11
received [2] - 4:20, 24:6
recent [1] - 39:13
recently [1] - 2:23
recklessness [1] - 41:17
recognize [1] - 22:18
recognized [1] - 22:22
recollection [3] - 10:25, 17:1, 30:10
recommend [1] - 36:20
recommends [1] - 8:5
record [6] - 4:14, 12:21, 14:9, 18:13, 21:16, 31:14
recorded [1] - 47:3
records [1] - 25:19
redacted [1] - 16:4
reference [4] - 9:10, 31:23, 33:6, 33:20
references [1] - 9:4

reflect [2] - 6:23, 28:6
reflected [1] - 38:23
reflects [1] - 45:12
refused [2] - 44:2, 44:3
regarding [3] - 28:20, 28:21, 28:24
regular [1] - 44:1
rehabilitated [4] - 43:19, 44:5, 44:23, 45:6
rehabilitation [1] - 43:21
rejected [1] - 19:10
relate [1] - 28:12
related [1] - 29:1
relating [1] - 28:18
relationship [1] - 39:18
relatively [2] - 32:13, 37:14
relatives [1] - 40:7
release [1] - 46:6
relevant [4] - 4:15, 9:5
remains [1] - 30:5
remember [5] - 13:6, 15:3, 15:8, 27:24, 28:15
reminded [1] - 14:18
remorse [1] - 44:18
remorseful [1] - 44:22
repeated [1] - 36:25
reply [1] - 3:11
report [1] - 24:19
Report [2] - 23:3, 23:13
Reported [1] - 1:22
Reporter [1] - 47:15
REPORTER'S [1] - 47:1
Reports [1] - 23:18
represent [1] - 46:13
representation [2] - 22:12, 22:13
represented [1] - 38:20
representing [1] - 22:11
request [4] - 2:15, 3:14, 18:23, 19:8
Request [1] - 4:17
requested [1] - 4:7
required [3] - 4:5, 37:17, 37:18
requirement [1] - 36:9
resident [1] - 37:22
respect [10] - 12:9, 18:1, 20:15, 22:18, 30:23, 35:2, 35:13, 35:15, 36:4, 46:16
respected [1] - 3:25
respond [3] - 23:25, 24:2, 29:6
response [2] - 3:11, 28:17
responses [1] - 4:10
responsible [1] - 7:24

rest [1] - 44:4
result [1] - 41:14
results [1] - 41:2
retaliation [1] - 42:3
review [1] - 32:18
RICO [7] - 5:6, 5:21, 6:17, 8:13, 8:22, 19:17, 19:19
risk [1] - 41:17
road [1] - 36:14
Roanoke [3] - 37:15, 39:4, 39:5
rob [3] - 7:6, 7:18, 7:19
robberies [2] - 7:4, 42:7
robbery [5] - 5:18, 24:21, 42:1, 42:9
robbing [1] - 41:13
Robert [1] - 1:16
role [1] - 27:1
room [1] - 3:24
Room [1] - 1:23
RPR [1] - 1:22
rulings [1] - 4:15

## S

safer [2] - 10:5, 37:14
sanctioned [1] - 2:16
sanctity [1] - 3:24
satisfied [1] - 31:23
satisfy [1] - 36:8
saw [2] - 13:11, 17:13
scene [1] - 25:17
scheme [1] - 43:9
schemes [1] - 42:9
school [1] - 40:13
schools [1] - 37:25
Second [1] - 33:25
second [7] - 2:14, 3:4, 11:18, 21:10, 21:22, 25:23, 41:20
Secondly [1] - 34:3
Section [8] - 8:25, 41:1, 41:6, 41:10
see [5] - 3:21, 12:15, 23:12, 23:16, 40:6
seeing [1] - 40:12
seek [1] - 31:10
seem [2] - 34:1, 40:10
sees [1] - 42:13
self [1] - 32:7
self-impeaching [1] - 32:7
send [2] - 21:15, 28:2
sending [1] - 44:15
sense [1] - 38:8
sent [2] - 27:25, 28:22
sentence [23] - 8:2, 8:4, 11:25, 23:18, 35:14,

35:19, 35:20, 36:2, 36:3, 36:12, 36:20, 37:6, 40:9, 40:10, 41:7, 41:19, 42:17, 42:19, 44:11, 46:2, 46:4, 46:8
sentenced [1] - 7:25
sentences [3] - 35:7, 35:8, 45:9
Sentencing [1] - 1:10
sentencing [14] - 2:3, 5:1, 5:5, 7:5, 8:21, 9:6, 21:7, 21:17, 26:24, 28:13, 28:20, 28:21, 33:24
sentencings [2] - 3:6, 28:25
separate [2] - 45:8, 45:9
September [1] - 40:13
serendipity [1] - 13:6
serious [1] - 14:11
seriously [2] - 12:10, 32:9
served [2] - 28:7, 46:7
services [1] - 8:4
Services [2] - 6:19, 23:20
set [2] - 3:17, 6:15
sets [1] - 35:11
seven [2] - 43:5, 44:15
several [2] - 22:5, 24:2
severe [1] - 37:3
sheet [1] - 27:10
SHELLY [1] - 1:9
Shelly [4] - 2:3, 36:13, 38:12, 47:4
Shelton [2] - 28:13, 28:17
shooter [1] - 45:21
shooting [1] - 14:20
shootings [1] - 15:2
short [1] - 4:4
shortly [1] - 29:8
show [2] - 17:2
showed [1] - 23:6
showing [3] - 4:5, 5:20, 12:6
sic [1] - 37:25
signature [2] - 16:19, 47:10
similar [1] - 7:20
simply [5] - 11:10, 29:3, 31:1, 36:18, 44:6
sincerely [1] - 23:17
single [1] - 2:18
sit [1] - 8:8
site [1] - 13:17
situation [8] - 9:11, 10:4, 10:10, 12:20, 14:2, 22:10, 33:18, 37:23
six [1] - 13:25

**skepticism** [1] - 32:4
**slams** [1] - 40:19
**slimmer** [1] - 13:22
**society** [1] - 45:23
**someone** [2] - 26:15
**sometimes** [3] - 17:19, 33:11, 40:12
**Sometimes** [2] - 17:22, 22:23
**sons** [1] - 37:16
**soon** [1] - 16:8
**sorry** [9] - 6:19, 8:5, 14:16, 18:24, 24:4, 24:13, 27:9, 27:21, 30:5
**sort** [6] - 31:7, 33:12, 35:18, 36:6, 39:19, 40:3
**sorts** [1] - 11:9
**speaking** [1] - 11:4
**speaks** [1] - 32:5
**special** [4] - 2:15, 38:6, 46:7, 46:8
**specific** [2] - 19:2, 19:9
**specificity** [1] - 20:4
**Spence** [2] - 7:19, 32:14
**spent** [2] - 17:12, 17:14
**spite** [1] - 7:9
**sponsored** [1] - 14:15
**stand** [2] - 23:22, 26:22
**standard** [2] - 8:15, 20:22
**standards** [1] - 21:1
**standing** [2] - 44:14, 44:17
**start** [2] - 38:8, 40:13
**started** [2] - 17:2, 17:3
**state** [2] - 26:6, 41:16
**statement** [8] - 3:17, 10:1, 15:3, 15:9, 16:3, 26:18, 32:18, 45:24
**statements** [3] - 32:4, 32:20, 32:22
**STATES** [2] - 1:1, 1:4
**States** [3] - 2:2, 6:3, 30:21
**statistics** [1] - 36:14
**stay** [1] - 25:22
**stayed** [2] - 26:7, 37:23
**stenographically** [1] - 47:4
**step** [3] - 3:22, 9:14, 20:7
**still** [9] - 9:7, 9:21, 10:1, 13:15, 25:12, 30:5, 37:8, 38:2, 40:7
**straight** [1] - 17:12
**Street** [1] - 1:23
**street** [1] - 35:17
**strength** [1] - 34:14
**stretch** [1] - 38:16

**struggle** [1] - 21:2
**study** [1] - 36:15
**stuff** [2] - 29:21, 35:22
**stumbled** [1] - 14:8
**submit** [7] - 12:19, 15:14, 20:22, 34:8, 35:1
**submitted** [4] - 4:25, 5:1, 18:15, 26:6
**Subsection** [1] - 36:9
**substances** [1] - 5:19
**substantial** [3] - 3:1, 31:2, 36:3
**substantially** [2] - 35:10, 35:14
**substantive** [2] - 6:5, 6:7
**suffered** [1] - 34:8
**suggest** [9] - 3:25, 13:24, 25:3, 29:15, 30:2, 30:22, 33:17, 33:23, 36:10
**suggested** [2] - 26:15, 38:22
**suggesting** [1] - 37:24
**suggestion** [2] - 11:23, 32:15
**suggestions** [1] - 38:10
**summarize** [2] - 6:2, 26:25
**summarized** [1] - 7:5
**Supermax** [1] - 23:6, 34:6
**superseding** [3] - 2:18, 46:17, 46:19
**Supervised** [1] - 46:6
**supplemental** [2] - 18:15, 19:15
**supporting** [1] - 44:14, 44:17
**suppose** [2] - 26:1, 43:11
**supposed** [2] - 15:15, 30:12
**supposedly** [2] - 29:12, 34:14
**Supreme** [1] - 10:1
**surprise** [1] - 23:7
**surprised** [1] - 28:8
**suspicion** [1] - 20:14
**Swilo** [2] - 22:25, 23:10
**sworn** [2] - 26:4, 26:19
**sympathy** [2] - 37:9, 37:10
**system** [3] - 35:8, 43:24, 44:3

**T**

**tack** [1] - 34:2

**talks** [1] - 27:13
**tape** [3] - 10:19, 11:2, 11:4
**telephone** [1] - 25:19
**teller** [2] - 41:14, 41:15
**temperature** [1] - 30:18
**ten** [2] - 9:21, 46:10
**Ten** [1] - 33:24
**tentative** [1] - 32:24
**term** [2] - 8:3, 33:8
**terms** [4] - 11:18, 32:10, 33:11, 36:18
**terrible** [1] - 12:21
**testified** [6] - 7:12, 13:20, 24:18, 26:10, 26:13, 30:11
**testify** [1] - 25:4
**testimony** [13] - 10:18, 12:15, 13:23, 14:15, 15:19, 17:8, 17:9, 17:17, 26:21, 29:12, 32:4, 32:21, 32:24
**text** [1] - 28:22
**THE** [60] - 1:1, 1:1, 2:5, 2:9, 3:4, 3:10, 3:14, 3:16, 4:12, 5:3, 8:9, 9:19, 12:4, 14:16, 15:20, 15:24, 16:3, 16:11, 16:14, 16:20, 16:23, 16:25, 17:4, 17:7, 17:22, 18:20, 18:23, 19:1, 19:13, 19:22, 19:25, 21:3, 21:10, 21:16, 21:24, 22:12, 23:2, 23:12, 23:16, 24:9, 24:14, 27:6, 27:11, 27:21, 27:24, 28:4, 28:8, 28:11, 28:16, 28:23, 29:4, 31:12, 31:16, 33:14, 40:21, 43:2, 44:10, 44:13, 44:24, 46:21
**theater** [3] - 13:17, 25:18, 42:5
**themselves** [1] - 43:24
**theories** [1] - 11:15
**theory** [1] - 5:24
**thin** [1] - 10:14
**thinking** [2] - 26:25, 28:4
**thinks** [5] - 6:22, 25:10, 30:3, 39:2, 43:19
**thinness** [2] - 10:15, 31:9
**third** [2] - 20:7, 28:20
**Thomas** [1] - 11:19
**thoroughly** [2] - 42:4, 43:23
**threat** [1] - 13:22
**three** [8] - 6:11, 7:24,

30:12, 34:25, 35:9, 43:20, 45:15, 45:25
**throat** [1] - 43:17
**throughout** [1] - 22:20
**thumb** [1] - 43:25
**ticket** [2] - 16:20, 16:24
**tickets** [9] - 16:10, 16:13, 16:14, 24:23, 26:8, 26:11, 26:16, 29:22, 42:5
**titillating** [1] - 3:19
**today** [11] - 2:4, 21:2, 22:19, 27:19, 28:24, 31:23, 37:11, 38:24, 38:25, 40:9, 40:19
**together** [3] - 17:12, 17:14, 29:9
**took** [7] - 9:14, 14:4, 14:5, 25:15, 25:17, 31:6, 39:15
**tough** [1] - 21:4
**trafficking** [1] - 7:3
**trail** [1] - 24:24
**trample** [1] - 17:24
**transcribed** [1] - 47:7
**transcript** [1] - 47:7
**treat** [2] - 21:18, 21:19
**treated** [1] - 8:7
**trenching** [1] - 31:24
**Trial** [2] - 2:14, 4:13
**trial** [5] - 4:14, 15:24, 21:15, 26:2, 29:3
**tried** [5] - 9:2, 20:20, 29:10, 34:21, 37:21
**tries** [1] - 4:1
**trouble** [3] - 14:8, 40:12, 44:16
**true** [4] - 7:10, 17:22, 25:8, 38:11
**truism** [1] - 4:2
**truth** [3] - 14:12, 14:14, 32:17
**trying** [4] - 12:22, 17:23, 27:17, 27:24
**twinge** [1] - 31:22
**twisting** [2] - 30:3
**Two** [1] - 41:4
**two** [16] - 2:13, 2:18, 3:9, 6:9, 17:11, 18:18, 18:22, 19:3, 19:20, 20:5, 23:9, 25:22, 28:24, 28:25, 45:8
**type** [1] - 36:20
**typically** [2] - 28:1

**U**

**U.S** [1] - 1:23
**ultimately** [2] - 3:22,

33:1
**under** [8] - 5:23, 8:18, 8:25, 9:11, 9:15, 11:14, 11:25
**Under** [1] - 42:13
**undercut** [1] - 4:1
**underlying** [1] - 41:18
**undermine** [1] - 4:1
**understood** [3] - 8:20, 19:7, 33:23
**undertaking** [1] - 3:23
**undertook** [1] - 32:14
**undoubtedly** [1] - 7:10
**unique** [1] - 22:20
**UNITED** [2] - 1:1, 1:4
**United** [3] - 2:2, 6:3, 30:21
**unless** [3] - 3:10, 4:8, 25:2
**Unlike** [1] - 14:9
**unlikely** [1] - 43:21
**unsupported** [1] - 4:18
**up** [11] - 14:20, 22:16, 23:6, 23:9, 24:19, 25:10, 25:13, 37:16, 38:24, 40:19
**urged** [1] - 32:1
**USA** [1] - 47:4

**V**

**variance** [4] - 33:12, 43:2, 44:8, 46:1
**variances** [1] - 34:18
**various** [2] - 7:12, 11:3
**verdict** [19] - 2:19, 3:23, 12:6, 12:9, 17:24, 17:25, 18:2, 18:11, 20:9, 20:10, 30:6, 30:7, 30:22, 31:22, 31:24, 31:25, 33:1, 38:14, 45:17
**verdicts** [1] - 4:3
**version** [1] - 16:4
**versus** [1] - 2:2
**victims** [1] - 42:2
**view** [3] - 6:20, 25:12, 26:2
**vigorously** [1] - 4:3
**violate** [1] - 19:17
**violated** [1] - 13:16
**violent** [1] - 7:2
**Virginia** [3] - 37:15, 39:4, 39:5
**virtually** [1] - 34:4
**vocal** [1] - 43:12
**voice** [8] - 10:19, 10:20, 10:22, 11:6, 25:23, 29:9, 31:6, 32:23
**voices** [1] - 29:14

**vouch** [1] - 10:21

## W

**Wait** [1] - 18:20
**walked** [1] - 30:19
**wallflower** [1] - 43:10
**Walton** [4] - 38:25, 39:1, 39:8, 39:17
**warranted** [3] - 41:12, 41:13, 42:21
**WAYNE** [1] - 1:6
**Wayne** [6] - 2:3, 11:7, 36:1, 38:12, 47:5
**ways** [1] - 26:20
**weak** [1] - 32:24
**weaker** [1] - 35:10
**weaknesses** [1] - 17:19
**weeks** [2] - 23:9, 26:5
**West** [1] - 1:23
**whatsoever** [1] - 32:15
**Whereof** [1] - 47:9
**who've** [1] - 38:2
**whole** [7] - 15:4, 17:13, 18:7, 20:16, 28:12, 32:14, 43:24
**Willa** [1] - 39:8
**willing** [1] - 45:16
**win** [1] - 40:18
**wish** [2] - 2:10, 44:12
**wishes** [1] - 39:3
**witness** [6] - 7:11, 10:20, 10:23, 14:7, 26:12, 29:11
**Witness** [1] - 47:9
**witnesses** [1] - 14:10
**woman** [2] - 13:23, 39:17
**wonderful** [1] - 39:17
**word** [1] - 11:7
**words** [1] - 19:7
**world** [2] - 17:13, 39:3
**written** [2] - 4:9, 39:14
**wronged** [1] - 44:20
**Wyche** [13] - 5:25, 6:9, 8:15, 10:10, 10:23, 14:20, 15:2, 15:6, 24:17, 24:21, 27:1, 29:8, 41:23
**Wyches** [1] - 13:18

## Y

**year** [2] - 36:17, 40:13
**years** [15] - 7:12, 9:21, 18:10, 23:22, 30:18, 33:9, 36:14, 39:10, 43:4, 43:5, 43:9, 43:16, 44:7, 44:15, 46:6

**yesterday** [12] - 3:7, 4:21, 5:4, 7:9, 24:3, 24:8, 26:24, 27:7, 27:16, 27:25, 30:16, 43:11
**yesterday's** [1] - 27:13
**young** [1] - 13:7

## Z

**Zajac** [3] - 1:22, 47:3, 47:14
**zone** [1] - 20:14